### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALEK SCHOTT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | 5:23-cv-00706-OLG |
| | ) | |
| JOEL BABB, in his individual and official | ) | |
| capacity; MARTIN A. MOLINA III, in his | ) | |
| individual and official capacity; JAVIER | ) | |
| SALAZAR, in his individual and official | ) | |
| capacity; and BEXAR COUNTY, TEXAS, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANT JAVIER SALAZAR'S MOTION TO DISMISS
## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Now comes Defendant Bexar County Sheriff Javier Salazar and files this Motion to Dismiss Plaintiff's Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF SELECTED BACKGROUND

1.      Alek Schott ("Plaintiff") initiated this litigation by filing an Original Complaint on June 1, 2023. Docket no. 1. Plaintiff asserts claims against two Bexar County Sheriff's Office ("BCSO") deputies, Sheriff Javier Salazar, and Bexar County arising from a traffic stop in March 2022. *Id.* at 4-37.

2.      Plaintiff alleges that shortly after 11:00 a.m. on March 16, 2022, he was driving his truck on Interstate 35 south of San Antonio when he passed the patrol vehicle of Bexar County Sheriff's Deputy Joel Babb, who was parked in the grass beside the highway. Docket no. 1 at 5. Plaintiff alleges that, approximately two minutes later, Deputy Babb pulled Plaintiff over. *Id.* at 7. Plaintiff alleges that Deputy Babb approached Plaintiff and told him that the reason he was being pulled

Sheriff Javier Salazar's Motion to Dismiss Plaintiff's Original Complaint
*Alek Schott v. Joel Babb, et al.*
5:23-cv-00706-OLG                                                                    1 of 10

over was that Plaintiff had driven over the fog line on the highway, and that Plaintiff would be issued a warning. *Id*. at 8. Plaintiff alleges that Deputy Babb then ordered him to sit in his patrol car while he wrote the warning. *Id*. Plaintiff alleges, in sum, that Deputy Babb had no basis to stop the Plaintiff, that Plaintiff's dashboard camera shows that he did not commit a lane violation, and that Deputy Babb could not have seen if Plaintiff had drifted over a line. *Id*. at 6, 7.

3.      Plaintiff alleges that Deputy Babb extended the stop "without any justification" while in the patrol car by asking Plaintiff questions, in sum, about his vehicle, the purpose and timing of his travel, and his criminal history. Docket no. 1 at 9-10. Plaintiff alleges, in sum, that he told Deputy Babb he was on his way back to Houston from a trip to Carrizo Springs to meet with a customer. *Id*. at 9. Plaintiff alleges that his answers were "calm, truthful and benign" and that "[n]othing in Alek's answers or demeanor would have given Babb . . . reason to suspect Alek of any crime or to extend the stop beyond the time necessary to write the traffic warning[.]" *Id*. at 9. Plaintiff alleges that Deputy Babb told him that he was in "what's called a Criminal Interdiction Unit.... I don't give tickets. I give warnings. . . [.] I sit on the side of the highway and I'm out here looking for . . . human smuggling, drug smuggling, and all those things like that." *Id*. at 10. Plaintiff alleges that "about ten minutes" after Deputy Babb first told Plaintiff he was going to issue a warning, Deputy Babb asked Plaintiff if he consented to a search of his vehicle, and Plaintiff replied that he would "prefer not." *Id*. at 11. Plaintiff alleges that Deputy Babb then told Plaintiff he would request that a K9 unit walk around Plaintiff's vehicle because he had reasons to believe there might be something inside. *Id*. Plaintiff alleges that Babb knew that the K9 unit was "not far" from the location of the stop. *Id*. at 12. Plaintiff alleges that the wait for the K9 unit took approximately twenty minutes from the time of Deputy Babb's call. *Id*. at 14.

Sheriff Javier Salazar's Motion to Dismiss Plaintiff's Original Complaint
*Alek Schott v. Joel Babb, et al.*
5:23-cv-00706-OLG                                                                2 of 10

4.       Plaintiff alleges that during the K9 unit search, Defendant Bexar County Sheriff's Deputy Martin Molina intentionally prompted his dog to signal an alert.  Docket no. 1 at 15.  Plaintiff alleges that "any reasonable officer would have known" that the dog's alert was not reliable.  *Id.* at 16.  Plaintiff alleges that the search of his vehicle resulted in no evidence of drugs or any other crime.  *Id.* at 18.

5.       Plaintiff alleges that, following the stop, he called the Bexar County Sheriff's Office internal affairs department to make a complaint, reporting that he had been stopped "even though he had not committed any traffic violation, that he had been detained for over an hour, and his truck had been searched for no legitimate reason."  Docket no. 1 at 20.  Plaintiff alleges that on April 12, 2022, he spoke with Marta Rodriguez, a BCSO internal affairs officer, who stated to him "she had seen nothing wrong with the actions of the officers based on the [body-worn camera] footage."  *Id.*  Plaintiff alleges that he had a conversation later that day with a certain officer "Hernandez," who stated that he could tell from Deputy Babb's body-worn camera footage that Plaintiff had crossed over the fog line.  *Id.*  Plaintiff alleges that when he told Hernandez that Deputy Babb's body-worn camera footage does not capture Plaintiff's truck while traveling on the highway, Hernandez challenged him to file a lawsuit.  *Id.* at 20-21.  Plaintiff alleges that on June 22, 2022, Deputy Rodriguez sent an e-mail to Plaintiff stating that based on her review of Deputy Babb's body-worn camera footage, she determined that the deputies involved in the stop committed no policy violations.  *Id.* at 21.  Plaintiff alleges that the Deputies Babb and Molina "have not been disciplined for violating any policy and custom concerning the stop and search" of Plaintiff's vehicle.  *Id.* at 22.

6.       In a section captioned "[Plaintiff's] rights were violated due to a Bexar County policy and custom," Plaintiff alleges that "Bexar County has a policy and custom, that is executed by BCSO,

Sheriff Javier Salazar's Motion to Dismiss Plaintiff's Original Complaint
*Alek Schott v. Joel Babb, et al.*
5:23-cv-00706-OLG                                                                        3 of 10

of using traffic stops to conduct searches and seizures without any objective basis to suspect the driver of a crime." Docket no. 1 at 22. In support, Plaintiff asserts five principal arguments. First, Plaintiff alleges that "[o]n information and belief, BCSO deputies commonly stop drivers without any reason to suspect a traffic violation was committed," which Plaintiff alleges is evidenced by Deputy Babb's comment to Plaintiff that he was "probably" stopped on his drive to Carrizo Springs. *Id.* Second, Plaintiff alleges that BCSO deputies are trained "on how to get around the Fourth Amendment's protections in traffic stops," and "[f]or example, for multiple years before [Deputy Babb] stopped [Plaintiff], Bexar County paid for training from Desert Snow LLC," which "provides courses to law-enforcement officers on aggressive methods for highway interdiction, including how to manipulate the circumstances of a traffic stop to extend the stop and search [of] the vehicle." *Id.*

7.     Third, Plaintiff alleges that "[o]ver the past two years, the percentage of BCSO traffic stops that include searches has increased while the number of searches where contraband was discovered has decreased," and that in 2022, "BCSO reported conducting 536 searches during traffic stops but only discovering contraband in 115 of those searches." Docket no. 1 at 22. Further, Plaintiff alleges that "[o]n information and belief, BCSO deputies sometimes fail to report car searches that find no contraband." *Id.* Fourth, Plaintiff alleges that "[o]n information and belief, BCSO's Criminal Interdiction Unit deputies perform more searches during traffic stops than other BCSO deputies." *Id.* at 23.

8.     Fifth, Plaintiff alleges that "BCSO regularly posts on its social media about successful searches following traffic stops" reflecting a "pattern of announcing deputies found contraband after conducting a traffic stop and searching a vehicle, often in the wake of a K9 alert," which Plaintiff alleges "suggest[s] that BCSO deputies routinely conduct dog sniffs and car searches

Sheriff Javier Salazar's Motion to Dismiss Plaintiff's Original Complaint
*Alek Schott v. Joel Babb, et al.*
5:23-cv-00706-OLG                                                                    4 of 10

during traffic stops."  Docket no. 1 at 23.  But, Plaintiff alleges, "[o]n information and belief . . .
officers find nothing from most searches conducted during traffic stops," and "[t]his conclusion is
confirmed by Babb's comment that "'nine times out of ten, this is what happens'—meaning that
officers find nothing[.]"  *Id*.

9.      Based on these allegations, in a section of the original complaint enumerated "Claim IV,"
Plaintiff asserts one claim against "Bexar County" under 42 U.S.C. § 1983 based upon Bexar
County's alleged "official policy, practice, and custom" of "using traffic stops as a tool to conduct
searches and seizures without any reason to suspect the driver of a crime."  *Id*. at 33.  Elsewhere
under "Claim IV," Plaintiff alleges that Sheriff Salazar, as "the policymaker for Bexar County's
law-enforcement activities," had "actual or constructive knowledge of Bexar County's
unconstitutional policy, practice and custom[.]"  *Id*. at 35.

## LEGAL STANDARDS

10.     The sufficiency of a pleading to state a claim upon which relief can be granted under Fed.
R. Civ. P. 12(b)(6) is evaluated under the two-step process outlined by the Supreme Court in *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  First,
the Court must identify the Complaint's factual allegations, which are assumed to be true, and
distinguish them from any conclusory statements that are not entitled to the assumption of truth.
*Iqbal*, 556 U.S. at 678, 680-81.  Second, the Court must assess whether the assumed-as-true factual
allegations set forth a plausible claim to relief.  This is "a context-specific task that requires the
reviewing court to draw on its judicial experience and common sense" to determine whether "the
well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct[.]"
*Iqbal*, 556 U.S. at 679.  Ultimately, the claim is subject to dismissal if it lacks "factual content that

Sheriff Javier Salazar's Motion to Dismiss Plaintiff's Original Complaint
*Alek Schott v. Joel Babb, et al.*
5:23-cv-00706-OLG                                                                    5 of 10

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.   Plaintiff Has Not Plausibly Shown Deliberate Indifference by Sheriff Salazar

11.   As an initial matter, Plaintiff does not specify whether his claims are asserted against Sheriff Salazar in his official or individual capacity, but notes elsewhere that "Defendant Javier Salazar . . . is sued in his individual and official capacity" and that Sheriff Salazar "was at all relevant times the final decisionmaker for Bexar County's law-enforcement activities[.]"   Docket no. 1 at 3.   To the extent that Plaintiff's claims are official-capacity claims, they are effectively claims against Bexar County and are subject to Section 1983's requirements for municipal-liability claims.   *Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 Fed. App'x 958, 962 (5th Cir. 2020); *Rosas v. Bexar County*, No. 5:14-CV-1082-DAE, 2015 WL 1955406, at *3 (W.D.Tex. Apr. 29, 2015) ("The availability of Section 1983 relief against a government entity "render[s] any official capacity claim against [an employee of that entity] redundant[,]" and dismissal of that redundant claim is "appropriate[.]") (*quoting Monell*, 436 U.S. 658, 690 n. 55).   *See* docket no. 13, Bexar County's Rule 12(b)(6) motion to dismiss.

12.   To the extent that Plaintiff's original complaint asserts individual-capacity claims against Sheriff Salazar, qualifies immunity applies, and dismissal of those claims is appropriate.   Plaintiff enumerates six allegations in support of his assertion that Sheriff Salazar had "actual knowledge of Bexar County's unconstitutional policy, practice and custom:"

> a.   **Babb took a call with a supervisor during the stop and search of [Plaintiff's] truck;**
>
> b.   **Two officers in the internal affairs department of BCSO told [Plaintiff] that they did not see any problem with the actions of the BCSO deputies during the stop and search;**

Sheriff Javier Salazar's Motion to Dismiss Plaintiff's Original Complaint
*Alek Schott v. Joel Babb, et al.*
5:23-cv-00706-OLG                                                                                    6 of 10

      **c.**      **Sheriff Salazar failed to discipline Babb for making a traffic stop, extending that stop, and searching [Plaintiff] without any objective basis to suspect [Plaintiff] of a crime;**

      **d.**      **Sheriff Salazar failed to discipline Babb or Molina for searching [Plaintiff's] truck without any objective basis to suspect [Plaintiff's] truck contained contraband or other evidence of a crime;**

      **e.**      **The fact that BCSO's publicly reported data shows that over the past two years the share of traffic stops where BCSO deputies have reported conducting a search has increased while the number of times deputies have discovered contraband has decreased; and**

      **f.**      **BCSO's social media posts indicate that it is routine to search vehicles and conduct dog sniffs on traffic stops.**

Docket no. 1 at 35-36.

13.    These allegations fail to support that Sheriff Salazar exhibited deliberate indifference under any theory of Section 1983 liability.  As to allegation "a"—that Deputy Babb took a call from a supervisor during the search of Plaintiff's vehicle—it is unclear which theory of Section 1983 liability this allegation is intended to support, or how it demonstrates Sheriff Salazar's knowledge of a certain policy.  Plaintiff does not plead facts to show how Sheriff Salazar had any involvement with, or knowledge of, this phone call.

14.    As to allegations "b," "c" and "d"— that two internal affairs officers opined that they did not see any problems with the actions of the deputies, and that Sheriff Salazar failed to discipline Deputies Babb or Molina for the traffic stop or search—these allegations also fall short of the pleading standard for deliberate indifference.  The elements of a failure-to-discipline claim are: (1) failure to discipline employees; (2) the failure amounted to deliberate indifference; and (3) the failure to discipline directly caused the constitutional violations in question.  *Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009).  To establish deliberate indifference, a plaintiff must present

Sheriff Javier Salazar's Motion to Dismiss Plaintiff's Original Complaint
*Alek Schott v. Joel Babb, et al.*
5:23-cv-00706-OLG                  7 of 10

"proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). To satisfy this requirement, a plaintiff "ordinarily" must allege a pattern of similar constitutional violations. *Id*. at 62 (citation omitted). Here Plaintiff presents no factual allegations to show Sheriff Salazar's involvement in the alleged failure to discipline the deputies (or his knowledge of such failure); only the cursory allegation that he "failed to discipline" them. Docket no. 1 at 35. Further, Plaintiff presents no factual allegation regarding any other alleged failure to discipline in response to a constitutional violation; only the Plaintiff's own situation. Plaintiff's allegations fail to plausibly allege a pattern of similar constitutional violations necessary to support deliberate indifference.

15.     As to allegation "e"—BCSO's data purportedly showing an increase in stops leading to searches and a decrease in instances of finding contraband—this allegation does not support a pattern or practice of similar constitutional violations necessary to show deliberate indifference. Plaintiff does not identify which, or how many, of these stops were initiated without justification; which, or how many, of these searches were conducted without consent or probable cause; or which, or how many, of these stops and searches were the conducted by the Criminal Interdiction Unit.

16.     Finally, as to allegation "f"—BCSO's social media posts "about successful searches following traffic stops" (docket no. 1 at 23)—Plaintiff can only allege that these posts "*suggest* that BCSO deputies routinely conduct dog sniffs and car searches during traffic stops." *Id*. (emphasis added). Thus, Plaintiff takes the bare fact that BCSO posts results of successful searches and leaps to the conclusion that BCSO must therefore routinely conduct dog sniffs following stops. Not only is this leap an exercise in speculation, even if true, the allegation fails to support a pattern or practice necessary to support deliberate indifference. Plaintiff does not allege which, if any, of

Sheriff Javier Salazar's Motion to Dismiss Plaintiff's Original Complaint
*Alek Schott v. Joel Babb, et al.*
5:23-cv-00706-OLG                                                              8 of 10

these (unquantified) successful searches were the product of an unconstitutional stop; which, if

any, of the touted searches were conducted without consent or probable cause; or which, if any, of

these stops and searches were conducted by the Criminal Interdiction Unit.

## CONCLUSION

Plaintiff's original complaint does not allege sufficient facts that could establish liability

against Sheriff Salazar.  Plaintiff's claims are either duplicative of claims against Bexar County,

or lack the factual specificity to show deliberate indifference.  Plaintiff's claims against Sheriff

Salazar therefore should be dismissed pursuant to Rule 12(b)(6).


Respectfully Submitted,
JOE GONZALES
Bexar County Criminal District Attorney


By:    /s/ Robert W. Piatt III
**ROBERT W. PIATT III**
Bar No. 24041692
**SUSAN A. BOWEN**
Bar No. 02725950
Assistant District Attorneys, Civil Division
101 W. Nueva, 7th Floor
San Antonio, Texas 78205
Phone: (210) 335-0785
Fax: (210) 335-2773
robert.piatt@bexar.org
sbowen@bexar.org
*Attorney for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that, on the 6th day of July, 2023, I electronically filed the foregoing
document with the Clerk of Court using the CM/ECF system, which provided electronic service
upon all parties.

 /s/ Robert Piatt
**ROBERT W. PIATT III**

Sheriff Javier Salazar's Motion to Dismiss Plaintiff's Original Complaint
*Alek Schott v. Joel Babb, et al.*
5:23-cv-00706-OLG                                                                    9 of 10

## <u>ADVISORY REGARDING CONFERENCE REQUIREMENT</u>

On today, July 6th, 2023, I sent the foregoing document to Plaintiff's counsel by electronic mail along with a notice regarding the proposed deficiencies in Plaintiff's original complaint, the right to amend the pleadings, and the applicable deadlines.  I understand that this notice does not provide the Plaintiff with seven days to consider the notice and file an advisory, as set forth in Judge Garcia's fact sheet.  The undersigned attorney was unable to send opposing counsel such notice on time due to case assignment and case investigation issues.  Nevertheless, because the fact sheet admonishes that the notice requirements do not affect the Rule 12 motion deadlines, the undersigned attorney believed it prudent to file the foregoing motion today.

 /s/ Robert Piatt
**ROBERT W. PIATT III**

Sheriff Javier Salazar's Motion to Dismiss Plaintiff's Original Complaint
*Alek Schott v. Joel Babb, et al.*
5:23-cv-00706-OLG                                                                                  10 of 10