# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| ALEK SCHOTT<br><br>*Plaintiff,*<br><br>v.<br><br>JOEL BABB, in his individual and official capacity; MARTIN A. MOLINA III, in his individual and official capacity; JAVIER SALAZAR, in his individual and official capacity; and BEXAR COUNTY, TEXAS,<br><br>*Defendants.* | Civil Action No. 5:23-cv-00706-OLG-RBF |

## PLAINTIFF'S OPPOSED MOTION TO COMPEL

Plaintiff Alek Schott files this motion to compel Defendants to produce documents. This case is about whether two Bexar County Sheriff Office (BCSO) deputies violated Alek's Fourth Amendment rights during a traffic stop and whether those violations occurred because Bexar County has a policy of using traffic stops as a tool to conduct baseless searches and seizures.

### INTRODUCTION

At every stage of this case, Defendants have slow-played their obligations. Defendants' strategy is clear—if Defendants delay long enough, this case will either go away or responsive documents will disappear. Bexar County has even failed to answer Plaintiff's complaint. And, despite the parties' representation to the Court that there was no need to change the timing for initial disclosures, Defendants did not serve their disclosures until more than a month after the deadline.

1

Most significantly, in response to Alek's requests for production (RFPs), Defendants have produced only a portion of documents—failing to produce documents about Alek Schott himself, unilaterally narrowing the scope of Alek's production requests, and initially saying that more responsive items were forthcoming. Defendants have now indicated that they are finished supplementing even though they did not provide all the promised documents.

And, on the eve of the first depositions in November 2023, Defendants asked to postpone those depositions until they could get new counsel, who was allegedly to come later the same month. Defendants then refused to communicate for *two months* even though Alek repeatedly tried to learn what was going on and restart discovery. Only when Defendants' responses to Alek's second set of RFPs came due did Defendants act and secure new counsel. But, even with new counsel in place, Defendants are using the same tactics: delay, ignore, and withhold. Last month, Alek was finally able to take the depositions that had been postponed, which revealed more evidence that Defendants have not given Alek all responsive documents.

After repeatedly attempting to confer in good faith, Alek files this motion to compel and award expenses.

## BACKGROUND

The parties previously agreed on the big-picture subjects for discovery. It is undisputed that on March 16, 2022, BCSO Deputy Joel Babb pulled Alek Schott over for the traffic offense of drifting over the fog line on the highway. Dkt. No. 27 (Joint at Rule 26 Report) at 2. Alek had been traveling north on I-35 when he passed Babb who was parked in the grass on the side of the highway. *Id.* After Babb pulled Alek over, Babb asked Alek questions and radioed for a narcotics canine. *Id.* BCSO Deputy Martin A. Molina III arrived on the scene and conducted a dog sniff on

Alek's truck. *Id.* Babb and Molina, with BCSO Deputy Joe Gereb, searched Alek's truck. *Id.* They found no evidence of drugs, contraband, or any other crime. *Id.* at 2–3.

Alek brings four claims: three Fourth Amendment claims against individual officers who stopped him and searched his truck and a Fourth Amendment claim against Bexar County for having a policy or custom that caused the violation of Alek's Fourth Amendment rights. The Court denied Bexar County's motion to dismiss the claim against it. Dkt. Nos. 33, 34.

The parties' Rule 26 report outlined the anticipated subjects for discovery. Dkt. No. 27 at 4. The parties expected to conduct discovery on subjects including (a) records about the traffic stop of Alek; (b) Babb's traffic stop practices and records, (c) Molina's canine practices and records; (d) the canine's training, performance, and testing records; (e) Bexar County's traffic stop practices and data; (f) and other complaints about traffic stops and vehicle searches performed by Bexar County. *Id.* In general, Alek's discovery efforts seek information about those topics.

## ARGUMENT

During the nine months this case has been pending, Alek has made every effort to work with Defendants—meeting twice via Zoom, sending multiple letters and emails, discussing the status of discovery via phone, and even having face-to-face conversations memorialized via email. Defendants, by contrast, refuse to fulfill their discovery obligations and ignore Alek's efforts to keep discovery on track.

**I.     Defendants must immediately remedy their deficient production.**

Alek served two sets of requests for production (RFPs) on Defendants.[1] Defendants' production and the written responses to those RFPs are deficient with no improvement in sight.

---

[1] Alek's RFPs are attached as Exhibits 2 and 3. Defendants' responses are attached as Exhibits 4 and 5. Although Alek served his Second RFPs on all Defendants—and defined Defendants to mean

3

Below, Alek provides a high-level overview of Defendants' deficient production and asks for relief. To aid the Court in reviewing this motion, Exhibit 1 provides a more detailed item-by-item discussion of each request Alek seeks to compel Defendants to fulfill, Defendants' written response, why Defendants' production is deficient, and Alek's grounds for relief.

### A. Defendants' responses to Alek's RFPs are deficient.

Defendants have failed to adequately respond to Alek's RFPs. Alek has repeatedly explained why Defendants' written responses and production were deficient and asked when Defendants would supplement their production. *See, e.g.*, Ex. 6 (2.22.24 Letter); Ex. 7 (2.9.24 Letter); Ex. 8 (12.6.23 Letter); Ex. 9 (10.27.23 Letter); *see also* Ex. 10 (Counsel Emails) at 2, 7–8, 10–12, 15–16, 21–22, 35–37. More than five months after Defendants' responses to Alek's first set of RFPs were due, Defendants still refuse to revise their responses and produce all responsive items. Defendants have now indicated that they do not intend to further supplement their production. Ex. 10 (Counsel Emails) at 18.

Defendants have not produced a single text message and have produced only two email threads about searching for records—rather than producing the responsive records themselves. BC000159 shows that on September 9, 2023, Bexar County IT conducted an email search for "A Schott" (665 hits), "Alek Schott" (1028 hits), and "LJR4135" (75 hits), and states: "We have a 2.9GB pst file that is too large to attach to RITM." But, five months later, Defendants still have not produced the 2.9GB pst file or any other results from the email search.

---

Joel Babb, Martin A. Molina III, and Bexar County, Texas—Defendants styled their written responses as only the responses of "Defendant Bexar County." Alek assumes that Defendants responded and conducted searches on behalf of all Defendants and did not fail to respond on behalf of the individuals. Additionally, Alek recently served a third round of discovery requests, but responses are not due until April.

Defendants have also claimed no responsive documents exist when there is evidence to the contrary. In his deposition, Deputy Gereb testified that he has been a deputy in the Criminal Interdiction Unit for over three years, and that the Criminal Interdiction Unit was created in 2020. CITE. Deputy Babb likewise stated on video that "I'm on what's called a Criminal Interdiction Unit," [Deputy Babb BWC Video A](#) at 11:09 (Compl. ¶ 44). Defendants nevertheless maintain that there are no documents or communications concerning "criminal interdiction" (RFP 24) and that there are no documents or communications setting forth the official purpose of BCSO's Criminal Interdiction Unit and K9 Unit (RFP 26). And, when counsel met via Zoom, Defendants' counsel asserted there is no Criminal Interdiction Unit. But, at the same time, Defendants objected to producing complaints against traffic deputies other than those "in the Criminal Interdiction Unit." RFP 17. Both things cannot be true.

Further, in their first written responses, Defendants repeatedly indicated responsive documents were "currently being bate stamped" or would "be produced." RFP 28–30, 34–36. Over five months later, most of those items still have not been provided.

While Defendants have produced *some* documents, that production has been limited. Defendants repeatedly reformed Alek's requests—revising or ignoring portions of the requests, often without objection or explanation. For example, Defendants revised RFP 23, producing a document they wanted to produce rather than the documents Alek actually requested. RFP 23 asked for "[a]ll documents and communications other than the current Sheriff's Manual of Policy and Procedure that govern BCSO officers' behavior during traffic stops, roadside investigations, and vehicle searches." Defendants produced only the Sheriff's Manual of Policy and Procedure months later, even though Alek asked for all documents and communications *other than* the current Sheriff's Manual of Policy and Procedure. And the copy of the Manual that Defendants did

produce (BC3530) expressly states that it "DOES NOT INCLUDE MEMOS AND DIRECTIVES." Those memos and directives have not been provided.

And back in fall 2023, Defendants initially withheld all responsive video footage, demanding that a protective order be entered. Alek was more than willing to do so, revising a draft protective order to address Defendants' concerns, repeatedly asking Defendants to approve the order, and offering to file it. Defendants refused to respond for three months. And when Defendants did produce some video footage, Defendants did not send it all. Just before the initial depositions last month, Defendants shared footage of *the traffic stop in this case* that Defendants had previously withheld. Defendants appear to still be withholding other footage—such as dashboard camera footage of the officers who participated in the search of Alek's truck (RPFs 1–5). Ex. 11 (Gereb Rough Tr.) at 53 (testifying dashcams begin recording when an officer activates their patrol car lights.).

For some RFPs, Defendants have flat out refused to provide responsive items to their new, outside counsel—and therefore to Alek. RFP 38 asked for "[a]ll documents relating to the investigation of the traffic stop and search of Plaintiff on March 16, 2022, referenced on BC002161—including the investigative report due September 12, 2023, referenced on BC002160 and the investigative report due December 11, 2023, referenced on BC002225." Without explanation or objection, Defendants stated they were producing "attached copies of Deputy Joel Babb's Citizen Complaints and IA Disciplinary Records." No such documents were attached, and Defendants completely ignored Alek's request that they produce the investigative reports cited. Further, after Deputy Gereb testified that he made a written statement as part of the very investigation RFP 38 asks about (Ex. 11 (Gereb Rough Tr. at 284–85)), Alek asked for that

6

statement and any others. Defendants' counsel stated that Defendants refused to provide copies of the statements to him, let alone Alek. Ex. 10 (Counsel emails) at 1.

Defendants have also misrepresented their own production. For example, Defendants represented that "copies of Interdiction MOU Documents" were "attached" when responding to RFP 39. Not finding those documents, Alek asked via email where the Interdiction MOU documents might be. Defendants then represented that no such Interdiction MOU Documents exist without any explanation for the earlier statement to the contrary. Then, in deposition, Deputy Gereb testified there are MOUs that facilitate BCSO's use of license plate readers, which only patrol cars in the criminal interdiction unit have—completely contradicting Defendants' last assertion. Ex. 11 (Gereb Rough Tr.) at 25, 35.

Evidence contradicts other representations, too. Defendants have not fully responded to RFPs 22, 49–50, claiming that the "Dog Certifications for K-9 Maximus as well as certifications for Herrera and Molina have been produced." Ex. 12 (Defendants' 2.16.24 Letter) at 2. But Alek has not received a single certification for K-9 Maximus or his handlers. BCSO's own policy documents require "compliance with nationally or internationally recognized standards. For example – NATIONAL POLICE CANINE ASSOCIATION (NPCA), NATIONAL NARCOTICS DETECTOR DOG ASSOCIATION (NNDDA), NATIONAL CANINE AUDIT TRACKING SYSTEM (NCATS), INTERNATIONAL POLICE WORKING DOG ASSOCIATION (IPWDA)" (BC2241); the "Canine Unit Supervisor/Trainer" must maintain those certifications (BC002247). Either BCSO has withheld the certification documents or there are no certifications.

**B.     Alek needs immediate relief from Defendants' deficient production.**

There is a danger that responsive items have been or may be destroyed because of Defendants' failure to identify and preserve all potentially relevant items. BCSO's electronic

records policy retains certain items "for a period of two (2) years" (BC3864–67). Records related to the traffic stop of Alek Schott may be destroyed March 16, 2024—just days from now. Items from earlier in 2022 might already be gone. And Deputy Gereb testified that he couldn't get his phone or text records from March 16, 2022, because his phone no longer has that information; to obtain what remains of those records will require a subpoena to his cell phone provider. Ex. 11 (Gereb Rough Tr.) at 242:1–20. Alek sent Defendants two letters to address this issue. Ex. 13 (3.6.24 Letter); Ex. 6 (2.22.24 Letter). Defendants have not responded.

No objections justify Defendants' failure to produce the items Alek requested. Although Defendants made relatively few objections, the objections Defendants did make fall flat.

In responding to Alek's First RFPs, Defendants objected to producing "any documents and communications that are not related to the matter that is the subject of the lawsuit"—even making that objection when Alek requested items mentioning Alek himself. RFP 1, 6–9, 16–17. Defendants' "not related" objection runs afoul of Rule 34, which requires an objection to "state whether any responsive materials are being withheld on that basis of that objection." Fed. Civ. R. P. 34(b)(2). Putting aside the fact that Alek does not know what types of items Defendants might be withholding as "not related," Defendants cannot unilaterally decide that items responsive to Plaintiff's requests—such as items mentioning Alek or the communications of the officers involved in the stop on March 16, 2022 (RFPs 1, 6–9)—are not related to this suit.

Defendants tried a different tactic in objecting to Alek's Second RFPs—lodging identical, boilerplate objections to most of the requests. RFPs 40, 42–44, 47–48, 50–51. Those objections were not tailored to individual requests or made in good faith. For example, it strains credibility for Defendants to object to Alek's request that Defendants produce all documents and communications reflecting access to and revision of the BCSO report summarizing Alek's traffic

stop (called a "SPEARS summary") as "not relevant," "overly broad," "unreasonably burdensome," and "propounded solely for the purpose of harassing[.]" RFP 42.

For three requests, Defendants made objections under Chapter 552 of the Texas Government Code, Chapter 143 of the Texas Local Government Code, and the self-critical analysis privilege. RFPs 47–48, 50. None of those objections hold any water. The statutes and privilege Defendants cite don't apply to discovery at all. Chapter 552 governs public information requests. Chapter 143 governs Texas's civil service system. And the Fifth Circuit does not recognize the self-critical analysis privilege. *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 & n.20 (5th Cir. 2000).[2]

Alek asks the Court to order Defendants to immediately remedy their deficient production.

## II.     Rule 37 requires the Court to award reasonable expenses if this motion is granted.

If a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses included in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

None of the three exceptions to that mandate apply here. *Id.* First, before filing this motion, Alek repeatedly attempted to confer with Defendants. Both parties' counsel participated in two Zoom meetings discussing the status of production. Alek sent numerous follow-up emails and formal letters to aid Defendants in fulfilling their discovery obligations. Alek's counsel even visited the office of Defendants' new counsel to move discovery along and raised issues in-person at the depositions. Second, Defendants' failure to carry out their discovery obligations is not justified. Defendants were initially represented by two attorneys, neither of whom responded to

---

[2] Alek invited Defendants to provide authority supporting these objections. Defendants have not done so.

9

emails or letters from Alek for nearly two months. Although circumstances may arise to prevent compliance with discovery, two months of silence cannot be justified. Now, Defendants have retained a third attorney, and Defendants still have not produced all responsive items—and in some cases refuse to produce items without explanation. Third, Alek is unaware of other circumstances that would make an award of expenses unjust. An award of reasonable expenses is appropriate here.

## CONCLUSION

Alek respectfully asks the Court to grant this motion to compel and proposes that the Court order the following to aid Defendants in fulfilling their discovery obligations:

(1) Defendants must conduct a thorough and diligent search for items responsive to Alek's RFPs as outlined in Exhibit 1, produce all outstanding responsive items within 14 days, and certify that they have produced all responsive items.

(2) If, after a thorough and diligent search, Defendants are unable to identify items responsive to any particular request discussed in Exhibit 1, Defendants must either:

   a. Certify that they possess no other responsive documents for that RFP, or

   b. Certify that they possess additional responsive documents for that RFP, explain why those documents could not be produced within 14 days, and identify a date by which the documents will be produced.

If the Court grants this motion to compel, Alek asks that the Court award reasonable expenses, including attorney's fees, under Rule 37 and allow Alek the opportunity to prove the amount incurred in making this motion.

| | |
|---|---|
| Dated: March 8, 2024 | Respectfully submitted, |
| | /s/ Christen M. Hebert |
| | **Christen M. Hebert** |
| | (TX Bar No. 24099898) |
| | INSTITUTE FOR JUSTICE |
| | 816 Congress Avenue, Suite 960 |
| | Phone: (512) 480-5936 |
| | Fax: (512) 480-5937 |
| | chebert@ij.org |
| | |
| | **Joshua A. Windham*** |
| | (NC Bar No. 51071) |
| | **Daniel Z. Nelson*** |
| | (VA Bar No. 96173) |
| | INSTITUTE FOR JUSTICE |
| | 901 N. Glebe Road, Suite 900 |
| | Arlington, VA 22203 |
| | Phone: (703) 682-9320 |
| | Fax: (703) 682-9321 |
| | jwindham@ij.org |
| | dnelson@ij.org |
| | |
| | *Attorneys for Plaintiff* |
| | *Admitted *Pro Hac Vice* |

## CERTIFICATE OF SERVICE

      I hereby certify that on March 8, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which provided electronic service upon all attorneys of record.

/s/ Christen Mason Hebert
Christen Mason Hebert

*Attorney for Plaintiff*