5:23-CV-706-OLG-RBF

DEFENDANT BEXAR COUNTY AND DEPUTY MOLINA'S

MOTION TO STRIKE PLAINTIFF'S EXPERT

# EXHIBIT A

**RICARDO J. PALACIOS SR. EXPERT REPORT**

# Palacios Accident Reconstruction, LLC

<div style="text-align: right;">
157 Lake Front Drive<br>
Boerne, Texas 78006<br>
Cell 361-701-2751<br>
830-816-5014<br>
palaciossar@sbcglobal.net<br>
PARconsulting.TX.com
</div>

**To:** Alek Schott
Attn: Christie Hebert
Institute for Justice
816 Congress Ave, Suite 970
Austin, TX 78701

**From:** Ricardo J. Palacious, Sr.

**Date:** September 23, 2024

## Overview

1. On October 15, 2023, the Institute for Justice, on behalf of Mr. Alek Schott, hired me to consult on questions and matters related to vehicle movement, lines of sight, whether it was reasonable to believe that Mr. Schott drifted over the fog line, traffic violations, and traffic stops generally.
2. On January 10, 2024, I inspected Mr. Schott's 2019 F250 and visited the site where Mr. Scott passed Deputy Babb of the Bexar County Sheriff's Office on March 16, 2022.
3. On February 1, 2024, the Institute for Justice, on behalf of Mr. Alek Schott, hired me to produce a report that discusses vehicle movement, lines of sight, traffic violations, and whether it was reasonable to conclude that Mr. Schott drifted over the fog line. This document is the report that I produced in response.

## Qualifications

4. I am the owner and manager of Palacios Accident Reconstruction, LLC. I started my company in 2007 and have been analyzing accidents, vehicle movement, and lines of sight, among other things, in my private capacity for at least 17 years and counting.
5. In 2007, I retired from a 21-year career with the Texas Department of Public Safety. At the time of my retirement, I had been a Sergeant with the Highway Safety Service for over 10 years.

<div style="text-align: center;">**EXHIBIT "A"**</div>

6. At the Texas Department of Public Safety, I worked as an Investigator with the Narcotics Service and as a Trooper and later a Sergeant with Highway Patrol Service.
7. In my role as a Trooper with Highway Patrol Service, I enforced Texas traffic laws and provided back up for sheriffs' departments as needed, among other things.
8. As a Sergeant with the Highway Safety Service, I trained, counseled, and evaluated the performance of other troopers. Among other things, I performed check rides with subordinates to evaluate how the officers were identifying and responding to traffic violations. I estimate that I conducted between 300 and 400 check rides during my time as a Sergeant with the Highway Safety Service.
9. From 2011 to 2014, I worked as a traffic officer with the University of Texas San Antonio Police Department. In that position, I estimate that I wrote approximately 100 traffic tickets and warnings a week. Among other things, I looked for equipment violations and for things like drifting and failing to drive in a single lane as indicators of impaired driving.
10. Additionally, as a pure coincidence, I previously owned and drove a black, 2019 F250. I now own and drive a 2023 Ford F250.
11. My CV listing my qualifications, specifically my training, certifications, experience, and awards, is attached as Appendix A.
12. A list of the cases in which I have testified as expert in the last 4 years is attached as Appendix B.
13. My agreements with the Institute for Justice for this matter are attached as Appendix C and Appendix D. Appendix C and D collectively are the statement of my compensation to be paid for my study and potential testimony in this case. My payment is not and was not conditioned on reaching a specific finding or conclusion.

**Analysis**

14. I reviewed the complaint that Mr. Schott filed.
15. I watched all videos linked in Mr. Schott's complaint. Those videos include Mr. Schott's dashboard camera footage of the time before he passed Deputy Babb and when he passed Deputy Babb (Dashcam), Deputy Babb's body camera footage, Deputy Molina's body camera footage, and Deputy Gereb's body camera footage.
16. I reviewed the transcripts from the depositions of Deputy Babb and Deputy Gereb.
17. I reviewed footage from Mr. Schott's dash camera from the time that Mr. Schott passed Deputy Babb's vehicle to the time when Mr. Schott was pulled over. The files I received were named "Alek Dashcam (After Passing Babb)" and "Alek Dashcam (Stop)".
18. Mr. Schott was traveling in the far left lane of the I-35 Northbound highway when he passed Deputy Babb.
19. Mr. Schott was driving a 2019 black Ford F250.

2

20. When Mr. Schott passed him, Deputy Babb was seated in an SUV patrol vehicle off of the shoulder of the I-35 Northbound highway.
21. I understand that Deputy Babb claims to have stopped Mr. Schott for a traffic violation. During the traffic stop, as captured by Deputy Babb's body worn camera footage, Deputy Babb claimed that Mr. Schott drifted over the fog line "pretty hard."
22. Deputy Babb testified that traffic violation was "failure to maintain a lane" which he claims to have witnessed when he saw a tire of Mr. Schott's vehicle "hit the line," referring to the yellow painted line on the left side of the highway, which he called the fog line. Deputy Babb testified that a driver commits the offense of failure to maintain a lane when a tire of the driver's vehicle touches the yellow painted line.
23. I reviewed § 545.58(a) of the Texas Transportation Code, which says:

    An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:
    (1) to stop, stand, or park;
    (2) to accelerate before entering the main traveled lane of traffic;
    (3) to decelerate before making a right turn;
    (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
    (5) to allow another vehicle traveling faster to pass;
    (6) as permitted or required by an official traffic-control device; or
    (7) to avoid a collision.

24. The statute specifically defines driving on the shoulder as driving to the right of the roadway. Based on my knowledge and experience, I understand a driver to violate § 545.58(a) when the driver's vehicle crosses over the line that divides a lane from the shoulder.
25. I reviewed § 545.60(a) of the Texas Transportation Code, which says:

    An operator on a roadway divided into two or more clearly marked lanes for traffic:
    (1) shall drive as nearly as practical entirely within a single lane; and
    (2) may not move from the lane unless that movement can be made safely.

26. Based on my knowledge and experience, I understand a driver to violate § 545.60(a) when a driver's vehicle leaves the lane it is traveling in and does so in an unsafe manner. At least one of the vehicle's tires must cross out of the travel lane for the vehicle to have moved out of its travel lane.

3

27. Based on my knowledge and experience, I understand that momentarily touching the line on the outside of a travel lane is not a traffic violation.
28. Based on my knowledge and experience, an officer familiar with and trained on the Texas Transportation Code and traffic enforcement should know that it is not a traffic violation to hit or touch the line marking the outside of the travel lane.
29. On January 10, 2024, I met with Mr. Schott and his counsel. I inspected Mr. Schott's truck and visited the portion of I-35 Northbound where Mr. Schott passed Deputy Babb. The evidence gathered during and the results of my January 10th inspection of the truck and site visit are expressly incorporated into this report and will be provided. I reserve the right to use any of the evidence that I gathered as an exhibit to support my opinions and testimony.
30. On January 10, 2024, I measured parts of the truck, including the height and width of the truck and its windshield. I also evaluated the width of the truck's tires.
31. On January 10, 2024, I took pictures of the placement of Mr. Schott's dash camera and asked Mr. Schott if the location of his dash camera was the same as it was on March 16, 2022. Mr. Schott confirmed that he had not changed the location of the dash camera.
32. In evaluating Mr. Schott's truck on January 10, 2024 and watching the footage from Mr. Schott's dash camera, I did not see any indication that the dash camera was in a different location on Mr. Schott's truck on January 10, 2024 versus March 16, 2022. I therefore credit Mr. Schott's statement that his dash camera was in the same spot on both January 10, 2024 and March 16, 2022.
33. Using the footage from Mr. Schott's dash camera from March 16, 2022, I identified the location where Mr. Schott passed Deputy Babb on I-35 Northbound. This was made easier by the fact Mr. Schott passed a road sign for Exit 35, Luckey Road, just before driving by Deputy Babb's patrol car.
34. On January 10, 2024, I visited the portion of I-35 Northbound where Mr. Schott passed Deputy Babb just after 11 am to evaluate the flow of traffic as it would have been when Deputy Babb stopped Mr. Schott at approximately 11:15 am on March 16, 2022. The weather that day was clear and sunny, but windy. Because of the wind, I was unable to deploy my drone to take pictures and footage of the site.
35. Using footage from Mr. Schott's dashboard camera from March 16, 2022, observations from my site visit, and my own familiarity of the structure of Texas highways, I captured the following information about the portion of the highway that Mr. Schott was driving on when he passed Deputy Babb:

4



36. The correct term for the yellow line on the outside of the left travel lane is "median line."
37. The correct term for the white line on the outside of the right travel line is "fog line."
38. The term "shoulder" only refers to the portion of the roadway to the right of the roadway.
39. Deputy Babb incorrectly referred to the median line as the fog line. To avoid confusion, I simply refer to the median line as the yellow line.
40. There are 10 center stripes between the Luckey Road sign and where Deputy Babb's vehicle was parked. Deputy Babb's patrol vehicle was parked approximately 460 feet from the Luckey Road sign.
41. I visited the spot where I estimate Deputy Babb's patrol vehicle was parked in the grass off the right shoulder of I-35 Northbound. Among other things, I walked the grass strip, which is a barrow ditch, and took measurements of the roadway and the ditch.
42. On March 16, 2022, Deputy Babb was parked in the barrow ditch between the shoulder of I-35 Northbound and a frontage road that runs parallel to I-35 for that portion of the highway. The barrow ditch slopes downward from I-35, bottoms into a small valley, before sloping up to the frontage road. The middle of the barrow ditch is lower while the portions of the ditch near I-35 Northbound and the frontage road are higher.

5

 

43. The structure of the barrow ditch and the place where Deputy Babb parked his patrol vehicle mean that the wheels of Deputy Babb's patrol vehicle were below the plane of the I-35 Northbound roadway and that Deputy Babb's patrol vehicle would have been angled slightly up.
44. Mr. Schott's dashboard camera footage confirms my conclusions that Deputy Babb's patrol car was lower than the I-35 Northbound roadway with the front tires slightly higher than the back tires.



45. I estimate that cars driving that portion of the highway where Mr. Schott passed Deputy Babb average a speed around 80 to 85 miles per hour. It is likely, however, that cars passing Deputy Babb on March 16, 2022 slowed slightly when drivers saw a police car on the side of the road.
46. I estimate that Deputy Babb was seated 25 to 30 feet from the far left lane of I-35 Northbound and that Deputy Babb was 37 to 42 feet from the yellow line on the left side of the highway.

6

47. There are approximately 9 inches from the side of the yellow line on the inside of the left lane to the rumble strip.



48. The tires on Mr. Schott's truck were 10.8 inches wide.
49. If Mr. Schott's tires had fully crossed the yellow line, the tires would have hit the rumble strip. There was not enough space between the outside of the yellow line and the rubble strip for Mr. Schott's tires to travel without running on the rumble strip.
50. On January 10, 2024, I ran several tests with Mr. Schott's truck. I conducted two groups of tests.
51. In the first group of tests, I had Mr. Schott drive his truck three times by the place where I estimate that Deputy Babb was sitting in his patrol vehicle on March 16, 2022. For each of those passes, I had my assistant drive behind Mr. Schott's truck to film what his tires were doing. I obtained the footage from Mr. Schott's dash camera for each of these passes. The audio of Mr. Schott's dash camera malfunctioned during the testing.
52. I refer to the three passes in the first group of tests as Pass 1, Pass 2, and Pass 3. For Pass 1, I asked Mr. Schott to make sure that his truck remained entirely in the left travel lane. For Pass 2, I asked Mr. Schott to drive on the yellow line that marks the outside of the left travel lane. For Pass 3, I asked Mr. Schott to cross over the yellow line.
53. The following table matches my instruction, the footage from Mr. Schott's dash camera, and my assistant's footage:

7

| Pass | Instruction | Mr. Schott's Dash Camera Footage | My Assistant's Footage |
|---|---|---|---|
| 1 | Remain in lane | 20240110_130021_TF | IMG_2419* |
| 2 | Drive on yellow line | 20240110_130451_TF | IMG_2420 |
| 3 | Cross yellow line | 20240110_131343_TF | IMG_2421 |

*My assistant's footage for the first pass is slightly out of focus because the recording device did not automatically focus correctly. However, the footage still captures the relationship between the location of Mr. Schott's tires and the yellow line.

54. From Pass 1, 2, and 3, I confirmed what Mr. Schott's dash camera would show when his truck was in its lane, on the yellow line, or cross the yellow line. I took the following screenshots to illustrate my assessment of what Mr. Schott's dash camera would capture when his truck was in the three different positions:

   a. Pass 1: View when Mr. Schott's truck is completely in the left travel lane



8


b. Pass 2: View when the tires of Mr. Schott's truck are on the yellow line



c. Pass 3: View when the tires of Mr. Schott's truck cross the yellow line



55. I identified that when Mr. Schott's truck is within the travel lane, the yellow line appears to the left of the left indentation in the hood of Mr. Schott's truck. When Mr. Schott's truck tires touch the yellow line, the yellow line appears in the center of the left indentation in the hood of Mr. Schott's truck. When the tires of Mr. Schott's truck cross

the yellow line, the yellow line appears to the right of the left indentation in the hood of Mr. Schott's truck.

56. I compared the views from Pass 1, 2, and 3 to the footage from Mr. Schott's dash camera on March 16, 2022.
57. There was no point in any of the footage from March 16, 2022 that I reviewed where I saw evidence that Mr. Schott even approached the shoulder before Mr. Schott stopped for the traffic stop performed by Deputy Babb.
58. There was no point in any of the footage from March 16, 2022 that I reviewed where I saw evidence that Mr. Schott's truck hit or crossed the yellow line.
59. There was no point in the footage of the time before Mr. Schott passed (Dashcam in the complaint) where I saw evidence that Mr. Schott's truck hit or crossed the yellow line.
60. There was no point in the footage of the time after Mr. Schott passed Deputy Babb (Alek Dashcam (After Passing Babb)) where I saw evidence that Mr. Schott's truck hit or crossed the yellow line.
61. There was no point in the footage of the time immediately before the traffic stop (Alek Dashcam (Stop)) where I saw evidence that Mr. Schott's truck hit or crossed the yellow line.
62. For the second group of tests, I again had Mr. Schott drive his truck three times by the place where I estimate that Deputy Babb was sitting in his patrol vehicle on March 16, 2022. For each of those passes, I filmed Mr. Schott's truck as it approached the location where I estimate Deputy Babb had been sitting in his patrol car. I filmed with my camera outside of my vehicle to avoid any glare issues and to capture the clearest possible view of Mr. Schott's truck. I obtained the footage from Mr. Schott's dash camera for each of these passes. The audio of Mr. Schott's dash camera malfunctioned during the testing.
63. I refer to the three passes in the second group of tests as Pass 4, Pass 5, and Pass 6. For Pass 4, I asked Mr. Schott to make sure that his truck remained entirely in the left lane. For Pass 5, I asked Mr. Schott to drive on the yellow line between that marks the outside of the left travel lane. For Pass 6, I asked Mr. Schott to cross over the yellow line.
64. The following table matches the instruction, the footage from Mr. Schott's dash camera, and my assistant's footage:

| Pass | Instruction | Mr. Schott's Dash Camera Footage | Footage from Deputy Babb's estimated location |
| --- | --- | --- | --- |
| 4 | Remain in lane | 20240110_135401_NF | IMG_9263 |
| 5 | Drive on yellow line | 20240110_135712_TF | IMG_9265 |
| 6 | Cross yellow line | 20240110_140113_EF | IMG_9266 |

10

65. From Pass 4, 5, and 6, I evaluated what Deputy Babb would have seen from his position as Mr. Schott passed by in the left lane. I took the following screenshots to illustrate my assessment of what Mr. Schott's dash camera would capture when his truck was in the three different positions:

   a. Pass 4: View when Mr. Schott's truck is completely in the left travel lane



b. Pass 5: View when the tires of Mr. Schott's truck are on the yellow line



c. Pass 6: View when the tires of Mr. Schott's truck cross the yellow line



66. From the location where I estimate that Deputy Babb had been sitting in his patrol car, I could not see when or if the left tires of Mr. Schott's truck hit or crossed the yellow line.
67. I have extensively reviewed and analyzed the footage from Pass 4, 5, and 6. Even after I carefully scrutinized the footage, it is very difficult, if not impossible, to identify where the left tires of Mr. Schott's truck were located in relationship to the yellow line with the naked eye.
68. Deputy Babb's live view would have been more blocked than my live view. He was inside his patrol vehicle, so his lines of sight would have been limited through his windshield. He also had several pieces of equipment that would have blocked his view.
69. Additionally, in reviewing the footage from Mr. Schott's dash camera from the time when Mr. Schott passed Deputy Babb, I noticed that a silver truck was in the right lane of I-35 Northbound when Mr. Schott passed Deputy Babb's patrol vehicle. The silver truck obscured Deputy Babb's view of Mr. Schott's truck for a portion of the time that Mr. Schott passed Deputy Babb.
70. As Mr. Schott's truck approached Deputy Babb's position, Deputy Babb could not have seen if the left wheels of Mr. Schott's truck hit or minorly cross the yellow line from his vantage point given his position off of the right side of the highway, his distance from the yellow line and left travel lane, the rate of speed of traffic on the highway, the movement of other vehicles on the highway, and the upward angle of his patrol vehicle.
71. Deputy Babb could only have seen Mr. Schott cross the yellow line if Mr. Schott's truck had crossed the line in an extreme and exaggerated fashion that would have been very apparent on Mr. Schott's dash camera footage. Deputy Babb himself stated during the traffic stop that Mr. Schott had drifted over the fog line "pretty hard." If that had occurred, I would expect to see evidence on the dash camera footage that Mr. Schott veered strongly to the left and then returned to the travel lane by jerking the wheel back to the right. No such movement was evident on the dash camera footage.
72. Deputy Babb's body worn camera footage (Babb A) begins after Deputy Babb has already pulled on to the highway and is driving 69 miles per hour. It does not show Alek's truck driving in the far left lane of I-35 Northbound.
73. Deputy Babb's body worn camera footage shows a speedometer displaying the patrol vehicle's speed with a green number at the bottom center of the screen. The speedometer is not always visible, but the movement of Deputy Babb's body gives occasional glimpses of the speedometer throughout the footage.
74.  During the first 15 seconds of the footage from his body worn camera, Deputy Babb accelerated from 69 miles per hour to 96 miles per hour. Glimpses of that speedometer around the 1:11 minute mark (time stamp 16:14:36) show Deputy Babb going over 100 mph.

13

75. In reviewing Mr. Schott's dash camera footage and Deputy Babb's body worn camera footage, I matched up the following vehicles that both men passed on the highway:

| Passed Vehicle | Schott Footage | Babb A |
|---|---|---|
| Tractor trailer with red cab and "NYK" on the side | Alek Dashcam (After Passing Babb) at 0:10; time stamp 11:13:29 | 0:42; time stamp 16:14:07 |
| Tractor trailer with "SIM Freight" on the trailer | Alek Dashcam (After Passing Babb) at 0:48; time stamp 11:14:08 | 1:20; time stamp 16:14:45 |
| Black minivan | Alek Dashcam (Stop) at 0:08; time stamp 11:14:29 | 1:31; time stamp 16:14:56 |
| Black truck | Alek Dashcam (Stop) at 0:20; time stamp 11:14:41 | 1:35; time stamp 16:15:00 |

76. Deputy Babb's body worn camera footage shows him typing Mr. Schott's license plate number into his CAD at minute mark 1:15 (time stamp 16:14:40) and again at 1:31 (time stamp (16:14:55).
77. Deputy Babb's body worn camera footage shows him substantially decelerating around minute mark 1:43 (time stamp 16:15:08). At minute mark 1:52 (16:15:17), Deputy Babb's speed has decreased to 60 miles per hour. He appears to turn off the road and onto the shoulder at minute mark 2:02 (time stamp 16:15:27).
78. The footage from Alek Dashcam (Stop) shows Mr. Schott moving into the right travel lane at minute mark 0:35 (time stamp 11:14:56) and then pulling into the shoulder to come to a complete stop.
79. Based on my review of the footage, my knowledge, and experience, I estimate that any amount of time that Deputy Babb's patrol vehicle was directly behind Mr. Schott's truck was minimal, likely less than 30 seconds.
80. Based on my review of the footage, my knowledge, and experience, I cannot say with precision when, during the period that Deputy Babb was following Mr. Schott, Deputy Babb might have been able to see whether Mr. Schott's truck hit or crossed the yellow line. However, it is very unlikely that Deputy Babb could have seen whether Mr. Schott's truck hit or crossed the yellow line before Deputy Babb passed the black minivan (Babb A minute mark 1:31; time stamp 16:14:56) given the distance the Deputy Babb was behind Mr. Schott, the speed Deputy Babb used to catch up to Mr. Schott, the number of

14

vehicles Deputy Babb passed before pulling Mr. Schott over, and that fact that Deputy Babb was typing on his CAD while driving.

**Conclusions**

81. Based on my experience, observations, and analysis, I conclude the following:
    a. During the portion of Mr. Schott's travels that I watched via Mr. Schott's dashcam footage, Mr. Scott's truck did not approach the shoulder until he drove on to the shoulder for the traffic stop performed by Deputy Babb.
    b. During the portion of Mr. Schott's travels that I watched via Mr. Schott's dashcam footage, Mr. Schott's truck did not cross or touch the yellow line on the left side of I-35 Northbound.
    c. As Mr. Schott's truck approached Deputy Babb's position, Deputy Babb could not have seen if the left wheels of Mr. Schott's truck hit or minorly crossed the yellow line from his vantage point given his position off of the right side of the highway, his distance from the yellow line and left travel lane, the rate of speed of traffic on the highway, the movement of other vehicles on the highway, and the upward angle of his patrol vehicle.
    d. Deputy Babb could only have seen Mr. Schott cross the yellow line if Mr. Schott's truck had crossed the line in an extreme and exaggerated fashion that would have been very apparent on Mr. Schott's dash camera footage. If that had occurred, I would expect to see evidence on the dash camera footage that Mr. Schott veered strongly to the left and then returned to the travel lane by jerking the wheel back to the right. No such movement was evident on the dash camera footage.
    e. Mr. Schott's truck did not cross or even touch the yellow line on the left side of I-35 Northbound after he passed Deputy Babb's patrol car. Mr. Schott's truck stayed in its lane until Mr. Schott began moving to the right to pull off to the side of the highway.
    f. Based on my review of the footage, my knowledge, and experience, I estimate that any amount of time that Deputy Babb's patrol vehicle was directly behind Mr. Schott's truck was minimal, likely less than 30 seconds.
    g. It is very unlikely that Deputy Babb could have seen whether Mr. Schott's truck hit or crossed the yellow line before Deputy Babb passed the black minivan (Babb A minute mark 1:31; time stamp 16:14:56) given the distance the Deputy Babb was behind Mr. Schott, the speed Deputy Babb used to catch up to Mr. Schott, the number of vehicles Deputy Babb passed before pulling Mr. Schott over, and that fact that Deputy Babb was typing on his CAD while driving.

15

82. Based on my experience, knowledge, and observations, I identified no objective basis to conclude that Mr. Schott violated Texas Transportation Code § 545.58(a) or Texas Transportation Code § 545.60(a) on March 16, 2022.
83. Based on my experience, knowledge, and observations, I identified no objective basis that would have provided support for an officer to conclude that Mr. Schott violated Texas Transportation Code § 545.58(a) or Texas Transportation Code § 545.60(a) on March 16, 2022.
84. The observations, discussions, and conclusions/opinions in this report are based on my education, training, and experience after reviewing the specified evidence. Should any additional information be uncovered or made available, I retain the right to revise or supplement this report accordingly.

Respectfully submitted,

*[signature: Ricardo J. Palacios]*

Ricardo J. Palacios, Sr.
License Number A14971
Palacios Accident Reconstruction, LLC

Complaints me or my business should be directed to:
Texas Department of Public Safety Private Security Bureau
PO Box 4087
Austin, TX, 78773
Telephone: 512-424-7710
Fax:  512-424-7729