UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ALEK SCHOTT<br><br>*Plaintiff,*<br><br>v.<br><br>JOEL BABB, in his individual and official capacity; MARTIN A. MOLINA III, in his individual and official capacity; JAVIER SALAZAR, in his individual and official capacity; and BEXAR COUNTY, TEXAS,<br><br>*Defendants.* | Civil Action No. 5:23-CV-00706-OLG-RBF |

## PLAINTIFF'S RESPONSE TO DEFENDANTS BEXAR COUNTY'S AND MARTIN MOLINA III'S MOTION TO STRIKE EXPERT WITNESS

Defendants Bexar County and Martin Molina want the Court to strike expert testimony that will help this Court (at summary judgment) and the jury (at trial) draw more informed conclusions about what happened on March 16, 2022. The Court should decline. The context is Plaintiff Alek Schott's first claim: that Defendant Babb violated the Fourth Amendment by stopping Alek for a traffic violation he did not commit. In a normal case, the parties would watch Babb's dashcam video and argue about whether it showed a violation. But here, Babb "manually turned off" his camera right before the supposed violation, Windham Decl., Ex. A (2023 IA Report), BC8307, thwarting the best evidence of what Babb saw. Fortunately, Alek had his own dashcam. But that footage, by definition, does not display Alek's tires or Babb's viewpoint. So Alek hired an expert, Sergeant Ricardo Palacios, to review his video, visit the site, take measurements, run test drives, and offer informed opinions about where Alek's tires were positioned and what Babb could have seen. That's a proper use of expert testimony, and nothing in the motion to strike shows otherwise.

1

**Background**

This is a Fourth Amendment challenge to a baseless traffic stop, stop extension, and car search, and to the Bexar County policy or custom that caused them. *See* Compl. ¶¶ 1–6. One of the main issues in this case is whether Babb, the Bexar County deputy who stopped Alek on March 16, 2022, actually observed a traffic violation. After the stop, Babb claimed "the only reason I'm stopping you is that when I was watching you over there" (from his position on the side of the road) "you were drifting over that fog line pretty hard." Compl. ¶ 35. But Alek alleges he "did not drift over or touch the line on either side of his lane," and even if he had, "Babb could not have seen" it from his position. *Id.* ¶¶ 27, 30. The case, having survived a motion to dismiss, is now in discovery.

To prove the initial stop violated the Fourth Amendment, Alek must show that Babb lacked "probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). An officer has probable cause when "the facts available to him" suggest a "fair probability" of crime. *Florida v. Harris*, 568 U.S. 237, 243–44 (2013) (cleaned up). To make a traffic stop based on personal observation, the officer must actually see a traffic violation. *See United States v. Raney*, 633 F.3d 385, 390 (5th Cir. 2011) ("If the alleged traffic violation forming the basis of the stop was not a violation of state law, there is no objective basis justifying the stop."); *United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006) ("the constitutionality of the officer's stop of [the] vehicle must stand or fall based on whether [the driver] violated Texas law"). In most cases, the officer would have dashcam footage from his perspective and the parties would argue about whether that footage shows a violation. *See, e.g.*, *United States v. Alvarado-Zarza*, 782 F.3d 246, 248 (5th Cir. 2015) (describing how officer's dashcam was played at a hearing on the validity of a traffic stop).

But here, Babb mysteriously had no dashcam footage from the stop. Compl. ¶ 28. And we now know why: According to a Bexar County internal investigation launched after this case was filed, Babb "manually turned off his mobile recording device" right before the supposed traffic violation, Windham Decl., Ex. A (2023 IA Report), BC8307, so there is no footage from Babb's perspective. Fortunately, Alek had his own dashcam that day and it caught the moment when Babb claims to have seen Alek cross over the line. Compl. ¶ 27 & n.1 (link to Alek's video). But Alek's video, by definition, does not display his tires or Babb's viewpoint.

Because Babb's choice to disable his dashcam thwarted the best evidence of what he saw, Alek hired an expert to help connect the dots—somebody who could determine where Alek's tires sat on the road during his dashcam video and whether Babb even had the vantage point he would have needed to see Alek cross over the line. Alek chose Ricardo Palacios, a former highway patrol officer and sergeant at the Texas Department of Public Safety with years of experience in accident reconstruction. As discussed below, Sergeant Palacios offers standard expert testimony that will help the factfinder reach more informed conclusions about what Babb saw on March 16, 2022.

## Argument

Defendants' motion to strike lacks merit and should be denied.[1] Section I first shows that Sergeant Palacios's testimony is "relevant and reliable" as Rule 702 requires. *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). The testimony is relevant because it clarifies a key fact issue: whether Defendant Babb actually observed Alek cross over the line. And the testimony is reliable because it's based on Palacios's experience in law enforcement and accident reconstruction, and on his inspection of

---

[1] For convenience, Alek will refer to the movants, Defendants Bexar County and Martin Molina, as "Defendants." Defendant Babb has not filed a motion to strike or joined this one.

3

Alek's truck, road measurements, test drives, and review of the evidence. Defendants—who did not even try to depose Palacios before filing their motion—dispute none of this. Section II then refutes Defendants' specific objections. In short, Palacios's testimony will not "invade" the jury's role. Mot. Strike 2–5. Rather, it will help the factfinder draw more informed conclusions about what Babb saw. That help is necessary because, again, Babb disabled his own dashcam. Palacios's testimony about where Alek's tires were positioned during his personal dashcam video, and about Babb's line of sight, will shed light on what Babb did—and did not—observe. The Court should reject Defendants' attempt to keep us in the dark.

I.  **Sergeant Palacios's testimony is relevant and reliable as Rule 702 requires.**

Before turning to Defendants' specific objections, Alek explains why Sergeant Palacios's testimony satisfies Rule 702. An expert may offer an "opinion" if his "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" and the opinion "is based on sufficient facts or data," "the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. More simply, Palacios can offer opinions that are "relevant and reliable." *Puga*, 922 F.3d at 293 (citing *Daubert*, 509 U.S. at 589). Defendants—besides a few specific objections addressed in Section II—do not contest the relevance or reliability of Palacios's testimony. In any case, Rule 702 is met.

First, Palacios's testimony is relevant because it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). A key fact issue in this case is whether Babb actually observed Alek cross over the line. *Compare* Mot. Strike 1 ("Deputy Babb reports that he observed Plaintiff commit the traffic offense of drifting over the fog line."), *with* Compl. ¶¶ 27, 30 (alleging that Alek "did not drift over or touch the line on either side of his lane," and even if he had, "Babb could not have seen" it from his vantage point). But Babb's choice to

4

disable his dashcam right before the supposed violation foreclosed the best evidence of what he saw. That leaves us with Alek's personal dashcam, which displays Alek's viewpoint as he passes Babb—but, by definition, does not display Alek's tires or Babb's viewpoint. *See* Compl. n.1 (link to Alek's video). Palacios's report helps connect the dots: He performs a detailed analysis of Alek's truck, the road, and Babb's line of sight, and offers informed opinions about where Alek's tires were positioned and whether Babb could have seen them. That analysis will help the factfinder reach more informed conclusions about what Babb saw.

Second, Palacios's testimony is reliable because it's "based on sufficient facts or data," "is the product of reliable principles and methods" and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d). Palacios has years of experience "analyzing accidents, vehicle movement, and lines of sight" from his former career at the Texas Department of Public Safety making and overseeing traffic stops, and his current work running an accident reconstruction company. Windham Decl., Ex. B (Palacios Report) ¶¶ 4–9. He's taken several courses on accident reconstruction, like one on "Speed, Time and Distance Calculations." Palacios Report, App. A, 1–2. Palacios used all of that training and experience to visit the spot on I-35 where Alek was stopped, measure road features and angles, inspect Alek's car, run test drives, and produce photo re-creations. *Id.* ¶¶ 34–80. Then, he used the data he collected to determine the relative locations of the vehicles, the position of Alek's tires on his dashcam, and Babb's field of vision. *Id*. In short, Palacios's report has all the hallmarks of reliability. Indeed, this Court recently rejected a motion to strike an expert's opinion about a traffic incident on I-35 where the expert was a former police officer who reviewed videos from the incident and charted out his reasoning. *See Davis v. Cisneros*, No. 1:21-CV-565-RP, 2024 WL 3799461, at *4 (W.D. Tex. Aug. 12, 2024). Sergeant Palacios's testimony here is no less reliable.

5

## II.  Sergeant Palacios's testimony will help clarify what Babb actually observed.

That brings us to the substance of Defendants' motion to strike. Rather than contest the general relevance or reliability of Sergeant Palacios's testimony under Rule 702, Defendants raise three specific objections: (1) Palacios's opinion about whether Alek's dashcam shows him cross over the line will "invade the province of the jury," (2) Palacios's opinion about whether Babb could have seen Alek cross the line is mere "speculation," and (3) Palacios's opinion that briefly touching the line is not a traffic violation is a "legal conclusion that invades the province of the court." Mot. Strike 2–5. All three objections lack merit.

### A.  Palacios's testimony on the position of Alek's tires clarifies Alek's video.

Palacios testified that "[d]uring the portion of Mr. Schott's travels that I watched via Mr. Schott's dashcam footage, Mr. Schott's truck did not cross or touch the yellow line on the left side of I-35 Northbound." Palacios Report ¶ 81(b). That conclusion was based on Palacios's inspection of Alek's truck, measurements of the road, and test drives at the spot where Alek was stopped. *Id.* ¶¶ 35–61. Defendants argue it's the jury's job to decide what Alek's video shows, and cite four cases excluding opinions about videos. But in all four cases, the expert was "no better suited than a lay person" to interpret the video. *Castro v. Wal-Mart Real Est. Bus. Tr.*, 645 F. Supp. 3d 638, 645 (W.D. Tex. Dec. 8, 2022) (excluding opinion about the condition of a mat on video the jury could watch for themselves); *Slack v. City of San Antonio*, No. SA-18-CV-01117-JKP, 2021 WL 1390428, at *4 (W.D. Tex. Apr. 13, 2021) (excluding opinion about what video showed where the expert did "not have any specialized training or experience to interpret the video"); *Roundtree v. City of San Antonio*, No. SA-18-CV01117-JKP-ESC, 2022 WL 906405, at *4 (W.D. Tex. Mar. 28, 2022) (same in related case); *Dunlap v. Hood*, No. 3-07-CV-2147-BD, 2009 WL 362292, at *1 (N.D. Tex. Feb. 13, 2009) (excluding opinion about what video showed where the expert "reached

6

[his] conclusion just by looking at the images taken from the surveillance video, unaided by any specialized knowledge or experience").

These cases are inapposite because Alek's dashcam video—unlike all the videos discussed above—does not directly display the fact Palacios seeks to clarify: the position of Alek's tires on the road. The factfinder can, of course, try to figure that out based on the position of Alek's hood. But that's hard to do without knowing where Alek's tires sit underneath the hood. ([Give it a try.](#)) Palacios's testimony bridges that factual gap. By inspecting Alek's truck, taking measurements, and running test drives, Palacios was able to determine how far to the left Alek's hood would need to appear on his video to show that his tires had crossed the line. Palacios Report ¶¶ 35–61. There is no reason why this Court (at summary judgment) or the jury (at trial) should be forced to watch a video without the context needed to understand it. Especially when the only reason Alek's video has taken on such a key role is that Babb disabled his own dashcam right before the supposed violation. Palacios's testimony, which clarifies the video we *do* have, will help the factfinder draw more informed conclusions about what happened.

That's a standard use of expert testimony. Consider *United States v. Alvarado-Zarza*, 782 F.3d 246 (5th Cir. 2015), which involved a Fourth Amendment challenge to a baseless traffic stop. The stopping officer had dashcam video but it was not self-evident whether the driver committed a violation—failing to signal at least 100 feet before turning. *Id.* at 248. So the driver brought in an expert, a former police officer turned private investigator, who "went to the scene and measured the distances" and gave his opinion about when the driver used his signal. *Id*. Because the expert's interpretation of the video was "based . . . on physical measurements" at the site, the Court found it credible and helpful. *Id.* at 250–51. Sergeant Palacios's testimony is similar: It uses tests and site measurements to explain where Alek's tires sat on his dashcam video.

7

Courts frequently allow this sort of testimony outside the Fourth Amendment context, too. Two months ago, this Court rejected a motion to strike an expert's opinion about a traffic incident on I-35 where the expert was a former police officer who reviewed videos and charted out his analysis. *See Davis v. Cisneros*, No. 1:21-CV-565-RP, 2024 WL 3799461, at *4 (W.D. Tex. Aug. 12, 2024). Three months before that, a sister court allowed an expert's opinion on whether the movement of ships on a collision video would have caused the plaintiff (a deckhand) to fall. *See In re FMT Indus., LLC*, No. CV 23-2388, 2024 WL 2803202, at *6 (E.D. La. May 31, 2024). And these rulings make sense, because the Court's role as "gatekeeper" of expert testimony "is not intended to serve as a replacement for the adversary system," under which the factfinder typically weighs competing expert opinions on its own. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (quoting Rule 702 advisory committee note); *see also Puga*, 922 F.3d at 294 ("rejection of expert testimony is the exception rather than the rule" (quoting Rule 702 advisory committee note)). Here, the factfinder is more than capable of assigning Palacios's testimony the probative weight it deserves. Striking his testimony now, though, would do exactly what Defendants claim to fear: It would invade the factfinder's role.

**B.    Palacios's testimony on Babb's line of sight is based on facts, not speculation.**

Palacios testified that "Deputy Babb could not have seen if the left wheels of Mr. Schott's truck hit or minorly crossed the yellow line from his vantage point." Palacios Report ¶ 81(c)–(d). Defendants cast this testimony as "speculation." Mot. Strike 5. But it's not speculation to base an opinion "on sufficient facts or data." Fed. R. Evid. 702(b). And that's what Palacios's report does. Alek's dashcam shows Babb's position on the side of the road as Alek drives by. Palacios Report ¶ 35. That fact, paired with site measurements and test drives with Alek's truck, allowed Palacios to determine Babb's line of sight and even to produce photo re-creations of how Alek's truck would

have looked from Babb's perspective. *Id.* ¶¶ 62–71. Defendants make no attempt to explain how Palacios's methods or conclusions rely on "speculation."

And none of the cases Defendants cite involve remotely similar facts. In all three cases, experts failed to bring any knowledge or expertise to the table that a jury wouldn't already possess when reviewing the video. *See Castro v. Wal-Mart Real Est. Bus. Tr.*, 645 F. Supp. 3d 638, 645 (W.D. Tex. 2022) ("the Court is not convinced that Mr. McNealy's testimony as to the condition of the mat will be helpful to the jury, given that it will primarily rely on video footage available to the jury"); *Bailey v. Ramos*, No. SA-20-CV-00466-XR, 2022 WL 17658641, at *5 (W.D. Tex. Nov. 21, 2022) ("Chief Tiderington is not better suited than a lay person to determine from the video footage whether Plaintiff pushed Ramos"); *Est. of Collins v. Wilburn*, 253 F. Supp. 3d 989, 992 (E.D. Ky. 2017) ("A jury can view the video just as well as Dr. Kirkham."). Here, by contrast, Alek's dashcam doesn't directly display the fact at issue: what Babb saw from his point of view. And Sergeant Palacios *does* bring special knowledge and expertise to the table—his career in law enforcement and accident reconstruction, and his site measurements and test drives—that will help the factfinder reach more informed conclusions about what Babb saw.

C.  **Palacios's passing statutory references do not justify striking his report.**

Palacios also testified that, "[b]ased on my knowledge and experience" as a former police officer who conducted and reviewed hundreds of Texas traffic stops, "momentarily touching the line outside of a travel lane is not a traffic violation." Palacios Report ¶ 27. Defendants object that experts can't offer "legal conclusion[s]." Mot. Strike 4. True enough. But here, Palacios is merely offering some context for his analysis. He's giving his "understand[ing]" of what officers "trained on the Texas Transportation Code and traffic enforcement should know": Merely touching the line is not a violation. Palacios Report ¶¶ 27–28. Then, after setting that context, Palacios proceeds to

9

analyze Alek's lane position throughout his report. The mere fact that Palacios makes "passing reference to a legal principle or assumption in an effort to place his opinions in some sort of context will not justify the outright exclusion of [his] expert[] report in its entirety." *Am Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1047–48 (N.D. Tex. 2022) (quoting *Travelers Indem. Co. of Ill. v. Royal Oak Enters.*, No. 5:02-CV-58-OC-10GRJ, 2004 WL 3770571, at *2 (M.D. Fla. Aug. 20, 2004)). It's hard to grasp why Defendants are so concerned about this. At summary judgment, this Court will reach its own conclusions about Texas traffic law. And if the claim goes to trial, Defendants can seek an appropriate limiting instruction about the scope of Palacios's testimony. At this stage, however, there is no basis for Defendants' request to "Strike and Exclude the testimony and report" in its entirety. Mot. Strike 6.

## Conclusion

If Babb had not disabled his dashcam right before Alek's supposed traffic violation, we would have a video of what he saw. And in that case, some of Defendants' objections might make more sense. But we don't have a video of what Babb saw. Instead, we have Alek's dashcam. And that footage, by definition, does not display Alek's tires or Babb's viewpoint. Only with Sergeant Palacios's expert analysis—analysis based on decades of experience, site measurements, and test drives—can we fully grasp what Alek's video shows. Excluding that testimony wouldn't just be legally wrong; it would be unjust. It would permit Defendants to benefit from Babb's choice to thwart the best evidence of what he saw. The Court shouldn't allow that. The motion to strike should be denied.

Dated: October 17, 2024                                    Respectfully submitted,

/s/ Christen M. Hebert

**Joshua A. Windham\*** (NC Bar No. 51071)           **Christen M. Hebert**
**Daniel Z. Nelson\***(VA Bar No. 96173)              (TX Bar No. 24099898)
**William R. Aronin\*** (NY State Bar No. 4820031)   INSTITUTE FOR JUSTICE
INSTITUTE FOR JUSTICE                                 816 Congress Avenue, Suite 970
901 N. Glebe Road, Suite 900                          Austin, TX 78701
Arlington, VA 22203                                   (512) 480-5936
(703) 682-9320                                        chebert@ij.org
jwindham@ij.org
dnelson@ij.org
waronin@ij.org
\*Admitted *pro hac vice*                             *Attorneys for Plaintiff*

11

## CERTIFICATE OF SERVICE

I certify that on October 17, 2024, a true and correct copy of the foregoing document was served via electronic mail upon all counsel of record.

/s/ Christen Mason Hebert
Christen Mason Hebert