UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ALEK SCHOTT<br><br>*Plaintiff,*<br><br>v.<br><br>JOEL BABB, in his individual and official capacity; MARTIN A. MOLINA III, in his individual and official capacity; JAVIER SALAZAR, in his individual and official capacity; and BEXAR COUNTY, TEXAS,<br><br>*Defendants.* | Civil Action No. 5:23-cv-00706-OLG-RBF |

**PLAINTIFF'S OPPOSED MOTION TO QUASH DEFENDANTS'
SUBPOENAS OF CATHERINE A. CASEY AND RMS CONTROLS, INC.**

Plaintiff Alek Schott files this motion to quash two subpoenas to testify via written questions and produce documents that Defendants[1] Bexar County and Martin Molina sent to third parties Catherine A. Casey and RMS Controls, Inc. The subpoenas are attached as Exhibits A and B. Ms. Casey is a therapist Alek has seen, and RMS is Alek's employer. Alek moves to quash the subpoenas in this Court because the place of compliance is the Law Offices of Charles S. Frigerio in San Antonio, Texas, as Defendants requested records be sent to Mr. Frigerio via email.

**Introduction**

This case is about a Fourth Amendment challenge to a baseless traffic stop, stop extension, and car search, and to the Bexar County policy or custom that caused them. Earlier this year, the Court granted Alek's motion to compel. Dkt. No. 59. The Court ordered Defendants to satisfy their discovery obligations by completing a series of tasks, including producing cell phones of officers

---

[1] For convenience, Alek refers to Defendants Bexar County and Martin Molina as "Defendants."

1

involved with the traffic stop for forensic examination. *Id.* Following a second round of forensic examination of cell phones that Alek discovered existed during depositions, Defendants sent subpoenas to a therapist Alek saw, Ms. Casey, and his employer, RMS, seeking all records pertaining to Alek for a five-year period.

For procedural and substantive reasons, Defendants' subpoenas are improper and should be quashed. To start, Defendants have not served Ms. Casey and RMS with the subpoenas, emailing them instead. But most importantly, the information sought is far out of bounds. Defendants seek privileged and confidential records—records that aren't relevant to the merits questions or damages in this case. Alek alleges the garden-variety emotional harm of "stress and anxiety" from the violation of his constitutional rights. Further, he is not seeking any lost wages or salary-related compensation. He has not designated Ms. Casey or RMS employees as experts, has not listed them as persons with discoverable information that he may use to support his claims, will not call them as witnesses, and will not introduce or rely on their notes or records at trial. And to the extent there is a modicum of *potentially* relevant, nonprotected information in the therapy and employment records, Alek has already given Defendants that information. He already provided his first-hand recollection of the facts of the traffic stop, payment and appointment records for sessions with Ms. Casey, his salary, and his employment history.

And, respectfully, Defendants' subpoenas reflect discovery abuse at its worst—even more so given that the subpoenas seem to have been prepared by a third-party record-retrieval company, RecordTrak, that did not tailor the subpoenas to this dispute. Instead, the generic subpoenas are an overly broad fishing expedition meant to harass. Alek respectfully asks the Court to quash both subpoenas in their entirety.

2

**Background**

Alek brings four Fourth Amendment claims concerning a March 2022 traffic stop. Alek does not claim he suffered physical injuries, lost income, or property damage compensable in this suit. Dkt. No. 1 ¶¶ 123–35. Alek does claim, however, that the violation of his constitutional rights caused him stress and anxiety and deprived him of his sense of security and trust in law-enforcement officers, among other harms. *Id*.

During his deposition, Alek testified that he spoke to a therapist about the traffic stop. Ex. C (Schott Dep. Excerpts) 81:13–85:7. Alek provided information about how many times he attended therapy, how the therapist was identified, and that he visited with her online. *Id.* Through subsequent written discovery, Alek provided the therapist's name—Catherine Casey, a Texas licensed professional counselor. Ex. D (Interrog. Resp.) No. 14. He also provided his payment and appointment records. Ex. E (Produc. Resp.) Nos. 11, 18. However, both during his deposition and through written discovery, Alek objected that communications with Ms. Casey were privileged. *See* Ex. C (Schott Dep. Excerpts) 82:18–84:17; Ex. D (Interrog. Resp.) No. 14; Ex. E (Produc. Resp.) No. 13.

Additionally, during his deposition, Alek provided his educational background, his employment history, his current position and responsibilities, and his salary. Ex. C (Schott Dep. Excerpts) 6:19–11:5. Alek also testified that he was not claiming a loss of wages because of the violation of his rights. *Id.* at 87:3–12. But Defendants subsequently requested Alek's income tax returns for 2021–2023 anyway. Ex. E (Produc. Resp.) No. 13. Alek objected, including on the grounds that "[i]ncome tax returns are highly sensitive documents" that are not disclosed unless "the requesting party demonstrate[s] relevancy and compelling need." *Nat. Gas. Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993) (cleaned up).

Defendants now request that Ms. Casey and RMS answer written questions under oath and provide all their records about Alek. Ex. A (Casey Subpoena); Ex. B (RMS Subpoena). Neither subpoena was served.[2] Instead, both Ms. Casey and an RMS Controls employee provided their email via phone to a person who wanted to give them documents, and the subpoenas were emailed. The subpoenas appear to have been prepared by RecordTrak, a record retrieval service that listed a King of Prussia, Pennsylvania mailing address. *Id.* The subpoenas indicate Ms. Casey and RMS should provide their responses via email to Defendants' counsel Charles Frigerio, whose office is in San Antonio, Texas.[3] *Id.*

Defendants' subpoena of Ms. Casey commands production of "all [of Alek's] medical records in [Ms. Casey's] possession from 10/22/2019 to present," including "office and handwritten notes, test results, correspondence, radiology reports, pathology reports, questionnaires/history & records received by other physicians." Ex. A (Casey Subpoena) at 2. Defendants' subpoena of Alek's employer, RMS, similarly requests "all [of Alek's] employment records from 10/22/2019 to present, including but not limited to, employment applications, personnel files, job descriptions and assignments, performance evaluations, attendance records, correspondence, W2s, wage and salary information, medical records and medical bills, accident reports, compensation and disability claims, insurance coverage information, pension records, and all records relating to employee benefits." Ex. B (RMS Subpoena) at 2. Defendants have refused to withdraw the subpoenas.

---

[2] Although counsel for both parties consented to email service and have emailed throughout this lawsuit, notice and copies of the third-party subpoenas were provided to Alek's counsel via mail. It appears that the only reason to have sent the third-party subpoenas to Alek's counsel via mail rather than email was to shorten the time Alek's counsel had to move to quash.

[3] Alternatively, Ms. Casey and RMS could mail their responses to RecordTrak's Pennsylvania address. Ex. A (Casey Subpoena); Ex. B (RMS Subpoena).

## Legal Standard

Courts "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv); *see Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817–18 (5th Cir. 2004) (setting out the standard to quash or modify a subpoena under Rule 45). "A court may find that a subpoena presents an undue burden," and therefore should be modified or quashed, "when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818. If a subpoena targets a non-party, the court may also consider "the expense and inconvenience to the non-party." *Id.* Subpoenas, though governed primarily by Rule 45, "are also subject to the parameters established by Rule 26." *Deitz v. Performance Food Grp.*, 2021 WL 2715974, at *1 (W.D. Tex. Apr. 21, 2021).

"To challenge a subpoena duces tecum issued to a non-party" via a motion to quash, "a party must have a personal right or privilege with respect to the subpoenaed materials." *Zamora v. GC Servs., LP*, 2017 WL 1861843, at *4 (W.D. Tex. Feb. 17, 2017) (finding a party has "standing to challenge a subpoena [issued to an employer] for his personnel file"); *see also Gray-Standberry v. Ashley Distrib. Servs., Ltd*, 2021 WL 2792984, at *2–3 (W.D. Tex. Mar. 3, 2021) ("[A] party has standing to challenge a subpoena issued to a non-party if the subpoena seeks proprietary, confidential, or other protected information sensitive to the party.").

## Argument

Defendants' subpoenas to Ms. Casey and RMS were not properly served, are not narrowly tailored to this case, and have no purpose except to harass through an improper fishing expedition. Within the overly broad net the generic subpoenas cast, Defendants request irrelevant documents, information that Alek has already provided, privileged therapy records, and confidential employment records. The subpoenas should be quashed in their entirety.

I.  **Defendants' subpoenas are not enforceable.**

Defendants' subpoenas are void. First, as of the filing of this motion, Defendants only sent the subpoenas to Ms. Casey and RMS via email, which means Defendants did not satisfy the personal service requirements of Rule 45. In the Fifth Circuit, personal service of a subpoena is required. *See In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003) (stating that Rule 45 "indicates that proper service requires . . . personal delivery of the subpoena"); *Bergeron v. Great W. Cas. Co.*, No. CIV.A. 14-13, 2015 WL 5307685, at *3 (E.D. La. Sept. 10, 2015) ("Service of a subpoena by Federal Express and email is not sufficient service under FRCP 45 because personal service of a subpoena is required.").

Second, the subpoenas are facially overbroad and therefore improper. *See, e.g.*, *In re O'Hare*, No. H-11-0539, 2012 WL 1377891, at *2 (W.D. Tex. Apr. 19, 2012) (quashing overly broad subpoenas). Defendants' subpoenas seek all medical records and employment records "pertain[ing] to" Alek—that includes therapy notes, test results, personnel files, performance evaluations, attendance records, and so much more—from October 2019 to present. Ex. A (Casey Subpoena); Ex. B (RMS Subpoena). Most, if not all, of these records are entirely irrelevant to Alek's Fourth Amendment claims, his request for damages, or Defendants' defenses. Alek has alleged the limited emotional harm of stress and anxiety. Dkt. No. 1 ¶¶ 123–35. He is not seeking lost wages or income. *Id.*; Ex. C (Schott Dep. Excerpts) 87:3–12. He has not designated Ms. Casey or RMS employees as experts, has not listed them as persons with discoverable information that he may use to support his claims, will not call them as witnesses, and will not introduce or rely on their notes or records.

Third, Alek has already provided any relevant, nonprotected information that would fall within the scope of the subpoenas. Alek has responded to every discovery request served on him.

6

He provided Ms. Casey's name and contact information, the payment records for appointments with her, and the dates of appointments. He also testified about his educational history, his employment history, his current position and duties, and his salary. If something additional is needed, Defendants should first ask Alek, not third parties. *See* Fed. R. Civ. P. 26(b)(2)(C) (A court "must limit" discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").

But Defendants chose to subpoena third parties because their goal is not to obtain discoverable information but to fish for evidence and harass Alek. The Court should therefore quash the subpoenas in their entirety. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978) ("[D]iscovery should be denied when a party's aim is to delay bringing a case to trial, or embarrass or harass the person from whom he seeks discovery.").

## II. The subpoena to Ms. Casey seeks privileged records.

Defendants seek to circumvent Alek's assertion that the psychotherapist-patient privilege protects his communications with Ms. Casey by subpoenaing Ms. Casey. The subpoena to Ms. Casey should be quashed for that sufficient reason, standing alone.

Alek's conversations with Ms. Casey and Ms. Casey's records about those conversations are privileged. "Confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure[.]" *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). The psychotherapist-patient privilege "promotes sufficiently important interests to outweigh the need for probative evidence" because effective therapy "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Id.* at 9–10 (quotation

omitted). "Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is rooted in the imperative need for confidence and trust." *Id.* at 10 (quotation omitted).

That privilege protects the records in Ms. Casey's possession. Courts applying the psychotherapist-patient privilege protect therapy-related records, including communications, notes, treatment information, and diagnoses. See *id.* at 18 (counseling session conversations and notes); *Bullock v. Smith*, No. 3:05CV37-M-A, 2016 WL 11631304, at *2 (N.D. Miss. Mar. 28, 2016) (records that state any "facts relating to or stemming from communications between the plaintiff and a healthcare provider"); *Stafford v. New Dairy Tex., LLC*, No. 3:23-CV-272-N, 2024 WL 2927719, at *3 (N.D. Tex. June 10, 2024) (therapy notes); *Fleming v. Methodist Hosp.*, 2023 WL 4307157, at *2 (W.D. Tex. June 30, 2023) (communications and treatment notes); *Stark v. Hartt Transp. Sys., Inc.*, 937 F. Supp. 2d 88, 92 (D. Me. 2013) ("information revealing the plaintiff's diagnoses and the nature of his treatment").

Courts do not weigh a requesting party's need for evidence against the privilege. *Jaffee*, 518 U.S. at 17 (rejecting any balancing component). That's because "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.*; *see also United States v. Murra*, 879 F.3d 669, 681 (5th Cir. 2018) ("[I]t would be both counterproductive and unnecessary for a court to weigh the opponent's evidentiary need for disclosure any time the privilege is invoked." (quotation omitted)).

Alek has not waived the psychotherapist-patient privilege. In examining whether the psychotherapist-patient privilege was waived, the Fifth Circuit considered whether the privilege holder "had a 'reasonable expectation of confidentiality' in their confidential communications with their psychotherapists" and whether there was anything in the record to show the communications

had been revealed to a third party. *Murra*, 879 F.3d at 681; *see also United States v. Portillo*, 969 F.3d 144, 182 (5th Cir. 2020) (applying waiver standard discussed in *Murra*). Where the privilege holder reasonably believed therapist communications were protected and there was no disclosure, the Fifth Circuit concluded there was no waiver. *Id.*

Here, Alek had a reasonable expectation that communications with Ms. Casey during therapy sessions would be kept confidential, and there has been no disclosure of those communications.

That should end the waiver inquiry. However, post-*Murra* district court cases in this circuit have concluded that "[t]he Fifth Circuit has not clearly established an approach for determining whether waiver [of the psychotherapist-patient privilege] has occurred" and have discussed the "variety of approaches." *Fleming,* 2023 WL 4307157, at *2; *see also Stafford*, 2024 WL 2927719, at *3.[4] Both adopt a "middle approach" under which "a mere request for damages for ordinary, garden variety claims of mental anguish or emotional distress, as opposed to a cause of action based upon emotional distress, does not place a party's mental condition at issue, and the privilege is not waived." *Stafford*, 2024 WL 2927719, at *3; *see also Fleming,* 2023 WL 4307157, at *2.

To the extent this Court follows those non-binding decisions, this Court should similarly adopt the rule that a party does not waive his psychotherapist-patient privilege by including "'garden-variety' emotional distress allegations." *Stafford*, 2024 WL 2927719, at *3. Where "emotional harm is not at the heart of the litigation . . . a garden-variety request for emotional

---

[4] These cases do not cite *Murra*, let alone distinguish it. *See Stafford*, 2024 WL 2927719, at *3; *Fleming,* 2023 WL 4307157, at *2*.* That reality likely stems from the fact that (1) both rely on a pre-*Murra* decision, *Merrill v. Waffle House*, that discussed the differing approaches to waiver at length in dicta and (2) *Murra* was a criminal case. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 474–75 (N.D. Tex. 2005) (finding no responsive documents existed and thus no need to weigh in on the waiver standard).

distress damages does not itself constitute a waiver of psychotherapist-patient privilege." *Id.* To hold otherwise would subject every plaintiff asserting emotional harm from the violation of their constitutional rights to a searching, invasive inquiry into their therapy records. *See Ruhlmann v. Ulster Cnty. Dep't of Soc. Servs.*, 194 F.R.D. 445, 451 (N.D.N.Y. 2000) ("To condition recovery for emotional distress incidental to the violation of federal constitutional and statutory rights upon the surrender of the protection of the psychotherapist privilege is also antithetical to the purpose of the laws that provide redress for such violations."). Because Alek merely alleges "stress and anxiety" from the violation of his rights, Dkt. No. 1 ¶¶ 132–34, and emotional harm is not the heart of this case, no waiver has occurred under the standard lower courts have recently applied either.

The psychotherapist-patient privilege applies to Ms. Casey's records concerning Alek. The Court should quash the subpoena to Ms. Casey.

### III. The subpoena to RMS seeks confidential employment records.

Courts in this circuit treat employment records as confidential and deny requests for the "[w]holesale production of Plaintiff's personnel records based on theoretical possibilities of relevance"—like the one here. *Reed v. Madison County*, No. 3:16-CV-51-WHB-JCG, 2016 WL 11640189, at *2 (S.D. Miss. Nov. 1, 2016) (rejecting discovery into previous employers' records in race discrimination case); *see also, e.g.*, *Sanders v. Dalcraft, LLC*, No. 3-09-CV-0307-P, 2009 WL 1392602, at *3 (N.D. Tex. May 18, 2009) (quashing requests to former employers in Title VII sexual harassment and retaliation case); *Pena v. Canelson Drilling (US), Inc.*, No. MO:15-CV-00053-HLH-DC, 2015 WL 12734090, at *2 (W.D. Tex. Sept. 8, 2015) (limiting discovery request to payroll records for damages purposes in personal-injury suit).

The subpoena to RMS seeks everything in Alek's employment file: applications, job descriptions and assignments, performance evaluations, attendance records, correspondence, W2s, and more without any subject-matter limitation. Ex. B (RMS Subpoena) at 2. And Defendants

10

request five years of those records, including for three years before the traffic stop at issue in this case. *Id.* Alek's employment records are entirely irrelevant to his Fourth Amendment claims about a traffic stop, stop extension, and car search—especially given that there is no claim of lost wages.

The Court should quash Defendants' subpoena of Alek's employer, RMS, because it is an impermissible fishing expedition into Alek's confidential employment records. Defendants cannot subpoena Alek's employer merely to dig for "some evidence that may possibly be used against [Alek] at trial." *Sanders*, 2009 WL 1392602, at *2–3.

## Conclusion

Alek respectfully requests the Court quash the subpoenas sent to Ms. Casey and RMS.

Dated: November 15, 2024

Respectfully submitted,

/s/ Christen M. Hebert

**Joshua A. Windham*** (NC Bar No. 51071)
**Joshua A. Fox*** (GA Bar No. 627186)
**William R. Aronin*** (NY State Bar No. 4820031)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
jwindham@ij.org
jfox@ij.org
waronin@ij.org
*Admitted *pro hac vice*

**Christen M. Hebert**
(TX Bar No. 24099898)
INSTITUTE FOR JUSTICE
816 Congress Avenue, Suite 970
Austin, TX 78701
(512) 480-5936
chebert@ij.org

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that on November 15, 2024, a true and correct copy of the foregoing document was served via electronic mail upon all counsel of record.

/s/ Christen Mason Hebert
Christen Mason Hebert