IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ALEK SCHOTT, §<br>    *Plaintiff*, §<br> §<br>v. §<br> §<br>JOEL BABB, in his individual and official §<br>capacity; MARTIN A. MOLINA III, in his §<br>individual and official capacity; JAVIER §<br>SALAZAR, in his individual and official §<br>capacity; and BEXAR COUNTY, TEXAS, §<br>    *Defendants*. § | Case No. 5:23-cv-00706-OLG-RBF |

**DEFENDANT JOEL BABB'S RESPONSE IN OPPOSITION TO
PLAINTIFF SCHOTT'S PARTIAL MOTION TO STRIKE THE TESTIMONY
OF INTERDICTION EXPERT GARY HASTON**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, former Bexar County Deputy **Joel Babb**, files this Response in Opposition to Plaintiff Alek Schott's Motion to Partially Strike some of the proffered opinions of Defendant's Expert Gary D. Haston (Dkt. 91), and in support thereof would respectfully show this Court as follows:

## I. BACKGROUND

**A. Plaintiff Schott's lawsuit against former Bexar County Interdiction Deputy Babb is an academic test case designed to eliminate or radically reduce criminal interdiction work in Texas and to attack qualified immunity.**

1. This lawsuit was brought as part of legal activism by the Institute of Justice, and it arises out of a traffic stop initiated by Deputy Babb on Plaintiff Schott on March 16, 2022.[1] Generally, Schott was pulled over for failing to maintain his lane. The stop was extended—in part—based on prior information that Deputy Babb received that put him specifically on the look-out for Schott. Schott's car was subsequently searched after Deputy Molina's K9 alerted to the presence of drugs in the car. No drugs were found, and Plaintiff was never arrested or charged with any crime as a result of this stop.

2. Seemingly recognizing a limited damage model based on the above facts, Plaintiff Schott admits in private correspondence that he agreed to be a plaintiff for the Institute in order to "get the supreme court to take away police qualified immunity" and that he would only sue for "$1. So it's a truly (sic) about protecting people's 4th amendment rights."[2]

3. In Plaintiff's own words, this lawsuit is thus not about money. This is an academic test case about the scope of the Fourth Amendment as applied to the facts at hand, and a looming and likely existential challenge to qualified immunity. At bottom, the goal of this lawsuit seems to be an attempt to vastly curtail or eliminate any Texas law enforcement officers' ability to do criminal interdiction work on Texas highways.[3]

---

[1] Institute of Justice, *WATCH an Illegal Traffic Stop Start to Finish. Bogus Dog Alert*, YOUTUBE.COM (JUNE 6, 2023) https://www.youtube.com/watch?v=SVEoC-gkbOU (a selectively edited video posted on YouTube five days after the Original Complaint was filed).
[2] **Ex. 1**, *Excerpt of Schott's Texts Produced in Discovery*, **pgs. 1 – 2.**
[3] *See* Pl. Orig. Compl., ¶¶ 114 – 122.

4. Plaintiff Schott's lawsuit generally makes three complaints against Deputy Babb that will surely be expanded upon at the dispositive motion stage of this litigation. **First**, Schott complains he was wrongfully pulled over by Deputy Babb without probable cause. **Second**, Schott complains that this traffic stop was impermissibly extended without reasonable suspicion. **Third**, Schott complains that his car was searched without probable cause despite the fact that a K9 alerted to the presence of drugs.[4]

> **B. Deputy Babb hired former Williamson County Commander Gary Haston to evaluate if the March 16th stop complied with police training standards. More generally, he will use his decades of experience to explain to a jury what criminal interdiction is and why it is vastly important to fight illegal smuggling.**

5. Faced with the above challenges, the undersigned hired former Williamson County Commander Gary Haston out of retirement to provide his vast expertise on criminal interdiction to the jury if this case ever reaches trial.[5] Generally, Commander Haston will educate the jury about the importance of interdiction work using his lifetime of career experience "about Mexican Drug Cartel[s]" and interdiction work.[6] He will explain that "Mexican Drug Cartels illegally bring contraband from into the United States using an array of methods" one of which is to take contraband from a stash house, conceal it in a vehicle using hidden compartments, and then use a mule to drive this vehicle prepared by the cartel "to a destination in the United States."[7]

6. Commander Haston will then explain that criminal interdiction work exists to combat the Cartels and other bad actors who use the United States Highways to commit smuggling crimes. Commander Haston's report reveals that he will testify that Deputy Babb's stop of Schott was an

---

[4] *See* Pl. Partial Mot. to Strike Haston, pgs. 1 – 2, Dkt. 91 (Plaintiff's own articulation of these issues).
[5] **Ex. 2**, *Haston CV*, **pg. 2**.
[6] **Ex. 3**, *Haston Report*, **pg. 3**.
[7] *Id.* at **pg. 28**.

example of a traffic stop made as part of a criminal interdiction effort. Relying on Deputy Babb saying as much in his deposition,[8] Commander Haston will explain that Deputy Babb was specifically looking for Schott's 2019 F-250 based on "intel" he got from the Laredo Fusion Center. Furthermore, Commander Haston will explain that—according to Babb—Schott's movements had been tracked via the Vigilant License Plate Reader (LPR) system. Commander Haston will explain that similar flagged behaviors are considered by Law Enforcement to be consistent with drug and human smuggling mules.[9]

7.  But beyond these generalized explanations, Haston's report reveals that he has voluminously analyzed the available evidence in this case,[10] and that he has proffered opinions on if Deputy Babb's actions during his encounter were consistent with "standard law enforcement procedures…".[11] Commander Haston states in his report that his methodology evaluates "how any well trained and reasonable law enforcement officer, not just Deputy Babb, could reasonably be expected to respond, when faced with similar circumstances that existed at the time." [12] Commander Haston's ultimate conclusions are that all of Deputy Babb's actions were consistent with law enforcement training.[13]

   **C. Plaintiff has filed a Motion to Strike some of Commander Haston's proffered testimony.**

8.  Plaintiff filed his Motion to Partially Strike some of Commander Haston's proffered opinions on January 24, 2025. Specifically, Plaintiff argues that: (1) Commander Haston's report

---

[8] **Ex. 4**, *Babb Dep.*, **pgs. 135 – 144**.
[9] **Ex. 3**, *Haston Report*, **pgs. 6 – 7** (explaining events), **pg. 29** (opinion on this advanced information) (highlighted in green)**.**
[10] *Id.* at **pgs. 6 – 7** (outlining 23 items reviewed, with numerous subparts).
[11] *Id.* at **pg. 29**.
[12] *Id.* at **pg. 13** (highlighted).
[13] *Id.* at **pgs. 28 – 30**.

is "riddled with legal conclusions, which must be struck"; that (2) Commander Haston's "opinions about what videos show should be excluded" and; (3) "Haston's opinions about what Deputy Babb knew or believed must be struck."[14] The Defense now files this Response to Plaintiff's Motion to Strike.

## II. LEGAL STANDARD

9.  Under Federal Rule of Evidence 702, expert testimony is admissible as an aid to the trier of fact, so that it might help the trier of fact understand the evidence or to determine a fact at issue.[15] In *Daubert*, the Supreme Court provided guidance for the Courts in conducting a Rule 702 analysis.[16] "Under *Daubert,* Rule 702 charges trial courts to act as gate-keepers, making a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[17]

10. The *Daubert* factors are not always easily applied to non-scientific testimony, and the Supreme Court explained in *Kumho Tire* that Courts have "considerable leeway in deciding…whether particular [non-scientific] expert testimony is reliable."[18] Accordingly, this non-scientific test of reliability is necessarily a flexible one. The Supreme Court has recognized that the factors identified in *Daubert* "may or may not be pertinent in assessing reliability,

---

[14] *See* Pl. Partial Mot. to Strike Haston, pg. 2 (legal conclusions), pg. 4 (videos) and pg. 9 (state of mind) Dkt. 91.
[15] *See* FED. R. EVID. 702; (Rule 702 provides that an expert may testify if: (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.).
[16] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 – 44 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993).
[17] *Pipitone*, 288 F.3d at 243 – 44 (citing *Daubert*, 509 U.S. at 592 – 93).
[18] *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).

depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[19]

11. The advisory comments to Rule 702 advise that "the rejection of expert testimony is the exception rather than the rule,"[20] and that *Daubert* did not completely overhaul federal evidence law, and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."[21] *Daubert* recognized that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[22]

### III. ARGUMENTS AND AUTHORITIES

**A. State of Mind Testimony: Commander Haston can analyze what Deputy Babb knew or believed so long as he has evidentiary support for each statement.**

12. This response will start with Plaintiff's third argument. As a matter of housekeeping, the undersigned is flattered that his friends on the other side read one of his prior filings in another case[23]—but they misapprehend the argument.[24] Nevertheless, using this prior argument, Plaintiff Schott's counsel argues that Commander Haston is impermissibly peering into a crystal ball in order to read Deputy Babb's state of mind during this incident.

13. But the Fifth Circuit only holds that "an expert's ***conclusory*** assertions regarding a [party's] state of mind are not helpful or admissible."[25] Conversely, the Western District in *Rogers* has held that when defendants can "point out" that "these statements are based upon some aspect of the

---

[19] *Id.* at 149.
[20] *See* FED. R. EVID. 702, Adv. Comm. Notes (2000).
[21] *See United States v. 14.38 Acres of Land More or Less, Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996).
[22] *Daubert*, 509 U.S. at 596.
[23] *See* Pl. Partial Mot to Strike Haston, pg. 10, n.1.
[24] Regardless, the arguments of counsel in another case are irrelevant to this Court in this case.
[25] *Marlin v. Moody Nat. Bank, N.A.*, 248 Fed. Appx. 534, 541 (5th Cir. 2007) (emphasis added).

record or the evidence that has been developed in this case" that this "provide[s] a sufficient basis for [an expert] to offer an opinion" based on an individual's state of mind.[26] Here, just as in *Rogers*, Commander Haston has support for his analysis on what Deputy Babb knew in this case.

14. In the first bullet point,[27] Plaintiff Schott alleges that Haston is reading Deputy Babb's mind when he purports that Babb knew certain categories of information about Schott before he pulled him over. Commander Haston's report by its own terms makes it clear that he offers this testimony "according to the deposition" that Babb sat for.[28] As discussed *supra*, a glance at Deputy Babb's deposition reveals that he himself testified that he had "intel" on all of these things about Schott before he pulled him over.[29]

15. The same holds true for the second and third bullet points. Deputy Babb testified at length that he received intel from a "Mr. Kiki" who Deputy Babb attested worked at the Fusion Center where he believed agents for Homeland Security and DEA worked, and that they had more sophisticated "toys" than the ones he had access to as a Bexar County Deputy.[30]

16. Finally, this also holds true for the fourth and final bullet point. In his deposition, Deputy Babb testified why he is sometimes hesitant to say too much on camera or in a report because he was trained to protect sources and methods.[31] Accordingly, all of these "statements are based upon some aspect of the record" in accord with the Western District's holding in *Rogers*.[32] These state of mind objections are accordingly meritless and should be denied. If Plaintiff has more specific

---

[26] *Rogers v. City of Hutto, Tex.*, No. 1:19-CV-166-RP, 2020 WL 5099953, at *3 (W.D. Tex. June 29, 2020).
[27] Pl. Partial Mot. to Strike Haston, pg. 10.
[28] **Ex. 3**, *Haston Report*, **pg. 18** (highlighted in purple).
[29] **Ex. 4**, *Babb Dep.*, **pgs. 135 – 144**.
[30] *Id*. at **pgs. 163 – 164**.
[31] *Id*. at **pg. 303**.
[32] *Rogers,* 2020 WL 5099953, at *4.

objections to state of mind testimony not explicitly laid out in his motion, his redress is to make sure that he objects if there is no evidence to "provide a sufficient basis" for Commander Haston to offer such an opinion at trial.[33]

### B. Legal Conclusions.

### a. Probable cause is a mixed question of fact and law. Thus, Commander Haston cannot proffer an opinion on if probable cause or reasonable suspicion *actually* existed, as the existence of probable cause is a legal conclusion. However, Haston can identify for the jury what facts a reasonable and well-trained officer could have relied on to take the actions Deputy Babb took.

17. Commander Haston will not proffer an opinion on if probable cause or reasonable suspicion *actually* existed. To the extent that any sentence in Commander Haston's 30-page report before his "Final Expert Opinion and Conclusion" section explicitly states that probable cause or reasonable suspicion existed, the Plaintiff is correct that Commander Haston cannot offer that testimony to the jury.[34] The undersigned offered that easy assertion to Plaintiff's counsel before this motion was filed—but Plaintiff's counsel declined.

18. Instead, Plaintiff telegraphed that he wanted to argue Haston cannot even discuss with the jury the "articulable facts" that *might* support probable cause.[35] That position cannot be correct.

19. In *Archer* the Western District reminded that "Rule 704 notes opinion testimony is not objectionable just because it embraces an ultimate issue to be decided by the fact finder. So although an expert may never render conclusions of law, the Rules allow expert opinions touching on mixed questions of fact and law."[36] Dispositively, probable cause and reasonable suspicion are mixed questions of law and fact.

---

[33] *Id.* at *4.
[34] Pl. Partial Mot. to Strike Haston, pg. 3.
[35] *Id.* at pgs. 3 – 4 (that argument appearing in the motion).
[36] *Archer v. Northside Indep. Sch. Dist.*, No. CV 5:17-1202, 2018 WL 7572498, at *3 (W.D. Tex. Dec. 10, 2018), *aff'd sub nom. A.A. v. Northside Indep Sch. Dist.*, 951 F.3d 678 (5th Cir.

20. As the Fifth Circuit explained most recently in *Reitz* as it analyzed the propriety of expert testimony in this area, "[t]he question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it probable are true, and existed, ***is a matter of fact***; but whether, supposing them to be true, they amount to a probable cause, is a question of law."[37]

21. In *Reitz*, the Fifth Circuit eventually determined that a District Court did not err in excluding an expert's testimony that merely "suppl[ied] both the law and the ultimate legal conclusions" that were sought by the proffering party.[38] However, in exploring this holding, the Fifth Circuit noted that the *Reitz* expert had proffered "no additional facts or analysis" to support any of their expert opinions.[39] At bottom, the expert had failed to confine their testimony "to questions of fact, as an expert may never render conclusions of law."[40]

22. In the case at hand, the proper scope for Commander Haston's testimony is to allow him to identify the facts for the jury that "the circumstances alleged to show it probable" while making it clear that the ultimate determination of probable cause is to be "left to judges and juries."[41] Even the *Rogers v. Bonnett* case that Plaintiff's cite in support of their motion recognized this truth, as that opinion conceded that "[r]easonable suspicion and probable cause are determined based on a fact-intensive, totality-of-the circumstances inquiry, ***where expert testimony might be helpful in some respects***."[42] Accordingly, Commander Haston should be permitted to testify about the factual side of this mixed question of law and fact.

---

2020) (cleaned up) (citing *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009); *see also Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997).
[37] *Reitz v. Woods*, 85 F.4th 780, 788 (5th Cir. 2023) (emphasis added).
[38] *Id*.
[39] *Id*.
[40] *Id*.
[41] *Id*. at 788 – 789.
[42] *Rogers v. Bonnett*, No. CIV SA-04-CA-0118-XR, 2009 WL 2461820, at *5 (W.D. Tex. Aug. 11, 2009) (emphasis added).

### b. Commander Haston can also testify as to if Deputy Babb conducted himself reasonably pursuant to police training and standards.

23. Finally, Plaintiff Schott makes a blanket pronouncement that "Haston's pronouncements" are all legal conclusions that must be struck—seemingly because he used the term "reasonable officer" throughout is report.[43] That position is not tethered to the case law. Here—just as in *Estevis v. City of Laredo*—Commander Haston can permissibly offer his testimony about "the standards of conduct for law enforcement officers, including opining on how an objectively reasonable officer would be expected to act in the circumstances faced by [Deputy Babb]."[44]

24. In *Estevis*, the Southern District of Texas acknowledged the fine line that Law Enforcement Experts must walk as they give their testimony. Specifically, the *Estevis* Court noted that law enforcement officers can give this kind of testimony based on their "training and experience" so long as they do not cite the law—as that "invade[s] the province of the Court."[45] Commander Haston will not proclaim what is reasonable under the Fourth Amendment—with regard to probable cause or reasonable suspicion—but he can proclaim what is reasonable pursuant to police training.

25. Plaintiff Schott's attempt to reframe every use of the word "reasonable" into a comment about reasonability under the Fourth Amendment is an unfair attempt to repackage all of Haston's opinions into legal opinions. They are not. They are training opinions. As this Court well knows, officers are extensively trained on probable cause. As an example, they are trained on how they are expected to reasonably articulate all of the facts supporting a warrant for a suspect's arrest,

---

[43] Pl. Partial Mot. to Strike Haston, pg. 3.
[44] *Estevis v. City of Laredo*, No. 5:22-CV-22, 2023 WL 9312081, at *5 (S.D. Tex. Dec. 28, 2023); *compare with* **Ex. 3**, *Haston Report*, **pgs. 28 – 30** (setting out his conclusions in accord with what the *Estevis* Court held to be permissible).
[45] *Id*.

which will later be reviewed by a magistrate.[46] With training beyond the average officer, Commander Haston is easily qualified to use his training and experience to explain to the jury the articulable facts his report has meticulously documented, and if Deputy Babb followed police training in response to those facts. It can then be up to the jury to make the ultimate determination of if probable cause or reasonable suspicion existed.[47] Subject to the above agreement that Commander Haston cannot state that probable cause or reasonable suspicion *actually* existed, Plaintiff's motion should be denied on this score.

   **C. Video Evidence: Commander Haston will not offer a play-by-play of the video. But when the facts are in dispute, jurors are permitted to hear an expert's testimony and decide whether the predicate facts relied upon are accurate.**

26. Plaintiff is correct that law enforcement experts are not generally allowed to offer play-by-play testimony about what video evidence shows. This is because a general recitation of video evidence is within a factfinder's lay knowledge, and if expert testimony does not require specialized knowledge or training, then a jury does not need an expert.[48] However, in the case at hand, Commander Haston is permitted to rely on the video evidence to offer testimony that is outside the jury's lay knowledge. Specifically, Haston's opinions rely on the video evidence, but that does not mean he is merely reciting what the video shows. Plaintiff Schott has cleverly tried to repackage all of these opinions as merely commenting on video evidence—but they are not.

   **a. Commander Haston is permitted to rely on the video as support for the "articulable" facts that he can identify to the jury to help them determine if probable cause existed to pull Schott over for a traffic violation and if reasonable suspicion existed to extend the stop.**

---

[46] *United States v. Olivas-Hinojos*, No. MO_14-CR-35, 2014 WL 12641551, at *5 (W.D. Tex. Apr. 24, 2014, aff'd, 637 5th Cir. 2016) (noting an "affidavit [by an officer] was ripe with specific, articulable facts all individually and collectively pointing to probable cause…").
[47] **Ex. 3**, *Haston Report*, **pg. 16** (outlining facts), **pg. 19** (listing facts).
[48] *Williams v. City of Houston, Tex.*, No. CV H-16-3342, 2019 WL 2435854, at *5 – 6 (S.D. Tex. June 11, 2019).

27.    As the Fifth Circuit wrote in *Moore*, "when facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. Generally, the "fact-finder is entitled to hear [an expert's] testimony and decide whether ... the predicate facts on which [the expert] relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible."[49]

28.    Plaintiff Schott takes issue with Commander Haston's opinion that the dash-camera footage supplies articulable facts supporting Deputy Babb's traffic stop. Specifically, articulable facts that support that Plaintiff Schott failed to maintain his lane.[50] Commander Haston's report methodically outlined his factual basis that allowed him to arrive at these conclusions, and he cites to the evidence in this case in support,[51] and the video itself is attached to this response as **Exhibit 5**. Accordingly, Commander Haston's proffered testimony regarding Schott's failure to maintain his lane is a far cry from being "completely unsubstantiated…".[52] To wit, Commander Haston used the same method of analyzing the car's position on the video that Plaintiff's expert did. Namely, he compared the lines on the roadway to the "indentation in the hood of Mr. Schott's truck."[53]

29.    Furthermore, Plaintiff Schott takes issue with the fact that Commander Haston has reviewed Deputy Babb's body-camera evidence and has used his observations to identify if a reasonable officer could have identified articulable facts warranting "further investigation" during

---

[49] *Moore v. Int'l Paint, L.L.C.*, 547 Fed. Appx. 513, 515 (5th Cir. 2013) (cleaned up).
[50] Pl. Partial Mot. to Strike Haston, pg. 3; *see* **Ex. 3**, *Haston Report*, **pg. 18** (highlighting these conclusions).
[51] **Ex. 3**, *Haston Report*, **pgs. 15 – 18**.
[52] *Moore*, 547 Fed. Appx. at 515.
[53] *See* Palacios Report, pg. 9, Dkt. 67-1; *compare with* **Ex. 3**, *Haston Report*, **pg. 16** (noting his methodology similarly involved comparing the "distinct contour lines that curve toward the center of the hood" with the roadway.) Haston did not do a scene inspection—but Schott's car had been sold long before the undersigned appeared in this case. *See* Mot. to Sub. Counsel, pg. 1, Dkt. 53.

this traffic stop.[54] Plaintiff also takes issue with Commander Haston's observations of Schott on the body-camera—wherein Haston used his training and experience to note that Schott was displaying characteristics that officers are trained can be indicative as deceptive.[55]

30. In support, Plaintiff cites *Wright*, a Mississippi opinion holding it would strike an expert who merely wanted to testify that body language revealed one person did not feel threatened by another.[56] This case is a far cry from *Wright*. Here, Haston voluminously articulated in his deposition that he relied on specific training to come to his opinions regarding body-language—this testimony is accordingly not mere mind reading.[57]

31. At bottom, law enforcement experts regularly rely on video evidence in order to reach their opinions. They are permitted to then opine "as to what a reasonable police officer in a similar position might have known or deduced" from what is depicted on the videos.[58] For example, in *Ambler*, the Western District permitted an expert to opine as to what a reasonable officer could have heard a suspect say, and what a reasonable officer could have deduced about a suspect's conduct. The expert was not there on the scene. Instead, the expert was allowed to proffer those opinions based on his review of the body-camera evidence. That is exactly what Haston did here when he reviewed both the dash-camera and the body-worn camera.

---

[54] **Ex. 3**, *Haston Report*, **pg. 19** (listing observations).
[55] *See id.* at **pg. 20** (noting that he received training in these techniques).
[56] *Wright v. CoreCivic Inc.*, No. 3:21-CV-00047-MPM-RP, 2022 WL 1217239, at *7 (N.D. Miss. Apr. 25, 2022..
[57] **Ex. 6,** *Haston Dep.*, **pg. 247** (highlighted).
[58] *Ambler v. Nissen*, No. 1:20-CV-1068-LY, 2023 WL 4612016, at *4 (W.D. Tex. July 18, 2023) (permitting an expert to opine as to what a reasonable officer could have inferred on scene based on the videos).

32. Plaintiff Schott has cleverly tried to repackage all of these opinions as merely commenting on video evidence—but they are not—for the reasons articulated *supra*. These objections are accordingly meritless.

> **b. Commander Haston can point out to the jury that Schott's dash-camera recorded that he was speeding, and Haston can opine that based on his training and experience, a reasonable officer could have articulated that Schott could be suspected of speeding.**

33. Plaintiff Schott's dash-camera recorded that he was going 84 mph in a 75-mph zone. Commander Haston's report explicitly noted this, and detailed how a reasonable officer in Deputy Babb's position could have articulated this traffic violation in addition to failing to maintain lane.[59] As Haston further explained in his deposition:

> In this case, Mr. Schott's video that I reviewed, the first thing that I noticed was he was passing traffic at a rapid speed, and that is when I looked at the entire, you know, bottom frame of the video and I saw the GPS speed of 84 miles an hour. That explains why he's passing traffic at such a rapid pace.
>
> As an officer that has stopped thousands of cars and having also, you know, been certified in the use of radar to be able to write tickets for that, you know, an officer is trained to first observe the vehicle and if it appears that vehicle is speeding, and you judge that by the other traffic.[60]

34. Accordingly, Commander Haston's conclusion that Schott was speeding is reliable enough to pass Rule 702's test. Plaintiff's quibble that Haston is unfamiliar with this particular brand of dash-camera sounds like excellent fodder for cross examination—but it does not mean that Haston's reliance on Schott's own GPS data attached to Schott's own dash-camera evidence is so unreliable that it fails to meet the ambit of *Daubert*—especially since Schott has not offered a scrap of evidence to the contrary that establishes <u>his dash-camera's</u> speedometer was unreliable.

---

[59] **Ex. 3**, *Haston Report*, **pg. 18**.
[60] **Ex. 6,** *Haston Dep.*, **pg. 236** (highlighted).

35. Plaintiff Schott also takes issue with this testimony because he complains that since Deputy Babb *subjectively* never thought of this offense nor articulated this offense—that the fact that Schott was speeding is irrelevant and therefore must be excluded. This position is contrary to the Fifth Circuit's holding in *Terrell v. Allgrunn*—especially since it is uncontroverted that Deputy Babb was *watching* Schott's car and therefore *could* have perceived that Schott was speeding.[61]

36. In *Terrell*, the Fifth Circuit reversed a District Court that applied this subjective standard. Within, the Fifth Circuit noted that the District Court "erroneously applied a subject standard:

> Defendants cannot simply assert a list of violations for which, with the benefit of hindsight, a reasonable officer *could* have had probable cause to arrest [the suspect]; instead, they must instead demonstrate that [the officer] believed that he *actually* had probable cause to take [the suspect] into protective custody based on the facts known to him at the time.[62]

The Fifth Circuit emphatically disagreed, noting:

> [T]hat is diametrically opposite our case law. There must not even arguably be probable cause for the search and arrest for immunity to be lost. That is, if a reasonable officer *could* have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply. Moreover, the relevant inquiry is not into the officer's actual beliefs at the time. Our cases make clear than an arresting officer's state of mind (except for the facts he knows) is irrelevant to the existence of probable cause.[63]

37. Here, one of the questions that the jury will be asked if this case reaches trial is if Deputy Babb is entitled to qualified immunity for pulling Schott over. Since a reasonable officer *could* have concluded from the available facts that Schott was speeding, Commander Haston's testimony on this score is relevant and admissible. Accordingly, Plaintiff's objections to the Commander's proffered speeding testimony—based on Schott's own video and his own speedometer—should be overruled.

---

[61] **Ex. 4**, *Babb Dep.*, **pg. 102**.
[62] *Terrell v. Allgrunn*, 114 F.4th 428, 435 (5th Cir. 2024).
[63] *Id.*; *accord Hall v. Trochessett*, 105 F.4th 335, 341 (5th Cir. 2024).

## IV.  PRAYER

38. WHEREFORE, PREMISES CONSIDERED, the Defendant Joel Babb respectfully requests that this Court deny Plaintiff Schott's Motion to Partially Strike the Testimony of Gary Haston, and for all other relief to which he may be entitled in law or in equity.

Respectfully submitted,

**WRIGHT & GREENHILL, P.C.**
4700 Mueller Blvd., Suite 200
Austin, Texas  78723
(512) 476-4600
(512) 476-5382 – Fax

By: /s/ Stephen B. Barron
Blair J. Leake
State Bar No. 24081630
bleake@w-g.com
Stephen B. Barron
State Bar No. 24109619
sbarron@w-g.com

**ATTORNEYS FOR DEFENDANT
JOEL BABB**

## CERTIFICATE OF SERVICE

I hereby certify that on February 7th, 2025, a true and correct copy of the foregoing document was caused to be served upon all counsel of record via E-File/E-Service and/or E-Mail, in accordance with the Federal Rules of Civil Procedure.

/s/ Stephen B. Barron
Stephen B. Barron