**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ALEK SCHOTT, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | Civil Action No.: 5:23-cv-706-OLG-RBF |
| | § | |
| BEXAR COUNTY, TEXAS, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

### DEFENDANT BEXAR COUNTY'S
### MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ORLANDO GARCIA:

NOW COMES **BEXAR COUNTY**, Defendant in the above entitled and numbered cause, and pursuant to Rule 56, FEDERAL RULES OF CIVIL PROCEDURE files this its Opposed Motion for Summary Judgment and in support thereof would respectfully show unto the Court the following:

**I.**

Defendant **BEXAR COUNTY** would show unto the Court that there is no genuine issue as to any material fact herein and that it is entitled to judgment, as a matter of law.

**II.**
### EXHIBITS

Defendant **BEXAR COUNTY** incorporates into its Motion for Summary Judgment for all purposes the following exhibits:

(1)    Exhibit A  -    Deposition of Sheriff Javier Salazar;
(2)    Exhibit B  -    Deposition of Captain Aaron Von Muldau;
(3)    Exhibit C  -    Deposition of Sergeant Peter Gamboa;
(4)    Exhibit D  -    Deposition of Deputy Joel Babb;
(5)    Exhibit E  -    Deposition of Deputy Martin Molina III;

(6)     Exhibit F[1]   -   Alek Schott's Truck Dash Cam;
(7)     Exhibit G[2]   -   Body worn camera of Deputy Joel Babb - BC000502;
(8)     Exhibit H[3]   -   Body worn camera of Deputy Martin Molina III - BC000671;
(9)     Exhibit I[4]   -   Excel Spreadsheet of Bexar County Traffic Stops;
(10)    Exhibit J     -   K-9 Certificates and Log;
(11)    Exhibit K     -   Deposition of K-9 Expert Kevin Sheldahl.
(12)    Exhibit L     -   Deposition of Expert Gary Haston.

The above Exhibits A through L are hereby incorporated by reference for all purposes.

## III.
## BACKGROUND

The case at bar concerns the vehicular traffic stop of Plaintiff Alek Schott driving his Ford F-250 pickup truck (Texas License Plate LJR4135) on March 16, 2022 on IH 35 Northbound. Bexar County Deputy Joel Babb (assigned to an experimental unit named "Criminal Interdiction Unit") made a traffic stop of Plaintiff Alex Schott for crossing over the painted line on the left side of the road known as the fog line. This provided Deputy Babb with probable cause to make the initial traffic stop. (*See, Exhibit D – Deposition of Joel Babb, pp. 102-104; Exhibit F – Alek Schott's Truck Dash Cam.*) The entire encounter from the time that Plaintiff Schott's vehicle pulled over to the side of the roadway until Plaintiff Schott was released from detention is on the body worn camera of Bexar County Deputy Joel Babb. (*See, Exhibit G – Body Worn Camera of Deputy Joel Babb*).

Deputy Babb had received prior intelligence through the Laredo Fusion Center that this Ford F-250 – Texas License Plate LJR4135, through license plate readers had performed a one day turn around in travel wherein a female passenger was taken to a hotel, dropped off and the

---

[1] Exhibit F will be filed traditionally with the Court.
[2] Exhibit G will be filed traditionally with the Court.
[3] Exhibit H will be filed traditionally with the Court.
[4] Exhibit I will be filed traditionally with the Court.

vehicle headed in a return route. (*See, Exhibit D – Deposition of Deputy Joel Babb, pp. 133-136*). As Deputy Babb approached the passenger side of the Schott Truck, Deputy Babb noticed that Schott was sitting in the driver's seat with his hands raised in the air which Deputy Babb thought to be abnormal behavior. (*See, Exhibit D – Deposition of Deputy Joel Babb, pp. 132*). Deputy Babb identified himself as a "Criminal Interdiction Officer" and advised Schott that he would only be receiving a warning regarding his crossing over the painted line (fog line). Deputy Babb requested Schott's driver's license and Schott produced his driver's license with a trembling hand. (*See, Exhibit D – Deposition of Deputy Joel Babb, p. 178*). Deputy Babb further noticed that Schott was breathing heavily while communicating with Deputy Babb. (*See, Exhibit D – Deposition of Deputy Joel Babb, p. 178*).

Deputy Babb requested Schott to exit the vehicle and conducted a terry pat down of Plaintiff Schott. Plaintiff Schott apologized for drifting over the line. (*See, Exhibit D – Deposition of Deputy Joel Babb, p. 176*). Deputy Babb asked Plaintiff Schott whether he had any weapons inside the vehicle to which Schott hesitated and stated "*I don't think so. There shouldn't be.*" Deputy Babb thought this was unusual behavior and not knowing whether or not a firearm was in his vehicle. (*See, Exhibit D – Deposition of Deputy Joel Babb, pp. 174-184*).

Deputy Babb had Schott sit in the passenger side of his patrol vehicle while Deputy Babb entered information concerning the warning citation. Deputy Babb notices Schott breathing hard by the rising and falling of his chest. Deputy Babb further realized that when speaking about Schott's travel pattern his voice became low whereas his voice was on a higher tone when talking in generalities. (*See, Exhibit D – Deposition of Deputy Joel Babb, pp. 213-216; 221-223.*)

Deputy Babb asked Schott if he could search his vehicle to which Schott replied, "*No, he would not give consent.*" Schott explained that he had his oil changed and the mechanic might

have dropped a joint in the engine.  (*See, Exhibit D – Deposition of Deputy Joel Babb, pp. 249-265*).

Deputy Babb concluded that he had reasonable suspicion to call for a K-9 Free Air Canine Sniff of Plaintiff Schott's truck. (*See, Exhibit D – Deposition of Deputy Joel Babb, pp. 213-216; 249*).  Deputy Molina was dispatched to the scene to conduct a K-9 search.  (*See, Exhibit E – Deposition of Deputy Martin Molina, p. 126*).  Deputy Martin Molina arrived with his K-9 Max to conduct an Free Air Canine Sniff of Schott's truck.  Deputy Molina spoke with Plaintiff Schott as is his custom, and obtained consent for the Free Air Canine Sniff.  (*See, Exhibit E – Deposition of Deputy Martin Molina, p. 63*).  The Free Air Canine Sniff of Schott's truck can be seen on Deputy Molina's body worn camera.  (*See, Exhibit H – Deputy Molina's Body Work Camera Video*).  Deputy Molina's K-9 Max alerted to the driver's side door of the truck which can be seen on the video.  (*See, Exhibit E – Deposition of Deputy Martin Molina, pp. 135-140; 180*).  The subsequent search inside Schott's truck only found an unusable amount of shake on the floorboard.  (*See, Exhibit E – Deposition of Deputy Martin Molina, pp. 147-150*).  The entire incident of the stop of Plaintiff Schott through his detention and release was 75 minutes.  (*See, Exhibit B – Deposition of Captain Aaron Von Muldau, p. 148*).

Plaintiff Schott's complaint is against the sole remaining defendant in this case, Bexar County.  Plaintiff claims that Bexar County has an unconstitutional policy and custom of using traffic stops as a tool to conduct searches and seizures without any reason.  (*See, Claim IV of Plaintiff's Original Complaint*.)[5]

---

[5]  Plaintiff Schott originally brought causes of action against Deputy Babb in Counts I and II for unreasonable search and seizure and Count III against Babb and Molina for unreasonable search.  Subsequent to extensive and contentious litigation, Plaintiff's claims against Babb and Molina ended with a Rule 41 Stipulation of Dismissal with prejudice.

Defendant **BEXAR COUNTY** denies that it has a policy, practice or custom of using traffic stops as a tool to conduct searches and seizure without any reason. Defendant Bexar County asserts that Deputies Babb and Molina did not violate the constitutional rights of Plaintiff Schott since Deputy Babb had probable cause to make the vehicular stop, reasonable suspicion for the K-9 Free Air Canine Sniff and Deputy Molina properly conducted the K-9 Free Air Sniff wherein Max alerted. When K-9 Max alerted, this gave the deputies probable cause to search Plaintiff Schott's truck. Since no member of the Bexar County Deputy Sheriff's Department violated Plaintiff's constitutional rights Plaintiff does not state a cause of action against Bexar County, as a matter of law. *Los Angeles v. Heller*, 475 U.S. 796, 798 (1986); *Alpha v. Hooper*, 440 F.3d 670, 672 (5th Cir. 2006).

Defendant **BEXAR COUNTY** asserts unto the Court that in Texas, the Sheriff is the County's final policymaker in the area of law enforcement. *Colle v. Brazos County, Texas*, 981 F.2d 237, 244 (5th Cir. 1993). Defendant Bexar County asserts that Plaintiff has failed to put forth any proof that Sheriff Salazar, as the policymaker for Bexar County, was deliberately indifferent regarding Plaintiff's alleged constitutional violations.

## IV.
## UNDISPUTED FACTS

Defendant **BEXAR COUNTY** would show unto the Court that the following facts are undisputed:

(1)     Deputy Joel Babb was assigned to an experimental unit of the Bexar County Sheriff's Office named "Criminal Interdiction" at the time of the incident made the basis of this lawsuit. This experimental unit lasted from 2022 through May of 2024 when it was disbursed. (*See Exhibit A – Deposition of Sheriff Jaiver Salazar, pp. 107; 136.*).

(2)     On March 16, 2022, Deputy Babb received intelligence from the Laredo Fusion Center that a Ford F-250 – TX License Plate LJR4135 had performed a one day turn around and traveled from Houston to Carrizo Springs wherein a female passenger was taken to a hotel, dropped off and the vehicle headed in a return route. (*See, Exhibit D – Deposition of Deputy Joel Babb, pp. 133-136*).

(3)     Deputy Babb saw Plaintiff Schott's F-250 – TX License Plate LJR4135 crossing over the painted line on the left side of the road known as the fog line on IH 35 Northbound. (*See, Exhibit D – Deposition of Deputy Joel Babb, pp. 102-104.*).

(4)     The crossing of the painted line known as the fog line provided probable cause for the vehicular stop. In addition, Deputy Babb had probable cause to make the initial traffic stop based on Plaintiff Shott's speeding. (*See Exhibit F – Alek Schott's Truck Dash Cam indicated 84 mph; Exhibit L – Deposition of Expert Gary Haston pp. 216-217; 219-221*).

(5)     Deputy Babb based his reasonable suspicion for a K-9 Free Air Canine Sniff on the following:

    a.  Schott immediately placed his hands up while he was seated in the driver's seat when Deputy Babb approached; (*Exhibit D – Deposition of Deputy Joel Babb, p. 132*);

    b.  Deputy Babb had intelligence from the Laredo Fusion Center concerning the vehicle's one day turn around in travel wherein a female passenger was taken to a hotel, dropped off and the vehicle headed in a return route; (*Exhibit D – Deposition of Babb, pp. 133-136*);

    c.  Schott's hands were trembling when he produced his driver's license. (*Exhibit D – Deposition of Deputy Joel Babb, p. 178*);

    d.  Schott was breathing heavily as Deputy Babb witnessed his chest compressions while talking; (*Exhibit D – Deposition of Deputy Joel Babb, p. 178*);

    e.  Schott was unsure if he had a weapon in his vehicle; (*Exhibit D – Deposition of Deputy Joel Babb, pp. 178; 213-216*);

    f.  Schott mentioned he recently had an oil change and the mechanic could have dropped a joint in the engine. (*Exhibit D – Deposition of Deputy Joel Babb, p. 265*).

(6)    Deputy Martin Molina was dispatched to the traffic stop in question. (*Exhibit E – Deposition of Deputy Martin Molina, p. 126*);

(7)    Deputy Molina's K-9 Max was certified through NCATS (National Canine Audit Tracking System). (*Exhibit E – Deposition of Deputy Martin Molina, pp. 24-25; 32; Exhibit J – K-9 Certificates and Log; Exhibit K – Deposition of Expert Kevin Sheldahl, p. 101*);

(8)    Deputy Molina with K-9 Max conducted a Free Air Canine Sniff of Plaintiff Schott's truck.  K-9 Max alerted to the driver's side door of Plaintiff's truck. (*See, Exhibit E – Deposition of Deputy Martin Molina, pp. 135-140; 180*).

(9)    K-9 Max was certified by NCATS and was one of the best K-9's in Bexar County. *See, Exhibit C – Deposition of Sergeant Peter Gamboa, pp. 245-246; Exhibit E – Deposition of Deputy Martin Molina, pp. 54; 181; 193).*

(10)    Deputy Babb was terminated from the Bexar County Sheriff's Department for lying about his dash camera video by saying that the camera was inoperable.  (*See, Exhibit A – Deposition of Sheriff Javier Salazar, pp. 229-230; Exhibit B – Deposition of Captain Aaron Von Muldau, pp. 151-159*).

(11)    Sheriff Salazar disbanded the Criminal Interdiction Unit and transferred the officers to other units due to violent high speed pursuits of the smugglers transporting illegal aliens into the country. (*See, Exhibit A – Deposition of Sheriff Javier Salazar, p. 118*).

## V.
## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Fed. R. Civ. Proc. only " *if the Movant shows that there is no genuine dispute as to any material fact and the Movant is entitled to judgment, as a matter of law.  A dispute is '***genuine***' only if the evidence is such that a reasonable jury could return a verdict for the non-moving party*." ***Anderson v. Liberty Lobby, Inc.,*** 477 U.S. 242, 254 (1986). A fact issue is material if its resolution could affect the outcome of the action. ***Poole v. City of Shreveport***, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, in identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact. *Celetex v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden by simply pointing to an absence of evidence to support the non-moving party's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the non-moving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted. *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).

The Court must view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment. However, at the same time, the Court does not consider a party's description of facts that is so blatantly contradicted by video evidence that "no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## VI.
## LEGAL ANALYSIS

A.  **DEFENDANT BEXAR COUNTY IS ENTITLED TO SUMMARY JUDGMENT SINCE NO BEXAR COUNTY OFFICIAL VIOLATED PLAINTIFF SCHOTT'S CONSTITUTIONAL RIGHTS AND THEREFORE, BEXAR COUNTY CANNOT BE LIABLE TO PLAINTIFF, AS A MATTER OF LAW.**

### 1.    DEPUTY JOEL BABB.

Defendant **BEXAR COUNTY** asserts unto the Court that Deputy Babb did not violate Plaintiff Schott's constitutional rights under the Fourth or Fourteenth Amendment as alleged in Plaintiff's Complaint under Counts I, II and III.

a) Deputy Babb had probable cause to make a vehicular stop of Schott's Truck based on crossing the fog line in violation of Texas Transportation Code, § 545.060(a) and for speeding as evidenced by the Schott Video of traveling at 84 miles per hour in a 70 mph zone. (*See, Exhibit F – Alek Schott's Truck Dash Cam; Exhibit L – Deposition of Expert Gary Haston, pp. 168-169; 216-221*).

b) Deputy Babb developed reasonable suspicion for the Free Air Canine Sniff based on the following:

i. Schott immediately placed his hands up in the air while he was seated in the driver's seat when Deputy Babb approached. (*See, Exhibit D – Deposition of Deputy Joel Babb, p. 132*);

ii. Deputy Babb had intelligence from the Laredo Fusion Center concerning the truck's one day turn around; and travel wherein a female passenger was taken to a hotel, dropped off and the vehicle headed in a return route. (*Exhibit D – Deposition of Deputy Joel Babb, pp. 133-136*).

iii. Schott's hands were trembling when he produced his driver's license. (*See, Exhibit D – Deposition of Deputy Joel Babb, p. 178*);

iv. Schott was breathing heavily as Deputy Babb witnessed his chest compressions while talking (*Exhibit D – Deposition of Deputy Joel Babb, p. 178*);

v. Schott was unsure if he had a weapon in his vehicle. (*Exhibit D – Deposition of Deputy Joel Babb, pp. 178; 213-216*);

vi. Schott mentioned he recently had an oil change and the mechanic could have dropped a joint in the engine. (*Exhibit D – Deposition of Deputy Joel Babb, p. 265*).

c) Schott's actions provided articulable facts by which Deputy Babb could reasonably suspect that a crime had been committed. ***United States v. Brigham***, 382 F.3d 500, 508 (5th Cir. 2004); ***U.S. v. Wilkerson***, 405 F.App'x 893, 896 (5th Cir. 2010).

d) Deputy Babb called for a K-9 to conduct an Free Air Canine Sniff. K-9 Max alerted providing probable cause for the search of Schott's vehicle. Plaintiff Schott was released after 75 minutes. (*See, Exhibit B – Deposition of Captain Aaron Von Muldau, p. 148*).

Defendant **BEXAR COUNTY** asserts that *Weisshaus v. Teichelman*, 637 F.Supp.3d 434 (N.D. Tex. 2022) is a paradigm to the case at bar. In *Weisshaus*, plaintiff and his passenger were stopped driving through Texas en route from Oklahoma to Arizona. Defendant Officer Teichelman was working for the Judicial District Traffic Enforcement Division. Officer Teichelman stopped the Weisshaus vehicle for speeding and displaying an obscured license plate. Officer Teichelman asked Plaintiff Weisshaus to step out of his out his vehicle and sit in the front of Officer Teichelman's patrol vehicle while Defendant processed the warning citation. While in the patrol vehicle, Officer Teichelman asked Plaintiff Weisshaus questions regarding where he was traveling and how long he intended to stay at his destination. Officer Weisshaus stated that Plaintiff gave short responses and was unable to provide any details. Officer Teichelman then asked the female passenger the same general questions which provided inconsistent answers from Weisshaus. Both Plaintiff Weisshaus and his passenger appeared nervous, timid and scared. Officer Teichelman then had the passenger and Weisshaus step away from the vehicle so that he could run his K-9 Kobra around the vehicle for a Free Air Canine Sniff. K-9 Kobra gave a passive alert and Officer Teichelman searched the vehicle. No narcotics were found and Officer Teichelman let Plaintiff and Ms. Lee leave with a warning.

Plaintiff Weisshaus filed suit under Section 1983 alleging that Officer Teichelman's search was an unconstitutional detention in violation of Plaintiff's rights. Plaintiff pled that the 100th Judicial District Task Force practice of prolonging traffic stops passed the time when the purpose for the stop had concluded in order to illegally detain and search citizens and subject them to civil forfeiture proceedings. Defendant Officer Teichelman filed a motion for summary judgment asserting that plaintiff Weisshaus did

not sustain a constitutional deprivation. Plaintiff argued that Officer Teichelman lacked reasonable suspicion to support detaining plaintiff after the purpose of the traffic stop had concluded and the search of his vehicle was illegal. The trial court reasoned that that in determining the legality of a traffic stop, the Court must first examine whether the officer's action was justified at its inception and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2009). The Court first noted that while the plaintiff denied that he was speeding or displaying an obscured license plate, that the defendant officer, Teichelman, was entitled to make a "reasonable but mistake in judgment" so long as his determination that the plaintiff was speeding was not plainly incompetent. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014).

Once the Court determined that the initial stop was justified, it determined whether Defendant Officer Teichelman's subsequent actions were reasonably related in scope to the circumstances that justified the stop. A seizure that is justified solely by the interest in issuing a warning ticket to the driver, can become unlawful if it is prolonged beyond the time reasonably required to complete that mission. *Illinois v. Caballes*, 54 U.S. 405, 407 (2005). But, if the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain the occupant of the vehicle for a reasonable time while appropriately attempting to dispel this reasonable suspicion. *United States v. Andres*, 703 F.3d 828, 833 (5th Cir. 2013). There is, however, no constitutional stop watch on traffic stops. *United States v. Brigham*, 382 F.3d 500, 511 (5th Cir. 2009). The reasonable suspicion inquiry falls considerably short of 51 percent accuracy…. to be reasonable is not to be perfect. *Kansas*

*v. Glover*, 589 U.S. 376, 380 (2020).  Courts must look at the "totality of the circumstances" of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.  *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).

The trial court held that Officer Teichelman had reasonable suspicion based on the fact that plaintiff was speeding and displayed an obscured license plate; plaintiff was traveling on I-40 which is routinely is used for narcotic and human trafficking; a large gap in age between the plaintiff and his female passenger; and plaintiff's responses were short, incomplete and generally displayed a nervous behavior.

The trial court then analyzed the fact that the Free Air Canine Stiff by the K-9 Narcotics Dog was minimally invasive and did not constitute a search or seizure for the Fourth Amendment purposes.  *United States v. Place*, 462 U.S. 696, 707 (1983).  Officer Teichelman's K-9 Kobra, made a passive alert to the vehicle which provided probable cause for the search of the vehicle.  A narcotic's detection dog's alert provides probable cause when all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime.  *Florida v. Harris*, 568 U.S. 237, 248 (2013).  The Court further reasoned that a "*full alert*" is not required to establish probable cause.  *United States v. Clayton*, 374 F.App'x 497, 502 (5th Cir. 2010).  Each dog alerts in a different way, and the dog's behavior must be interpreted by the handler.  Evidence of a dog's satisfactory performance and certification or training program can itself provide sufficient reason to trust the alert.  *Florida v. Harris*, 568 U.S. 237, 247 (2013).  Ultimately, the Court granted Defendant Officer Teichelman's motion for summary judgment.

Plaintiff Weisshaus then appealed to the Fifth Circuit Court of Appeals in *Weisshaus v. Teichelman*, 2024 WL 620372 (5th Cir., Feb. 14, 2024).  The Fifth Circuit affirmed the trial court's analysis under the Fourth Amendment in granting the motion for summary judgment.  The Fifth Circuit held that Officer Teichelman had reasonable suspicion of additional criminal activity during his identification of the circumstances that originally caused the stop to further detain plaintiff for a reasonable amount of time to dispel the reasonable suspicion.  *United States v. Andres*, 703 F.3d 828, 833 (5th Cir. 2013).  The Fifth Circuit held that Weisshaus' short responses to questions about his travel plans; traveling I-40 in a known drug corridor and appearing nervous to questions regarding his travel provided articulable reasonable suspicion.  The Court specifically cited to *United States v. Andres*, 703 F.3d 828, 833 (5th Cir. 2013) by stating that an officer had reasonable suspicion where the driver's nervousness and an anonymous tip about carrying drugs created reasonable suspicion justifying the detention.  The Court reasoned that the totality of the circumstances and collecting knowledge of the officer established reasonable suspicion to continue the detention.  The Fifth Circuit further reasoned that under *Florida v. Harris*, 568 U.S. 237, 246 (2013) that evidence of K-9 Kobra's certification and the training program was a sufficient reason to trust his alert.  The Fifth Circuit affirmed the trial court's granting of summary judgment.

In the case at bar, Deputy Babb had probable cause to believe a traffic violation had occurred.  Namely, had the probable cause to make a vehicular stop of the Schott vehicle based under the TEXAS TRANSPORTATION CODE, Section 545.060(a) for failure to drive within a single lane and for the offense of speeding by traveling 84 mph in a 70 mph zone. (*See, Exhibit F – Alek Schott's Truck Dash Cam; Exhibit D - Deposition of Deputy Joel*

*Babb, pp. 102-104; Exhibit L – Deposition of Expert Gary Haston, pp. 216-217; 219-221*). A police officer may stop a vehicle if he has probable cause to believe a traffic violation has occurred. ***Whren v. United States***, 517 U.S. 806, 810 (1996). Fifth Circuit case law including stopping vehicles for crossing the fog line in the Fifth Circuit include ***United States v. Wilkerson***, 405 F.App'x 893 (5th Cir. 2010); ***United States v. Valenzuela-Godinez***, 816 F.App'x 914 (5th Cir. 2020); ***Wilson v. Cockrell***, 2023 WL 8195199 (S.D. Tex. Nov. 27, 2023).

Defendant **BEXAR COUNTY** further asserts that Plaintiff's own video cam (Exhibit F), displays speeding of Plaintiff Schott by traveling 84 mph in a 70 mph zone. (*Exhibit L – Deposition of Expert Gary S. Haston, pp. 216-217; 219-221*). Defendant Bexar County asserts that under the Doctrine of ***Devonpeck v. Alford***, 543 U.S. 146 (2004), that for a plaintiff to state a Fourth Amendment claim for wrongful arrest or detention that the officer must not be aware of facts constituting probable cause to arrest or detain the person for "any crime." An officer's subjective reasons for making the arrest need not be the criminal offense to which the known facts provide probable cause. ***Devonpeck v. Alford***, 543 U.S. 146, 153 (2004).

Defendant **BEXAR COUNTY** asserts that Deputy Babb developed reasonable suspicion of additional criminal activity during the traffic stop and therefore, Plaintiff Schott's detention for a reasonable amount of time was appropriate to dispel this reasonable suspicion that was articulated by the deputy. ***United States v. Andres***, 703 F.3d 828, 833 (5th Cir. 2013). Deputy Babb's articulating that Schott immediately placed his hands up in the air when Deputy Babb approached him; Deputy Babb's intelligence from the Laredo Fusion Center concerning the truck's one day turnaround, Schott's hands trembling when

he produced his driver's license; Schott's breathing heavily as Deputy Babb witnessed his chest compressions; Plaintiff Schott's being unsure of whether or not he had a weapon in his vehicle and Plaintiff Schott's mentioning that he recently had an oil change and the mechanic could have dropped a joint in his engine all provided articulable facts by which Babb could reasonably suspect that a crime had been committed. *United States v. Brigman*, 382 F.3d 500, 508 (5th Cir. 2004). Defendant Bexar County asserts that Deputy Babb's actions on March 16, 2022 did not violate Plaintiff Schott's constitutional rights under the Fourth or Fourteenth Amendment, as a matter of law.

## 2.    DEPUTY MARTIN MOLINA III.

Deputy Martin Molina, K-9 Officer, was dispatched to the traffic stop in question concerning Plaintiff Schott. (*See, Exhibit E – Deposition of Deputy Martin Molina III, p. 126*). Deputy Molina's K-9 Max, was certified through NCATS (National Canine Audit Tracking System) and was one of the best K-9's in the Bexar County Sheriff's Department. (*See, Exhibit E – Deposition of Deputy Martin Molina III, pp. 24-25; Exhibit J – Canine Certificates and Log; Exhibit C – Deposition of Sergeant Peter Gamboa, pp. 245-246*). K-9 Max was certified through the NCATS (National Canine Audit Tracking System) and had compiled a 90 percent accuracy rating. (*See, Exhibit J – Canine Certificates and Log; Exhibit K – Deposition of Expert Kevin Sheldahl, pp. 101; 200-202*). Deputy Molina with K-9 Max conducted a Free Air Canine Sniff of Plaintiff Schott's truck and Max alerted to the driver's side door of Plaintiff's truck. (*See, Exhibit E – Deposition of Deputy Martin Molina III, pp. 135-140; 180; Exhibit H – Body worn camera of*

*Deputy Martin Molina III ).*  In ***Florida v. Harris***, 568 U.S. 237 (2013), the Supreme Court held that evidence of a dog's satisfactory performance and certification in training program can itself provide sufficient reason to trust his alert. If a bonafide organization has certified a dog after testing his reliability and control setting, a court can presume that the dog's alert provides probable cause to search. ***Id.*** at 246.

In the case at bar, Deputy Molina and K-9 Max conducted an Free Air Canine Sniff of Plaintiff Schott's truck and K-9 Max alerted.  The subsequent search inside Schott's Truck found an unusable amount of shake on the floorboard. (*See, Exhibit E – Deposition of Deputy Martin Molina III, pp. 147-150*).  Deputy Molina and K-9 Max did not violate Plaintiff's rights under the Fourth or Fourteenth Amendment as alleged in Plaintiff's Complaint, Count III, as a matter of law. ***Florida v. Harris***, 568 U.S. 237 (2013); ***Weisshaus v. Teichelman***, F.Supp.3d 434, 444 (N.D. Tex. 2022).

Defendant **Bexar County** asserts that the actions of Deputy Babb and Deputy Molina on the date in question ***did not*** violate Plaintiff's constitutional rights.  Since no member of the Bexar County Sheriff's Department violated Plaintiff's constitutional rights, Plaintiff does not state a cause of action against Bexar County, as a matter of law.  ***Los Angeles v. Heller***, 475 U.S. 796, 798 (1986); ***Alpha v. Hooper***, 440 F.3d 670, 672 (5th Cir. 2006).

**B**.    **DEFENDANT BEXAR COUNTY IS ENTITLED TO SUMMARY JUDGMENT SINCE NO CUSTOM OR POLICY WAS THE MOVING FORCE BEHIND PLAINTIFF SCHOTT'S ALLEGED CONSTITUTIONAL VIOLATION**.

Defendant **BEXAR COUNTY** asserts that since no official of Bexar County violated Plaintiff's constitutional rights that Bexar County is not liable to the Plaintiff herein.  Without waiving this argument and pleading in the alternative, Defendant Bexar County would show unto the Court that it does have a policy, practice or custom of using traffic stops as a tool to conduct searches and seizures without any reason as alleged in Plaintiff's Complaint.

A municipality such as **BEXAR COUNTY** may be liable under Section 1983 if the execution of one of its customs or policies causes the deprivation of a constitutional right.  *Monell v. Dept. of Soc. Svcs*, 436 U.S. 658, 694 (1978).  No liability exists under a theory of Respondeat Superior in Section 1983 actions.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  To establish municipal liability, a Plaintiff must show (1) an official policy or custom of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation who's moving force is that policy or custom.  *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).  To establish the third element, a Plaintiff must show that either the policy itself was unconstitutional or that the policy was adopted with deliberate indifference to the known or obvious fact that a specific constitutional violation would follow.

There are three ways to establish municipal policy for Section 1983:

> *"First, a plaintiff can show a written policy, statement, ordinance, or regulation.  Second, a plaintiff can show a wide spread practice that is so common and well settled as to constitute a custom that fairly represents municipal policy.  Third, even a single decision may constitute municipal policy in rare circumstances when the official or entity possessing final policymaking authority for an action performs the specific act that forms the basis of the Section 1983 claim."*  **Webb v. Town of St. Joseph**, 925 F.3d 209, 214 (5th Cir. 2019).

In the case at bar, the focus is on the second aspect concerning a widespread custom or practice.  However, the prior acts cannot simply be for "any and all bad acts or unwise acts" but most rather point to the specific violation at issue.  *Estate of Davis Ex. Rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

Plaintiff may show an employee practice that is so widespread and common that it may be considered as a custom representing the policies of the municipality.  *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001).  To establish that such a custom is present through the actions of municipal employees, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is expected, accepted practice of city employees.  *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)(*en banc*).  A customary policy consists of actions that have occurred for so long, and with such frequency, that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct.  *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010).

A plaintiff proves the existence of a custom by showing a "pattern of abuses that transcends the error made in a single case." *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001).  A successful showing of such a pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question. *Hicks-Fields v. Harris County*, 860 F.3d 803, 810 (5th 2017).  In addition to similarity and specificity, a pattern must be comprised of sufficiently numerous prior incidents rather than merely isolated incidents.  *Fuentes v. Nueces County*, 689 F.App'x 775, 778 (5th Cir. 2017).  Showing a pervasive pattern is a heavy burden.  *Sanchez v. Young County*, 956 F.3d 785, 793 (5th Cir. 2020).

In the case at bar, Sheriff Javier Salazar is the policymaker for Bexar County. *Colle v. Brazos County, Texas*, 981 F.2d 237, 244 (5th Cir. 1993). Plaintiff Schott claims that Bexar County has an unconstitutional policy and custom of using traffic stops as a tool to conduct searches and seizures without any reason. Plaintiff's burden is to establish that Sheriff Salazar established a policy or custom with deliberate indifference to the known or obvious consequences that constitutional violations would result. *Covington v. City of Madisonville*, 812 F.App'x 219, 225 (5th Cir. 2020); *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018).

Direct causation and deliberate indifference are "rigorous requirements" necessary to prevent municipal liability collapsing into Respondeat Superior liability. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 415 (1997). In short, the evidence must establish, under the stringent standards of the Supreme Court's pronouncements in *Bryan County*, unmistakable culpability and clearly connected causation.

> "*Deliberate indifference is a high standard that requires a complete disregard of the risk that a violation of a particular constitutional right would follow the decision. To show deliberate indifference, a plaintiff must normally allege a pattern of similar constitutional violations by untrained employees. A pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.*" *Edwards v. City Balch Springs, Tx*, 70 F.4th 302, 312 (5th Cir. 2023)(cleaned up).

Defendant **BEXAR COUNTY** asserts unto the Court that there is no evidence of deliberate indifference by Sheriff Salazar concerning Plaintiff Schott's alleged constitutional deprivation. Bexar County Sheriff Salazar was a prior drug interdiction officer during his career with the San Antonio Police Department wherein he worked with the federal authorities. (*See, Exhibit A – Deposition of Sheriff Javier Salazar, p. 30*). Sheriff Salazar conducts weekly command staff

meetings with his Chief Deputy, Deputy Chiefs and Assistant Chiefs. (*See, Exhibit A – Deposition of Sheriff Javier Salazar, p. 66*). Sheriff Salazar stated in deposition that the Bexar County Criminal Interdiction Unit was an experimental unit which was tried for a couple of years and then disbanded. (*See, Exhibit A – Deposition of Sheriff Javier Salazar, pp. 70-72; 102*). The Bexar County Interdiction Unit was disbanded and the deputies disbursed to other units due to violent high speed pursuits of smugglers transporting illegal aliens into the country. (*See, Exhibit A – Deposition of Sheriff Javier Salazar, p. 118*). The Bexar County Sheriff's Criminal Interdiction Unit was disbanded in May of 2024. (*See, Exhibit A – Deposition of Sheriff Javier Salazar, p. 136*). Sheriff Salazar terminated Deputy Babb for lying concerning the use of his dash camera video on his patrol car, but not for the stop in question. (*See, Exhibit A – Deposition of Sheriff Javier Salazar, pp. 229-230*).

Defendant **BEXAR COUNTY** would show unto the Court that it provided data concerning traffic stops conducted by the Bexar County Sheriff's Department from January 1, 2020 through September 11, 2023. This included a three and a half year time frame. (*See, Exhibit B – Deposition of Captain Aaron Von Muldau, p. 55; Exhibit I – Excel Spreadsheet of Bexar County Traffic Stops*). The data shows that during the three and a half year period, that 2,439 traffic stops were made for improper lane changes. (*See, Exhibit B – Deposition of Captain Aaron Von Muldau, pp. 77, 90*). Of those traffic stops for improper lane changes, the Criminal Interdiction Unit composed of Deputy Babb and Deputy Gereb had 21 percent of said stops. (*See, Exhibit B – Deposition of Captain Aaron Von Muldau, p. 91*).

Defendant **BEXAR COUNTY** would show unto the Court that it does investigate traffic stops when a complaint is made but this is done on a complaint by complaint basis. (*See, Exhibit B – Deposition of Captain Aaron Von Muldau, pp. 80-81*). Defendant Bexar County does take action

against its officers when complaints are sustained from a reprimand through suspension.  (*See, Exhibit B – Deposition of Captain Aaron Von Muldau, p. 76*).  Defendant Bexar County asserts that in all the data provided to Plaintiff's counsel, no custom or policy is exhibited of an unconstitutional policy or custom of using traffic stops as a tool to conduct searches and seizures without any reason, as alleged in Plaintiff's Complaint.  No evidence exists that Sheriff Salazar was deliberately indifferent to the constitutional rights of the traveling public.  Defendant Bexar County asserts that its policymaker, Sheriff Salazar, was not deliberately indifferent in the experimental unit known as the Criminal Interdiction Unit which was in existence for only a couple of years.  When policy violations did become known, the Bexar County Sheriff's Department terminated Deputy Babb for dishonesty concerning the his dash camera wherein he stated it was inoperable when in fact he had turned off the video cam.  (*See, Exhibit A – Deposition of Sheriff Javier Salazar, p. 151*).

Defendant **BEXAR COUNTY** asserts that it does not have an unconstitutional custom or policy of using traffic stops as a tool to conduct searches and seizures as alleged in Plaintiff's Complaint, as a matter of law. ***Board of County Commissioners of Bryan County, Oklahoma v. Brown***, 520 U.S. 397, 415 (1997).

**WHEREFORE, PREMISES CONSIDERED** Defendant Bexar County prays that its Motion for Summary Judgment be in all things granted, and for such other and further relief as it may show itself justly entitled.

Respectfully submitted,

LAW OFFICES OF CHARLES S. FRIGERIO, PC
Riverview Towers
111 Soledad, Suite 465
San Antonio, Texas  78205
(210) 271-7877
(210) 271-0602 Telefax
Email: csf@frigeriolawfirm.com
       Firm@frigeriolawfirm.com

BY: //s// Charles S. Frigerio
       CHARLES S. FRIGERIO
       SBN:  07477500
       *Lead Counsel in Charge*

       HECTOR X. SAENZ
       SBN:  17514850
       Email: hxs@frigeriolawfirm.com

       CHARLES A. FRIGERIO
       SBN: 24140090
       NMBN: 161626
       Email: Charlie@Frigeriolawfirm.com
       ATTORNEYS FOR BEXAR COUNTY, TEXAS,

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of June, 2025, I electronically filed the foregoing Defendant **BEXAR COUNTY**'s Motion for Summary Judgment via CM/ECF which will electronically serve notice to the following:

Christen Mason Hebert
INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 960
Austin, TX 78701                          Email:  chebert@ij.org

Joshua Windham                        Email: jwindham@ij.org
Will Aronin                                Email: waronin@ij.org
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
*Attorneys for Plaintiff*


                                    /s/ Charles S. Frigerio
                                    CHARLES S. FRIGERIO