**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| ALEK SCHOTT,<br>*Plaintiff*,<br>v.<br>BEXAR COUNTY, TEXAS,<br>*Defendant*. | Civil Action No. 5:23-cv-00706-OLG-RBF |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**

The County's objections should be overruled. As a threshold matter, the County fails to identify any specific error in the report and recommendation. Because the County raises general objections that ask this Court to reassess the summary-judgment record in its entirety, clear-error review governs. There is no error (other than what Alek identified in his objections, ECF No. 137), and the County's objections can be summarily overruled (Part I).

But even if the Court were to look past the failure to make specific objections, the County's objections still lack merit. On the Fourth Amendment violations, the report does not err in recommending denying the County summary judgment on the initial stop and the search (Part II). And on *Monell* liability, the report does not err in likewise concluding that the County is not entitled to summary judgment on whether an unconstitutional policy existed and what Sheriff Salazar knew about it (Part III). For those reasons—and the ones Alek identifies in his own objections—the Court should overrule the County's objections, deny the County's summary-judgment motion in its entirety, and send the whole case to trial, an outcome that is consistent with nearly all of Magistrate Judge Farrer's report.

## Argument[1]

**I. The County's nonspecific objections should be summarily overruled under clear-error review.**

The County's objections fail to identify any specific error in the report. The Court should therefore overrule the County's objections and review the report for clear error.

Federal Rule of Civil Procedure 72(b) authorizes "specific written objections to the proposed findings and recommendations" for dispositive motions. "When a party objects to an R&R, the Court must make a de novo determination as to '*any part* of the magistrate judge's disposition that has been properly objected to.'" *Computerized Screening Inc. v. RMES Commc'ns Inc.*, No. SA-25-CV-00287-OLG-ESC, 2026 WL 268152, at *1 (W.D. Tex. Feb. 2, 2026) (Garcia, J.) (emphasis added) (quoting Fed. R. Civ. P. 72(b)(3)). But "[o]bjections must be specific; frivolous, conclusive, or general objections need not be considered by the district court." *Id.* (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)). "An objection that does nothing more than state a disagreement with the magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' under Rule 72(b)." *Amaru v. Rhome Police Dep't*, No. 4:22-cv-01090-O-BP, 2025 WL 1062078, *2 (N.D. Tex. Apr. 8, 2025) (quotation marks omitted). Absent a proper objection, a district court reviews a magistrate's report for clear error. *McNamara v. Ortega*, No. SA-25-CV-1577-OLG, 2026 WL 96471, at *1 (W.D. Tex. Jan. 9, 2026) (Garcia, J.).

The County's objections are conclusive and general, not specific. The County never cites a single page of the report, never quotes it, and never identifies reasoning errors. Instead, the

---

[1] Alek provides a two-page summary of the facts and procedural background with his objections to the report. Pl.'s Objs. (ECF No. 137) 2–4, but Alek's summary-judgment motion provides more detail. *See* Schott MSJ (ECF No. 119). All exhibit cites in this document are to exhibits filed in support of Alek's summary-judgment motion.

County rehashes its summary-judgment arguments as though the report doesn't exist. That is not a proper objection, and it does not trigger de novo review.

The County's treatment of the alleged speeding illustrates the problem. The County asserts that Babb had reasonable suspicion to stop Alek because Alek's dashcam shows that he was speeding. Def.'s Objs. (ECF No. 136) 3–4. The County never acknowledges that the report squarely addressed and rejected that argument, explaining that the alleged speeding cannot justify the stop because Babb did not have any knowledge about Alek's speed and only Babb's knowledge at the time matters for reasonable suspicion. R. & R. (ECF No. 135) 15. In fact, the report notes that Magistrate Judge Farrer specifically asked the County at the summary-judgment hearing to explain how the alleged speeding could matter and counsel had no answer. *Id.* ("At a hearing held on November 5, 2025, defense counsel was unable to explain how speeding could have possibly served as a basis for the stop when the only indication that Schott was speeding was a readout on Schott's dashboard camera, which Deputy Babb did not have access to at the time of the stop. *See* Dkt. No. 134 at 24–28."). The County ignores this entirely.

That same pattern repeats throughout the objections. The County does not grapple with the report's analysis of the initial stop, the K9 alert, or *Monell* liability. It does not point to any specific finding that is unsupported by the record or any legal rule that was misapplied. *Compare* Def.'s Objs. (ECF No. 136), *with* Pl.'s Objs. (ECF No. 137) 6, 8–11, 14 (pinciting and quoting the report in making specific objections). It simply disagrees with the outcome and asks the Court to reassess the extensive summary-judgment record from scratch. Rule 72 does not permit that kind of do-over.

Because the County does "not point out specifically where [it] believes Magistrate Judge [Farrer] erred, whether it be in [his] fact-finding, legal analysis, or otherwise[,]" this Court should

review the report for clear error—except for the portions of the report that Alek objected to, namely the recommendation that the County get summary judgment on the stop extension. *Cuza v. Day*, No. 22-cv-1354, 2023 WL 3270064, *1–2 (E.D. La. May 5, 2023). And, except as highlighted by Alek's objections (ECF No. 137), there is no error at all—let alone a clear one. The magistrate carefully evaluated the evidence, applied the correct legal standards, and concluded that the County was not entitled to summary judgment. Nothing in the County's objections undermines that analysis.

Accordingly, this Court should summarily overrule the County's nonspecific objections under clear-error review.

## II. The report does not err in recommending denial of summary judgment to the County on the initial traffic stop and search.

Even if the Court were to look past the County's failure to raise specific objections and consider its arguments more closely, the report does not err in recommending denial of summary judgment to the County on the initial stop and the search. The report carefully analyzes the record and correctly concludes that the County was not entitled to judgment as a matter of law on these two Fourth Amendment violations. The County broadly "objects to the Magistrate Judge's Report and Recommendation to the extent that the Court found there was a material fact issue as to whether or not a constitutional violation had occurred." Def.'s Objs. (ECF No. 136) 3. That is not a basis for disturbing the report, but the County's argument also fails on its merits. The report correctly concludes that a jury could find the stop and search violated the Fourth Amendment.

### A. The report does not err in recommending denial of summary judgment to the County on the initial traffic stop.

The report does not err in recommending denial of summary judgment to the County on the initial stop. A jury could find not only that Babb lacked reasonable suspicion to pull Alek over, but also that Babb lied about the lane drifting to fabricate a justification for a knowingly

unconstitutional stop. Magistrate Judge Farrer properly recognizes that, "for a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." R. & R. (ECF No. 135) 14 (cleaned up). "In his deposition, Deputy Babb testified that as Schott's vehicle proceeded down the highway, '[Babb] was watching [him]' and saw that 'his tire went and hit the line.'" *Id.* at 15 (quoting Babb's deposition). The Magistrate Judge concludes that "***[w]hether Schott drifted over the fog line involves a fact dispute***" because Alek presented abundant evidence that he did not, including his truck dashcam and expert testimony. *Id.* at 14 (emphasis in original). Ultimately, whether Babb saw what he claims to have seen—and hence whether the stop was justified—boils down to a credibility determination: "A jury could find that either Schott's or Bexar County's account of events leading up to the stop, or that either of the two experts, is more credible." *Id.* at 17. *See also* Pl.'s Objs. (ECF No. 137) 15 (explaining that a jury could believe Babb was simply lying, that he "decided to stop Alek based solely on that tip [from the informant 'Kiki'] and made up a traffic violation to investigate further").

The County asserts that Babb had probable cause to stop Alek because (1) "Alek admitted to crossing the fog line" or (2) Alek "was traveling 84 mph in a 75 mph zone." Def.'s Objs. (ECF No. 136) 3. First, as to the alleged drifting, a jury could conclude that no drifting occurred or that Babb could not have seen it. R. & R. (ECF No. 135) 15–17; *see also* Schott MSJ (ECF No. 119) 22 (summarizing evidence). For example, Alek's dashcam footage shows he stayed in his lane. *Id.* Unrebutted expert analysis confirms that, as well as the fact that Babb couldn't have seen anything from his vantage point. *Id*. The County has no conflicting footage to corroborate Babb's testimony because Babb "manually turned off" his dashcam just before the traffic stop. *Id.* at 7–8. As to the supposed admission (the County's assertion that Alek admitted to lane drifting when he said

"sorry" during the initial moments of the stop), Alek made a "reflexive[]" apology out of "a desire to be polite" to "an armed law enforcement officer." Ex. 9 (Alek Decl.) ¶ 35. The report correctly concludes that a jury could accept Alek's position over the County's.

Furthermore, a jury could find that Babb outright lied about the traffic violation to fabricate a pretext for searching Alek. As the report explains, Babb was waiting at the side of the highway to search Alek based on a WhatsApp text message from a shadowy informant known only as "Kiki," who claimed that Alek might be a smuggler. R. & R. (ECF No. 135) 3–4 ("Believing this information indicated potential involvement in some manner of illicit trafficking . . . Officer Babb attempted to initiate a traffic stop in hopes of eventually searching Schott's vehicle."). According to Babb, Alek drifted over the lane line right in front of him, miraculously giving Babb reasonable suspicion just when he needed it. *Id.*; *see also* Schott MSJ, Ex. 3 (Babb Dep.) 101:24–102:4, 137:4–18, 321:4–14. A jury could easily reject Babb's story.

Second, as to the alleged speeding, Magistrate Judge Farrer correctly explains that "**[s]peeding cannot provide probable cause or *reasonable suspicion here because Schott's rate of speed was unknown to Deputy Babb***." R. & R. (ECF No. 135) 15 (emphasis in original). "[T]he governing standard involves the objective reasonableness of the officer's determination based on the information *the officer knew at the time*." *Id.* (emphasis in original) (citing *United States v. Escalante*, 239 F.3d 678, 681 (5th Cir. 2001)). The County's speeding evidence comes from Alek's own dashcam, which the County obtained in discovery long after the traffic stop. *See* Def.'s Objs. (ECF No. 136) 3–4.[2] As noted earlier, Magistrate Judge Farrer specifically asked the County about

[2] The County points to expert testimony from Gary Haston as evidence that Alek was speeding, but Haston's testimony about the alleged speeding is also based off of Alek's dashcam footage. Order on Mots. to Strike (ECF No. 129) 22–23. Magistrate Judge Farrer previously struck that testimony as impermissible because only Babb's knowledge matters. *Id.*

this fatal problem and "defense counsel was unable to explain how speeding could have possibly served as a basis for the stop." R. & R. (ECF No. 135) 15. The County's objections don't offer any explanation either.

In sum, the report does not err in recommending denial of summary judgment to the County on the initial traffic stop. The alleged drifting presents a jury question about Babb's veracity, and the alleged speeding cannot provide reasonable suspicion for the stop as a matter of law.

**B. The report does not err in recommending denial of summary judgment to the County on whether the dog alert created probable cause to search.**

The report also does not err in recommending the denial of summary judgment to the County on the search. Magistrate Judge Farrer concludes that the "*use of an allegedly 'rigged' K9 presents triable fact issues*." R. & R. (ECF No. 135) 20 (italics in original). He explains that, although a dog may be certified and presumed trustworthy, "[r]eliability can be challenged . . . with 'evidence of the dog's (or handler's) history in the field.'" *Id.* (quoting *Florida v. Harris*, 568 U.S. 237, 247 (2013)). The report notes that the County rested on the dog's "90% accuracy rating" by the "National Canine Audit Tracking System" and the dog "being held in high regard . . . by [County] deputies." *Id.* at 21. On the flip side, the report walks through Alek's evidence that the dog always alerted, was "rewarded for merely alerting," and that Deputy Molina, the dog's handler, routinely reported finding "'trace' amounts of narcotics" without corroborating proof that drugs were in fact there. *Id.* at 21–22; *see also* Schott MSJ (ECF No. 119) 15–16 (identifying record evidence of the dog's unreliability, including testimony from County witnesses who agreed that rewarding a dog for alerting is improper); Ex. 16 (Molina Depo. Vol. 1) 65:20–66:2 (testifying that he rewarded the dog for alerting, not for finding drugs). Ultimately, the report recommends trial on whether there was probable cause to search Alek's car because "[r]esolving the parties'

respective contentions [about the dog's reliability] would again involve credibility determinations." R. & R. (ECF No. 135) 22.

In asking this Court to reject that conclusion, the County asserts that "Plaintiff Schott did not retain a K-9 expert," which is true, but the County doesn't explain why that undermines the report's conclusion (it doesn't). Def.'s Objs. (ECF No. 136) 5. The County also asserts that, "[b]ased on the video[,] . . . the point is obvious that Max made a full alert when he sat at the driver's side door and would not budge." *Id.* But, again, as the report explains, the question isn't whether the dog alerted. He did. The question is whether the dog's "positive hit was both false and preordained" because the dog was rigged. R. & R. (ECF No. 135) 22.

Ultimately, as the report recognizes, a jury could conclude that the dog alert wasn't an accidental false positive. Instead, a jury could conclude that the dog alerted because Molina conditioned him to alert, not find drugs. And the jury could conclude that Molina conditioned his dog to alert so that the criminal interdiction unit would always have a fig leaf of apparent (though false) "probable cause" to get into vehicles flagged by mysterious informants such as "Kiki." Thus, the report does not err in recommending denial of summary judgment to the County on the search.

**C. *Weisshaus* is inapposite.**

Rather than engaging with the report's reasoning and conclusions, the County simply invokes *Weisshaus v. Teichelman*, 637 F. Supp. 3d 434 (N.D. Tex. 2022), and declares it "a paradigm to the case at bar." Def.'s Objs. (ECF No. 136) 5. By this, the County appears to mean that *Weisshaus* is so factually and legally similar to Alek's case that the County is entitled to summary judgment that no Fourth Amendment violation occurred—traffic stop for lane drifting, extension of stop for investigation, and search of the car based on dog alert—for the same reasons that the government won in *Weisshaus*.

But *Weisshaus* is factually and legally distinguishable. True, both cases involve highway stops and drug searches that came up empty. But they are otherwise materially different, so much so that the report understandably doesn't bother addressing *Weisshaus*. In a nutshell, *Weisshaus* was about the individual liability of the stopping officer, a grant of qualified immunity for that officer, and no disputed evidence about the officer or the dog's reliability. Alek's case, by contrast, concerns *Monell* liability against the County and abundant factual disputes about the initial stop, the stop extension, the dog's reliability, and the existence of unconstitutional official policies. *See* R. & R. (ECF No. 135) 4–10 (noting that "several important facts hereafter become disputed"), 23–34 (*Monell* analysis); *see also* Pl.'s Objs. (ECF No. 137) 5–14 (objecting to the report's conclusion that the stop extension didn't violate the Fourth Amendment). *Weisshaus* is inapposite, not a "paradigm."

In sum, the report does not err in recommending denial of summary judgment to the County on the underlying constitutional violations concerning the stop and the search.

**III. The report does not err in recommending denial of summary judgment to the County on the elements of *Monell* liability.**

The report also makes no error in recommending that the County be denied summary judgment on its *Monell* liability.

The report gets the overarching standard right: "In addition to a predicate constitutional violation"—the initial stop, stop extension, or dog alert—"a *Monell* claim must also involve a policy, custom, or practice." R. & R. (ECF No. 135) 23. "Schott's theory of the case relies on the narrative that the BCSO, by and through the [criminal interdiction unit], was engaged in a program that systematically violated the constitutional rights of those they pulled over, detained and interviewed, and searched for evidence of trafficking." *Id.* at 24. "Bexar County disagrees, and it urges that no such policy or practice existed, was known to Sheriff Salazar, or led to any

constitutional violations." *Id.* Ultimately, Magistrate Judge Farrer recommends that neither party be granted summary judgment on *Monell* liability because "the existence of an overarching custom or policy is hotly disputed" and because there is a "genuine issue of material fact on . . . policymaker knowledge." R. & R. (ECF No. 135) 31, 34.

The County rails against that recommendation, reasserting arguments it made in its summary-judgment briefing: First, it claims Alek was the only person to ever complain about the interdiction unit's stops. Def.'s Objs. (ECF No. 136) 6 ("Defendant **BEXAR COUNTY** asserts that Plaintiff Schott's Achillies' [sic] heel with regard to ***Monell*** liability is that his complaint was the only complaint against the Criminal Interdiction Unit."). Second, it claims there is no evidence Sheriff Salazar knew about the policy. *Id.* at 8. As explained more below, Magistrate Judge Farrer properly rejects these arguments. R. & R. (ECF No. 135) 30–34.

Lastly, the County makes a whole new argument: no *Monell* policy exists because Sheriff Salazar is a good sheriff. Def.'s Objs. (ECF No. 136) 7 ("Plaintiff Schott cannot impugn the impeccable reputation and credibility of Sheriff Salazar as the Chief Law Enforcement Officer for Bexar County Texas."). That argument is a complete nonstarter. Summary judgment turns on evidence, not counsel's character references.

### A. The report correctly understands that this case is about stopping and searching hundreds of motorists, not just Alek.

The County argues that "Plaintiff Schott's one complaint can hardly establish a sufficiently numerous pattern to establish ***Monell*** liability, as a matter of law." Def.'s Objs. (ECF No. 136) 8 (emphasis in original). But no one is saying that a *Monell* policy exists simply because Alek complained to the Sheriff's office. Nor is anyone saying that a *Monell* policy exists simply because Alek was stopped and searched. Instead, Alek argues that his stop and search, and the subsequent complaint, are pieces of evidence—among many others—pointing to a policy and custom of using

the criminal interdiction unit to perform stops and searches on hundreds of motorists without regard to Fourth Amendment limits.

As the report recognizes, Alek's *Monell* policy evidence spans the initial stop, the stop extension, and the dog alert. For example, the report discusses evidence that "Babb and Gereb—just two of the County's 250+ officers doing some traffic enforcement—made nearly 30% of all BCSO stops for three lane violations: unsafe lane change, failure to signal lane change, and failure to maintain a single lane"; that "Babb and Gereb manipulated their dashcams to avoid capturing footage of these alleged traffic violations"; that "Schott offers text messages in which BCSO officers joked about Gereb's alleged practice of making up probable cause"; that "Schott argues that Max, the K9 used for the sniff, was effectively 'rigged,' meaning he was cued by officers to alert regardless of whether any contraband was present." R. & R. (ECF No. 135) 24–25, 27. *See also* Schott MSJ (ECF No. 119) 7–14 (laying out policy evidence); Schott Resp. Cnty. MSJ (ECF No. 125) 3–4 (summarizing testimony about getting into cars). Plaintiffs may "combine[] . . . evidence" this way to prove a custom. *Milam v. City of San Antonio*, 113 F. App'x 622, 625, 628 (5th Cir. 2004). That's exactly what Alek does, but the County's objections never mention any of this.

Hitting the nail on the head, the report correctly rejects the County's one-complaint argument. Magistrate Judge Farrer explains that the County's argument "conflates, on the one hand, a situation where a single incident, and nothing else, is used to support an inference of a widespread policy or practice with a situation where, on the other hand, one incident is but one piece of evidence supporting allegations of a widespread policy." R. & R. (ECF No. 135) 30–31. The report goes on: "This case falls into the latter category; a single incident isn't the only thing pointing to a policy. Rather, a single incident spurred a complaint about something for which there

is a great deal of (disputed) evidence reflecting a possible widespread policy or practice." *Id.* at 31. Magistrate Judge Farrer gets it exactly right.

Completely disregarding that analysis, the County points to this Court's decision in *Elkhaliny v. Bexar County*, an argument that proves the County doesn't understand Alek's *Monell* theory. Def.'s Objs. (ECF No. 136) 8 (citing No. SA-20-CV-001000-OLG, 2022 WL 2840457 (W.D. Tex. June 22, 2022)). In *Elkhaliny*, jail guards beat up a detainee. 2022 WL 2840457, at *1–2. The question was whether there was a County policy condoning excessive force or whether the assailants were rogues. The *only* evidence that the detainee offered to prove a *Monell* policy was use-of-force complaints by other detainees. *Id.* at *5–6. This Court found that evidence insufficient, noting that the jail generated "an average of 14 [use of force grievances] per month from 3,380 inmates" but only "six incidents" over three years were similar to what happened to the detainee. *Id.*

Unlike *Elkhaliny*, this case doesn't rest on a number of complaints. Alek offers testimony, videos, text messages, and other evidence to show how the Sheriff created the criminal interdiction unit and put it on the road every day for two years to pull people over and search them while paying only lip service to the Fourth Amendment's rules. *See* Schott MSJ (ECF No. 119) 9–18. That policy exists whether or not its victims made formal complaints, and the County's failure to meaningfully investigate Alek's complaint (and potentially others) is itself evidence that the interdiction officers' conduct conformed to policy. Nothing in *Elkhaliny* or the County's objections shows that the report was wrong to conclude that a jury must decide whether the interdiction unit—the Sheriff's creation—had "an unconstitutional custom or policy of inventing reasonable suspicion or probable cause at every step of the traffic stop to justify a more expansive search." R. & R. (ECF No. 135) 29.

### B. The report does not err in recommending denial of summary judgment on Sheriff Salazar's knowledge.

The report does not err in recommending denial of summary judgment to the County on the Sheriff's knowledge, actual or constructive. The report recognizes that liability depends on "a policymaker who 'can be charged with actual or constructive knowledge' of the allegedly unconstitutional custom or policy." R. & R. (ECF No. 135) 31 (quoting *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022)). "As both parties agree, the relevant policymaker in this case is Sheriff Javier Salazar, who at all relevant times was the presiding Sheriff of Bexar County." *Id.* "In support of his contention on Sheriff Salazar's actual knowledge, Schott cites, for example, deposition testimony in which Sheriff Salazar stated that he created the CIU and 'kind of knew basically what they do, what they did.'" *Id.* at 32 (quoting Salazar Depo.). "Schott also quotes Deputy Babb as saying, 'Sheriff Salazar is in full understanding of what I do, how I do it[.]'" *Id.* (quoting Babb Depo.). By contrast, "Bexar County asserts that there is no evidence that Sheriff Salazar was in fact aware of a custom or policy to use traffic stops for conducting unlawful searches and seizures." *Id.* For example, "Sheriff Salazar ultimately did terminate Deputy Babb from the BCSO and ultimately disbanded the CIU, *i.e.*, that Salazar took some form of corrective action." *Id.* at 33. In the end, the report says summary judgment is inappropriate because the "evidence on Sheriff Salazar's knowledge is not conclusive in either direction when viewed in a light favorable to [] each nonmovant." *Id.*

Against the pages and pages of disputed evidence recounted in the report and supporting that conclusion, "Defendant **BEXAR COUNTY** asserts unto the Court that there is no evidence that Sheriff Salazar was aware of a custom or policy to use traffic stops as a tool to conduct searches and seizures." Def.'s Objs. (ECF No. 136) 8. That's it. The County doesn't cite any evidence, doesn't point to any error. It just nakedly asserts that Sheriff Salazar knew nothing and then block

quotes a Fifth Circuit case on the deliberate indifference standard without explaining anything. *Id.* That is not enough to establish that Magistrate Judge Farrer is wrong to recommend trial on the Sheriff's knowledge.

### C. The County cannot demand summary judgment by insisting that Sheriff Salazar's "impeccable reputation and credibility" cannot be questioned.

The County argues that no actual dispute exists as to a *Monell* policy because this Court, Magistrate Judge Farrer, Alek, and any potential jurors aren't allowed to question Sheriff Salazar: "Plaintiff Schott cannot impugn the impeccable reputation and credibility of Sheriff Salazar as the Chief Law Enforcement Officer for Bexar County Texas." Def.'s Objs. (ECF No. 136) 7. The Court is apparently supposed to assume that the interdiction unit policies and customs were all constitutional, regardless of contrary evidence, simply because the Sheriff is above reproach.

First, that argument misstates the summary-judgment standard, under which courts "may not presume that the jury will find [officials] credible." *Roe v. Cypress-Fairbank Indep. Sch. Dist.*, 53 F.4th 334, 345 (5th Cir. 2022). The *Monell* facts are very much in dispute. Alek's policy evidence cannot be swept aside by insisting that the Sheriff cannot be questioned.

Second, the County's argument is antithetical to the nature of our constitutional system more broadly. *See Marbury v. Madison*, 5 U.S. 137, 163 (1803) ("The government of the United States has been emphatically termed a government of laws, and not of men.").

Finally, the County does not even have *direct* testimony from the Sheriff purporting to refute Alek's allegations of how the interdiction unit operated unconstitutionally. Rather, as the report correctly reasons, the County's indirect evidence—evidence of the Sheriff's personal involvement in the creation, supervision, and dissolution of the criminal interdiction unit—could well cut in Alek's favor; a jury could conclude that the Sheriff knew or constructively knew about everything the unit did, including getting into cars without adhering to Fourth Amendment

constraints. R. & R. (ECF No. 135) 33. A jury could also conclude that the Sheriff terminated Babb for lying about his dash camera precisely to set Babb up as a scapegoat for the unconstitutional policy this lawsuit exposed. Remember: The County investigated Babb after Alek complained immediately after the stop and Babb came out of that squeaky clean. *See* Schott MSJ (ECF No. 119) 6–7. Then, only after this case was filed and discovery exposed what was going on (after a motion to compel), did the County suddenly decide that Babb was a bad guy and fired him. A jury could conclude that this sequence of events supports County liability.

Or not. But the point is that the report did not err in recommending that this Court deny the County's summary-judgment motion on the issue of *Monell* liability.

**Conclusion**

The County's objections largely repeat arguments already presented at summary judgment, but they fail to identify any specific legal or factual error in Magistrate Judge Farrer's analysis. The Court should overrule the County's objections and adopt the report and recommendation—except for the recommendation to grant the County summary judgment on the stop extension, which Alek addressed in his objections.

Dated: March 25, 2026.

Respectfully submitted,

/s/ Christen M. Hebert
Christen M. Hebert (TX Bar No. 24099898)
INSTITUTE FOR JUSTICE
816 Congress Avenue, Suite 970
Austin, TX 78701
(512) 480-5936
chebert@ij.org

Joshua A. Windham* (NC Bar No. 51071)
William R. Aronin* (NY Bar No. 4820031)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
jwindham@ij.org
waronin@ij.org
*Admitted *pro hac vice*

*Attorneys for Plaintiff*

**Certificate of Service**

I certify that on March 25, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will provide electronic service upon all attorneys of record.

/s/ Christen Mason Hebert
Christen Mason Hebert