IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALEK SCHOTT, | § | |
| *Plaintiff,* | § § § | 5:23-CV-00706-OLG |
| vs. | § § | |
| BEXAR COUNTY, TEXAS, | § § § | |
| *Defendant.* | § § § § § | |

**AMENDED REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando Garcia:**

This Amended Report and Recommendation concerns the Motion for Summary Judgment filed by Bexar County. *See* Dkt. No. 117. The Motion for Summary Judgment, along with a cross-motion from Plaintiff Alek Schott, was the subject of a prior Report and Recommendation. Dkt. No. 135. The District Judge recommitted Bexar County's motion (but not Schott's cross-motion) to the Magistrate Judge for resolution of two issues in light of Schott's objections to the prior Report and Recommendation and the District Judge's Order partially adopting and partially rejecting that Report and Recommendation. *See* Dkt. Nos. 137 (Objections), 139 (Order). Authority to enter this amended recommendation stems from 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, Bexar County's Motion for Summary Judgment, Dkt. No. 117, should be **DENIED**.

The District Judge recommitted the following two issues: (1) whether Schott has presented a genuine issue of material fact on the existence of an official custom or policy of

unlawfully extending traffic stops and the policymaker's knowledge of any such policy, and (2) whether the prior Report and Recommendation's reliance on expert Gary Haston is consistent with a prior order regarding his testimony. *See* Dkt. No. 139 at 5 (recommitting two discrete issues); Dkt. No. 129 at 19-25 (limiting Haston's expert testimony).[1] The Court addresses these issues in reverse order but begins by incorporating and re-urging the entirety of the prior Report and Recommendation, Dkt. No. 135, except as specifically stated otherwise herein.

### A.        Reliance on Haston Is Essentially Irrelevant for Present Purposes.

First, assuming for argument's sake that the prior Report and Recommendation, Dkt. No. 135, improperly relied on testimony or anticipated testimony from Gary Haston when addressing if a triable issue is presented on whether the initial stop was lawful, the prior Report and Recommendation is **VACATED** to the extent of any such reliance. The Court need not rehash the prior order regarding Haston, *see* Dkt. No. 129, or parse the prior Report and Recommendation for compliance with that Order. With any discussion of Haston excised, the remainder of the prior Report and Recommendation's analysis independently supports the Court's conclusion that Bexar County is not entitled to summary judgment on the issue. *See* Dkt. No. 135 at 15-17 (citing Deputy Babb's deposition testimony in which he stated under oath that he witnessed Schott cross the fog line in question; citing Schott's arguments, testimony, and evidence otherwise; and noting that the video evidence on this point from Schott's dashboard camera is inconclusive to a layperson, all of which points to a genuine issue of material fact on the question of the lawfulness of the stop). Furthermore, because the District Judge is at liberty to interpret or re-interpret this Court's prior ruling as to Dr. Haston, it makes little sense for this Court to re-address that issue here.

---

[1] Except for depositions, the pagination throughout is based on the Court's stamped page numbers in the top right-hand corner of the document cited.

### B.    The Extension of the Stop Presents a Triable Issue.

Second, given the District Judge's ruling on the prior Report and Recommendation, the *Monell* claim pertaining to the extension of the stop presents a triable issue. A *Monell* claim requires "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quotations and citation omitted). The District Judge's ruling establishes that there is a triable issue as to the third of these elements. Dkt. No. 139 at 3 ("And the Court agrees with Plaintiff that the substantial conflicting evidence and credibility issues present a genuine issue of material fact as to whether Babb had reasonable suspicion to prolong the stop."). The prior Report and Recommendation's analysis of the other alleged *Monell* predicates, as supplemented by the discussion below, shows that the first and second elements of a *Monell* claim predicated on extending the stop also present triable issues.

1.    *There is a triable issue as to the existence of a policy or custom.* The parties in their summary judgment filings cited or disputed evidence informing whether there was or was not an official policy or custom of extending stops. This reflects a triable issue. For example, Schott cited various deposition excerpts from Bexar County Sheriff's Office (BCSO) officers to show a practice of engineering ways to get into suspects' vehicles, and in a manner inconsistent with ending stops at the appropriate time. Dkt. No. 125 at 9-10 (citing various depositions concerning "Step Two" of the alleged three-step interdiction strategy). Schott also cited 30 bodycam videos depicting traffic stops conducted by the Criminal Interdiction Unit, 15 conducted by Deputy Babb and 15 conducted by Deputy Gereb. *Id.* at 10 (citing Dkt. No. 119-32). These videos show, according to Schott, how interdiction deputies would improperly

"interrogate[] drivers about their lives, their travel, and whether they were carrying anything illegal" to elicit information to justify extending the stop. *Id*. This is evidence from which a jury could find a policy or custom of prolonging stops, as Schott alleges.

Bexar County, in response, took issue with Schott's evidence, largely by offering a competing interpretation of it, and it also argued against the legal basis of Schott's claim. As to the 30 videos of prior stops, the County initially urged that those traffic stops "are not similar to the Schott Traffic stop in question. Of the 30 videos regarding traffic stops, 28 gave consent to search the vehicle and 1 driver was arrested for Marijuana and [u]nlawfully carrying." Dkt. No. 127 at 6. This argument fails to persuade because it somewhat begs the question. Schott claims his stop fits a pattern in which stops were *improperly prolonged* until officers could find a way to initiate a search, presumably by eventually obtaining consent by improperly interrogating drivers or via a cued, "rigged" sniff by a narcotics K-9. Because Bexar County does not show that consent was obtained in those 28 stops without unnecessarily prolonging the stops, the fact that consent was obtained at some point does little to persuade the Court. Moreover, a jury might find that the stops were sufficiently similar to Schott's, or a review of the videos might show that consent in some or all of the 28 stops was ineffective or obtained too late. The County's bare-bones argument about consent therefore mainly goes to the weight of the evidence; it doesn't foreclose Schott's claim at summary judgment.

Bexar County also took the position that an "interdiction" program like the one in this case is lawful if conducted correctly, and that one should not infer from the officers' statements that there was a policy of *unlawfully* engineering ways to get into stopped vehicles. *See* Dkt. No. 134 at 31:15-24. Again, determining how evidence ought to be weighed or what inferences are properly drawn is not for the Court in the current posture. *See Aubrey v. Sch. Bd. of Lafayette*

*Par.*, 92 F.3d 316, 318 (5th Cir. 1996) (explaining that courts on summary judgment "do not weigh the evidence, assess its probative value, or resolve any factual disputes; [they] merely search the record for resolution-determinative factual disputes") (citation omitted).

Bexar County also took aim at the legal basis of the claim, citing cases in which courts set high bars for the number of similar incidents needed to show a pattern or practice under *Monell*. *See* Dkt. No. 127 at 6-8 (collecting cases). In *Peterson v. City of Ft. Worth*, for example, the Fifth Circuit held that a plaintiff's evidence of 27 complaints of excessive force filed between 2002 and 2005 did not constitute a policy or practice of permitting excessive force. 588 F.3d 838, 850-52 (5th Cir. 2009). And in *Pineda v. Houston*, the Fifth Circuit held that 11 instances of warrantless entry did not create a fact issue on the question of a pattern of unconstitutional warrantless entry, as a matter of law. 291 F.3d 325, 329 (5th Cir. 2002).

The Court does not view these cases as establishing a bright-line *Monell* rule based on merely counting incidents devoid of any additional context. In *Pineda*, for example, plaintiffs offered 13 prior incidents of warrantless entry from a sample of 5,000 offense reports "in one of the Nation's largest cities and police forces." *Id*. Of the 13 incidents cited by plaintiffs in that case, "[t]he district court was persuaded that [11 of these 13] incidents for which there were offense reports in the summary judgment record were competent summary judgment evidence of a pattern of unconstitutional searches—enough to defeat summary judgment for want of proof of custom." *Id*. The Fifth Circuit disagreed and wrote that these 11 incidents were not enough to "create[] a fact issue on the issue of pattern conduct." *Id*. The Court also noted that of each of the 13 incidents cited by Plaintiffs, the officers involved reported either "consent or exigent circumstances" to support the entry, and in one case there was no Fourth Amendment interest in the place searched, which significantly undermined the probative value of the prior incidents in

relation to a policy of unlawful warrantless entry. *Id*. at 329 n.12. And *Peterson* involved generic allegations of excessive force spanning a three-year period for the police force of another large metropolitan area. *Peterson*, 588 F.3d at 850-52. Schott, by way of contrast, focuses on a single interdiction unit and its actions within a more discrete time span. He does not allege an unspoken policy covering all of the BCSO, but rather a policy for a discrete unit within the BCSO. And Schott points not just to inferences drawn from statistics and reports; there are direct statements from officers that a jury could believe are consistent with a policy or practice. *See* Dkt. No. 125 at 17-19 (extensively citing officer depositions to show a policy of conducting and extending stops); *see also id*. at 17 ("While a pattern of similar violations is *one* way to prove that a tactic is pervasive, it's not the *only* way.") (citing Dkt. No. 33 at 10) (emphasis in original); *Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 509 (5th Cir. 2022).

Resolving the parties' differences on this point would be premature at the summary judgment stage. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (reversing and remanding and emphasizing that "a court may make no credibility determinations" at summary judgment) (internal quotations and citation omitted); *see also Aubrey*, 92 F.3d at 318. A jury could conclude that the 30 videos offered by Schott establish a pattern, custom, or policy of unlawfully extending stops under the *Monell* standard. A jury could also reach the opposite conclusion and credit Bexar County's interpretation of this evidence instead, weighing the evidence differently. The same is true of the officers' deposition testimony. Accordingly, the parties have presented a triable issue. And Bexar County's argument based on the decisions in *Peterson* and *Pineda* and other cases fails to persuade, as discussed in the prior Report and Recommendation and herein. *See* Dkt. No. 135 at 30-31.

**2.**    *There is a triable issue as to policymaker knowledge.* For reasons largely already discussed in the prior Report and Recommendation as to other *Monell* predicates, there is a genuine issue of material fact on the question of whether Sheriff Salazar had actual or constructive knowledge of an alleged interdiction-unit custom or policy of unlawfully extending traffic stops.

Regarding actual knowledge, a policymaker can be charged with actual knowledge of a policy if there is, for example, evidence that the policymaker personally knew of, adopted, or enforced the policy, or "fail[ed] to take corrective action after their subordinates violate[d] the constitution." *Moore*, 41 F.4th at 510. Constructive knowledge, on the other hand, can be "attributed to a policymaker on the ground that [he] would have known of the violations if [he] had properly exercised its responsibilities." *Id*. at 511 (alterations in original) (citations and quotations omitted). It is undisputed that Sheriff Salazar is the final policymaker for purposes of the *Monell* analysis. *See* Dkt. No. 135 at 31.

Urging that Salazar had knowledge of the interdiction unit's practices, Schott relied on deposition testimony in which Salazar said with respect to the interdiction unit that he "kind of knew basically what they do, what they did," Dkt. No. 125 at 20 (citing Dkt. No. 119-1 at 116:2–7), and other testimony showing that Salazar created the unit and discussed its tactics with Deputy Babb and Sergeant Gamboa. *Id*. (citing various depositions). Schott also argued that, in the alternative, Salazar delegated final policymaking authority over the unit to Sergeant Gamboa and that Gamboa ultimately can be charged with actual or constructive knowledge for *Monell* purposes. *Id*. at 20-21 (citing *Moore*, 41 F.4th at 510).

Bexar County unsurprisingly took the opposite view. It asserted that there is no evidence establishing that Salazar was in fact aware of any unconstitutional custom or policy relating to

the unit's traffic stops, that Salazar ultimately disbanded the unit, and that Salazar ultimately terminated Deputy Babb for lying about the use of his dashboard camera on his patrol car, if not for the stop in question, which presumably might warrant an inference that Salazar took corrective action when untoward any conduct was learned of. Dkt. No. 117 at 19-20 (citing various portions of Salazar's deposition). Bexar County also offered its own statistical evidence to suggest that there was no reason for Salazar to believe that the unit may have been violating BCSO policy. *Id*. at 20 (citing various portions of Captain Aaron Von Muldau's deposition). Bexar County furthermore urged that the BCSO "does investigate traffic stops when a complaint is made but [that] this is done on a complaint by complaint basis," and that it does take action when complaints are sustained. *Id*. at 20-21 (citing various portions of Captain Aaron Von Muldau's deposition).

In its Reply in support of the Motion for Summary Judgment, Bexar County emphasized, with respect to imputing knowledge to Salazar through complaints, "that the only complaint made against the Bexar County Criminal Interdiction Unit was the case at bar . . . The number Plaintiff cannot escape from is that the only complaint was Alek Schott and Schott's complaint concerning the stop in question does not establish a custom or policy of Bexar County, as a matter of law." Dkt. No. 127 at 9 (citation omitted). And at the hearing on November 5, 2025, Bexar County emphasized that interdiction units are not per se unlawful, with an implication being that creation of the interdiction unit and knowledge of its operations does not necessarily support the inference that Salazar knew certain of the unit's officers were using unlawful tactics in the field (if one were to assume they were, that is). *See* Dkt. No. 134 at 31:15-24.

Taken together, the evidence on policymaker knowledge is not conclusive, when viewed in a light favorable to nonmovant Schott, and the Court largely reiterates its reasoning from the

8

prior Report and Recommendation on this issue as to the other *Monell* predicates. For one thing, Sheriff Salazar's and Babb's testimony could be interpreted at trial—consistent with Bexar County's framing of the evidence—as showing merely that Salazar created the interdiction unit, gave it a certain mandate, and broadly approved of the officers' tactics; that testimony need not necessarily mean that he knew of or affirmatively blessed a practice of unlawfully extending stops. *See* Dkt. No. 119-1 at 220:2-20 (Salazar testifying that he would have remembered if anything Deputy Babb shared with him struck him as "flatly inconsistent" with BCSO policy). But it could also be viewed the other way, as supporting Schott's view of things. Thus, a jury could find that the testimony and evidence is more congruent with Bexar County's framing of the case, *i.e.*, that running interdiction units using pretextual stops is not itself unlawful, and that any unconstitutional "tricks" used by Babb or Gereb in executing on the unit's mandate were used without the knowledge or approval of a policymaker. But a jury could also find, for example, that Sheriff Salazar's knowledge of the unit's tactics—such as that gathered through Sergeant Gamboa—was such that the Salazar knew of or remained deliberately indifferent to unlawful tactics. Evidence that might point in that direction could be found, for example, in the testimony of Babb, Gereb, or Salazar, depending on how it is interpreted by a jury. Dkt. No. 125 at 20 (citing various depositions). And a jury could resolve the conflicts about Salazar's termination of Babb and other points of evidence in several different ways.

For the reasons provided herein, the Court concludes that there are triable issues of fact on the existence of a custom or policy of unlawfully extending traffic stops and the question of whether the final policymaker had actual or constructive knowledge of any such policy. *See Heinsohn*, 832 F.3d at 245; *Aubrey*, 92 F.3d at 318. Defendant Bexar County's Motion for Summary Judgment should therefore be denied.

**Conclusion and Recommendation**

For the reasons discussed above, it is recommended that Opposed Motion for Summary Judgment by Bexar County, Dkt. No. 117, be **DENIED**. The parties have raised triable issues as to each element of Plaintiff's *Monell* claim regarding the unlawful extension of traffic stops.

And to the extent the prior Report and Recommendation, Dkt. No. 135, improperly relied on Dr. Haston's testimony, it is hereby **VACATED** on that point and to the extent it does so. The remainder of the Report and Recommendation's analysis, as well as the analysis included here, shows the parties have raised an issue of triable fact as to whether the initial stop was lawful.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985);

*Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **IT IS SO ORDERED**.

    **SIGNED** this 29th day of April, 2026.

 

**RICHARD B. FARRER**
**UNITED STATES MAGISTRATE JUDGE**