**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| ALEK SCHOTT,<br>*Plaintiff*,<br>v.<br>BEXAR COUNTY, TEXAS,<br>*Defendant*. | Civil Action No. 5:23-cv-00706-OLG-RBF |

## JURY CHARGE

### General Instructions[1]

MEMBERS OF THE JURY:

It is my duty to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion you might have as to what the law ought to be.

If I have given the impression during the trial that I favor either party, you must disregard that impression. If I have given the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions on the law, you should disregard anything I have said or done during the trial in arriving at your verdict.

You should consider all instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

[1] 5th Cir. Pattern Jury Instructions (Civil Cases) § 3.1 (2020 ed.); *see also* Jury Charge at 1–2, *Sebastiani v. Bexar Cnty. Hosp. Dist.*, No. 5:20-cv-01093-OLG (W.D. Tex. 2023).

It is important that you distinguish between the arguments of counsel and the evidence on which those arguments rest. The testimony of the witnesses and other exhibits introduced by the parties and admitted into the record constitute the evidence. What the lawyers say, do, or argue is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence supports their arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and the evidence presented to you in the courtroom. You must not let bias, prejudice, or sympathy for the plaintiff or the defendant play any part in your deliberations or verdict.[2] All persons and public entities are equal before the law and must be treated as equals in a court of justice.[3]

Plaintiff Alek Schott has the burden to prove his case by a preponderance of the evidence. If a preponderance of the evidence supports a point, that means it is more likely true than false. If you find that Alek has failed to prove any element of a claim by a preponderance of the evidence, then he may not recover on that claim.[4]

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.[5]

---

[2] 5th Cir. Pattern Jury Instructions (Civil Cases) § 3.1 (2020 ed.); *see also* Jury Charge at 1–2, *Sebastiani*, No. 5:20-cv-01093-OLG.

[3] Jury Charge at 2, *Sebastiani*, No. 5:20-cv-01093-OLG.

[4] 5th Cir. Pattern Jury Instructions (Civil Cases) § 3.2 (2020 ed.); Jury Charge at 2, *Sebastiani*, No. 5:20-cv-01093-OLG.

[5] 5th Cir. Pattern Jury Instructions (Civil Cases) § 3.3 (2020 ed.); *see also* Jury Charge at 2, *Sebastiani*, No. 5:20-cv-01093-OLG.

Generally speaking, there are two types of evidence. One type is direct evidence, such as testimony of an eyewitness. The other type is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.[6]

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.[7] The parties have agreed to the following facts:

1. On March 16, 2022, Joel Babb, an officer with the Bexar County Sheriff's Office, pulled over Alek Schott.

2. When he was pulled over, Alek Schott had been driving north on Interstate 35 in Bexar County.

3. When he was pulled over, Alek Schott had been driving his black 2019 F-250, a pickup truck.

4. Alek Schott had installed a dashboard camera in his pickup truck.

5. On March 16, 2022, Deputy Martin A. Molina III and his K-9 Max conducted a free air canine sniff of Alek's truck.

6. Deputies Babb, Molina, and Gereb searched Alek Schott's truck. The officers claim that the drug-detection dog's alert gave them probable cause to search. There was no other source of probable cause.

7. Deputies Babb, Molina, and Gereb all had body-worn cameras during the stop and search of Alek's truck.

8. After the search was complete, Deputy Babb returned Alek's license and gave Alek a warning.

---

[6] 5th Cir. Pattern Jury Instructions (Civil Cases) § 3.3 (2020 ed.); *see also* Jury Charge at 2–3, *Sebastiani*, No. 5:20-cv-01093-OLG.

[7] 5th Cir. Pattern Jury Instructions (Civil Cases) § 2.3 (2020 ed.); *see also* Jury Charge at 3, *Sebastiani*, No. 5:20-cv-01093-OLG.

9. K-9 Max at the time in question was dual certified by NCATS as a narcotics and patrol canine.

10. Joel Babb, Martin A. Molina III, and Joe Gereb, the deputies involved in Alek Schott's March 16, 2022 traffic stop and detention, were acting in the course and scope of their employment as Texas Commission on Law Enforcement (TCOLE) certified peace officers of the State of Texas with the Bexar County Sheriff's Office and were acting under color of law.

11. Bexar County Sheriff Javier Salazar is the policymaker for Bexar County concerning law enforcement.

12. The Bexar County Sheriff's Office (BCSO) is a component of the Bexar County Government, and its officers act under color of state law.

13. Alek filed this lawsuit on June 1, 2023.

You alone are to determine the credibility or truthfulness of the witnesses. In weighing the testimony of a witness, you may consider his or her manner and demeanor on the witness stand, any feelings, interest, prejudice, or bias that he or she may have about the case, and the consistency or inconsistency of his or her testimony considered in light of the circumstances. Has the witness been contradicted by other credible evidence? Has the witness made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.[8]

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.[9]

[8] 5th Cir. Pattern Jury Instructions (Civil Cases) § 3.4 (2020 ed.); *see also* Jury Charge at 3–4, *Sebastiani*, No. 5:20-cv-01093-OLG.
[9] 5th Cir. Pattern Jury Instructions (Civil Cases) § 3.4 (2020 ed.); *see also* Jury Charge at 4, *Sebastiani*, No. 5:20-cv-01093-OLG.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if, after considering all of the other evidence, you believe that witness.[10]

In determining the weight to give the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.[11]

A simple mistake by a witness does not necessarily mean the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.[12]

You are required to evaluate the testimony of a law enforcement officer as you would the testimony of any other witness. No special weight may be given to a witness's testimony because he or she is a law enforcement officer.[13]

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those

---

[10] 5th Cir. Pattern Jury Instructions (Civil Cases) § 3.4 (2020 ed.); *see also* Jury Charge at 4, *Sebastiani*, No. 5:20-cv-01093-OLG.
[11] 5th Cir. Pattern Jury Instructions (Civil Cases) § 2.11 (2020 ed.); *see also* Jury Charge at 4, *Sebastiani*, No. 5:20-cv-01093-OLG.
[12] 5th Cir. Pattern Jury Instructions (Civil Cases) § 2.11 (2020 ed.); *see also* Jury Charge at 4, *Sebastiani*, No. 5:20-cv-01093-OLG.
[13] 5th Cir. Pattern Jury Instructions (Civil Cases) § 2.15 (2020 ed.).

technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.[14]

During the course of this trial, you heard testimony from certain individuals who are not parties to this lawsuit or are no longer involved in this lawsuit. You must not speculate why they are not parties to this lawsuit, or why they are no longer involved in this case. As jurors, it is your duty to consider the issues only among the parties before you.[15]

I will now instruct you on the specific legal claims in this lawsuit.[16]

**Claim-Specific Instructions**

**Instruction No. 1**
**Summary of Plaintiff's Claims**

Plaintiff Alek Schott claims that Defendant Bexar County violated his rights under the Fourth Amendment to the U.S. Constitution. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[17] The Fourth Amendment protects the foundational right to be free from unreasonable searches and seizures,[18] including the freedom from unreasonable roadside stops and searches.[19] And, as these instructions will explain more below, the Fourth Amendment forbids police from conducting suspicionless stops and searches just because they hope to find something illegal.[20] Bexar County and its officers must comply with the Fourth Amendment.[21]

---

[14] 5th Cir. Pattern Jury Instructions (Civil Cases) § 3.5 (2020 ed.); *see also* Jury Charge at 4–5, *Sebastiani*, No. 5:20-cv-01093-OLG.
[15] 5th Cir. Pattern Jury Instructions (Civil Cases) § 2.5 (2020 ed.); Jury Charge at 6, *Gonzales v. City of Austin*, No. 1:22-cv-655-RP (W.D. Tex. 2024).
[16] Jury Charge at 5, *Sebastiani*, No. 5:20-cv-01093-OLG.
[17] U.S. Const. amend. IV.
[18] *Carpenter v. United States*, 585 U.S. 296, 303 (2018).
[19] *Delaware v. Prouse*, 440 U.S. 648, 653–55 (1979).
[20] *Utah v. Strieff*, 579 U.S. 232, 242 (2016).
[21] *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

With that context in mind, Alek claims that Bexar County violated his Fourth Amendment rights through the actions of its officers in three distinct ways:

1. Deputy Babb violated Alek's right to be free from unreasonable seizures of his person by pulling Alek over for a traffic stop without reasonable suspicion that Alek had committed a traffic violation.[22]

2. Deputy Babb violated Alek's right to be free from unreasonable seizures of his person by extending the traffic stop beyond the time required to address a traffic violation without reasonable suspicion that Alek was engaged in a separate crime.[23]

3. Deputies Babb, Molina, and Gereb searched Alek's car without consent, a warrant from a judge, or probable cause to believe that they would find contraband inside.[24]

You will decide each of Alek's claims by answering a series of questions on the verdict form. Instructions 2–4 below will provide information on how to answer those questions.

If you decide that Alek's rights were violated in any, some combination, or all three of the ways he claims, then you must also decide whether Bexar County is liable for the violation(s). Instruction 5 below will provide information on how to answer those questions.

Finally, if you decide that Bexar County is liable, then you must decide the amount of damages, if any, that should be awarded to Alek. Instruction 6 below will provide information on how to answer those questions.

Please follow the order of the questions on the verdict form, the instructions on the verdict form, and the instructions below carefully.

---

[22] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.1 (2020 ed.); *Kansas v. Glover*, 589 U.S. 376, 380 (2020); *United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015).
[23] *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015); *United States v. Reyes*, 963 F.3d 482, 487 (5th Cir. 2020); *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) (en banc).
[24] *Maryland v. Dyson*, 527 U.S. 465, 467 (1999); *United States v. Clayton*, 98 F.4th 256, 261 (5th Cir. 2024); *Rountree v. Lopinto*, 976 F.3d 606, 609 (5th Cir. 2020).

**Instruction No. 2**
**Constitutional Claim Number 1: Unconstitutional Traffic Stop**

Alek Schott claims that Deputy Babb violated the Fourth Amendment when Babb stopped Alek on March 16, 2022, because Deputy Babb lacked reasonable suspicion that Alek committed a traffic violation. To evaluate this claim, apply the following principles:

*The Fourth Amendment*

The Fourth Amendment forbids "unreasonable . . . seizures."[25] A traffic stop is a seizure as soon as it begins.[26] Thus, to prevail on this claim, Alek must show that Babb's initial decision to stop him was unreasonable.[27]

*Reasonable Suspicion*

A traffic stop is unreasonable when the officer lacks reasonable suspicion that the person stopped is committing a crime.[28] Reasonable suspicion means that the officer can identify specific and articulable facts that reasonably suggest a particular person is committing a crime.[29]

Reasonable suspicion is an objective standard.[30] That means you must decide whether a reasonable officer in Babb's shoes would have stopped Alek based on the facts available to Babb before the stop.[31] Babb's personal motivations for the stop, or facts he learned after the stop, are irrelevant to whether he had reasonable suspicion to stop Alek.[32]

---

[25] U.S. Const. amend. IV.
[26] *United States v. Raney*, 633 F.3d 385, 389 (5th Cir. 2011).
[27] *Id.* at 389–90.
[28] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.1 (2020 ed.); *Glover*, 589 U.S. at 380; *Alvarado-Zarza*, 782 F.3d at 249.
[29] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.1 (2020 ed.); *Glover*, 589 U.S. at 380; *Alvarado-Zarza*, 782 F.3d at 249.
[30] *United States v. Lopez-Moreno*, 420 F.3d 420, 432 (5th Cir. 2005).
[31] Order on Mots. to Strike (ECF No. 129) at 23–24 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), and *United States v. Waller*, 105 F. Supp. 3d 683, 695–96 (W.D. Tex. 2015)).
[32] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.1 (2020 ed.); *United States v. Escalante*, 239 F.3d 678, 681 (5th Cir. 2001); *Waller*, 105 F. Supp. 3d at 694–96.

*Traffic Violations*

To stop a person for a traffic violation the officer claims to have personally observed, the officer must actually see the driver violate a traffic law.[33] In other words, an officer cannot stop a driver for a traffic violation when that person's conduct is no different from any other driver's.[34]

To help you determine whether Babb had reasonable suspicion to stop Alek, I will now instruct you on the elements of the traffic violation for which Alek was allegedly stopped.[35] The offense of "failure to maintain a single lane" is from Texas Transportation Code § 545.060(a).[36]

Texas Transportation Code § 545.060(a) provides: "An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely."[37]

A driver does not violate Texas Transportation Code § 545.060(a) just because his tires briefly touch a marked line on the road.[38] Likewise, a driver does not violate Texas Transportation Code § 545.060(a) just because he weaves outside of his lane for a few seconds.[39]

Instead, to violate Texas Transportation Code § 545.060(a), a driver must move outside of his lane and do so unsafely.[40] Movement becomes unsafe when it creates a risk of danger or

---

[33] *United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006); *Raney*, 633 F.3d at 390; *Escalante*, 239 F.3d at 681.
[34] *Glover*, 589 U.S. at 385.
[35] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.1 (2020 ed.).
[36] *State v. Hardin*, 664 S.W.3d 867, 873 (Tex. Crim. App. 2022); *State v. Cerny*, 28 S.W.3d 796, 800–01 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.).
[37] Tex. Transp. Code § 545.060(a).
[38] *Hardin*, 664 S.W.3d at 873–74; *Cerny*, 28 S.W.3d at 799–801.
[39] *Hardin*, 664 S.W.3d at 876–77; *Cerny*, 28 S.W.3d at 800.
[40] *Hardin*, 664 S.W.3d at 875; *Cerny*, 28 S.W.3d at 799–801.

harm.[41] Movement that creates no such risk cannot violate Texas Transportation Code § 545.060(a).[42]

**Instruction No. 3**
**Constitutional Claim Number 2: Unconstitutional Traffic Stop Extension**

Alek Schott claims that Deputy Babb violated the Fourth Amendment when Babb extended the traffic stop beyond the time needed to address the alleged traffic violation because Babb did not have reasonable suspicion that Alek was engaged in a separate crime. To evaluate this claim, apply the following principles:

*The Fourth Amendment*

The Fourth Amendment forbids "unreasonable . . . seizures."[43] A traffic stop is a seizure for as long as it lasts.[44] Thus, to prevail on this claim, Alek must show that the length of Babb's traffic stop was unreasonable.[45]

*Traffic Stop Duration*

A traffic stop must be reasonably related in scope to the initial justification for the stop.[46] When the justification for the stop is a traffic violation, the stop may last no longer than necessary for the officer to address the traffic violation.[47]

---

[41] *Hardin*, 664 S.W.3d at 873–74; *Cerny*, 28 S.W.3d at 799–800.
[42] *Hardin*, 664 S.W.3d at 876; *Cerny*, 28 S.W.3d at 799–801.
[43] U.S. Const. amend. IV.
[44] *Rodriguez*, 575 U.S. at 354.
[45] *Id.*
[46] *Reyes*, 963 F.3d at 487.
[47] *Id.*

Proper traffic enforcement tasks include writing a ticket or warning, checking a driver's license, registration, and proof of insurance, checking whether the driver has outstanding warrants, and asking about a driver's trip.[48] These tasks can involve computer checks.[49]

An officer must diligently work to resolve the traffic violation.[50] When traffic tasks are—or reasonably should be—completed, the stop must end.[51] In general, if an officer has had time to write a ticket and all computer checks come back clean, there is no basis for extending the stop.[52]

*Traffic Stop Extensions*

An officer who detours from his traffic tasks in order to investigate unrelated criminal activity necessarily extends the stop.[53] For example, searching an automated license plate reader database for a driver's travel history, questioning a driver about unrelated crimes, and calling a drug dog to the scene are all investigatory tasks that extend a traffic stop.[54]

To justify extending a stop in this way, an officer must have reasonable suspicion that the driver is engaged in a crime separate from the initial traffic violation.[55] The officer must develop this reasonable suspicion before his traffic tasks are—or reasonably should be—completed.[56]

---

[48] *Rodriguez*, 575 U.S. at 354–55; *Reyes*, 963 F.3d at 487; *Brigham*, 382 F.3d at 508.
[49] *Reyes*, 963 F.3d at 487; *United States v. Cavitt*, 550 F.3d 430, 436 (5th Cir. 2008); *United States v. Jenson*, 462 F.3d 399, 403–04 (5th Cir. 2006).
[50] *Rodriguez*, 575 U.S. at 354; *Reyes*, 963 F.3d at 487; *Brigham*, 382 F.3d at 511.
[51] *Rodriguez*, 575 U.S. at 354–55; *Reyes*, 963 F.3d at 487; *Cavitt*, 550 F.3d at 436.
[52] *Cavitt*, 550 F.3d at 436; *Jenson*, 462 F.3d at 404; *Lopez-Moreno*, 420 F.3d at 431.
[53] *Rodriguez*, 575 U.S. at 355–56.
[54] *Id.*; *Reyes*, 963 F.3d at 487; *United States v. Frazier*, 30 F.4th 1165, 1171–72, 1178–81 (10th Cir. 2022).
[55] *Rodriguez*, 575 U.S. at 355, 358; *Reyes*, 963 F.3d at 487–88; *Lopez-Moreno*, 420 F.3d at 431.
[56] *Rodriguez*, 575 U.S. at 349; *Reyes*, 963 F.3d at 487–88; *Cavitt*, 550 F.3d at 436.

Thus, to decide whether Babb lawfully extended Alek's stop, you must identify: (1) the moment when Babb's traffic tasks were or should have been completed; and (2) whether, at that moment, Babb had reasonable suspicion to suspect Alek of a separate crime.[57]

Remember that an officer must act with reasonable diligence.[58] He cannot purposefully drag out his traffic tasks.[59] And, even if he develops reasonable suspicion to extend the stop, that extension may last only as long as necessary to confirm or dispel his new suspicion.[60]

*Reasonable Suspicion*

An officer has reasonable suspicion to extend a traffic stop when he can identify specific and articulable facts that reasonably suggest the driver is committing a crime.[61] The focus is on whether a reasonable officer in his shoes, knowing all the same facts and with the same training and experience, would reasonably suspect the driver of a crime.[62]

Reasonable suspicion requires more than a mere "hunch."[63] When an officer's asserted reasons to suspect a driver of a crime would equally describe a large number of innocent people, that is not reasonable suspicion.[64] In other words, an officer cannot use the reasonable suspicion standard to put an ominous gloss on behavior that is almost entirely ordinary.[65]

---

[57] *United States v. Spears*, 636 F. App'x 893, 901 (5th Cir. 2016); *Cavitt*, 550 F.3d at 436–37; *Jenson*, 462 F.3d at 405–06 & n.7.
[58] *Rodriguez*, 575 U.S. at 354; *Reyes*, 963 F.3d at 487; *Brigham*, 382 F.3d at 511.
[59] *See Rodriguez*, 575 U.S. at 356.
[60] *Reyes*, 963 F.3d at 487–88; *United States v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011); *Lopez-Moreno*, 420 F.3d at 431.
[61] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.1 (2020 ed.); *Reyes*, 963 F.3d at 488; *Cavitt*, 550 F.3d at 436.
[62] *Reyes*, 963 F.3d at 488; *United States v. Pack*, 612 F.3d 341, 352 (5th Cir.), *modified on other grounds*, 622 F.3d 383 (5th Cir. 2010); *Jenson*, 462 F.3d at 403–04.
[63] *Glover*, 589 U.S. at 380; *Reyes*, 963 F.3d at 488; *Pack*, 612 F.3d at 352.
[64] *Reid v. Georgia*, 448 U.S. 438, 441 (1980); *United States v. Alvarez*, 40 F.4th 339, 346 (5th Cir. 2022); *see also Glover*, 589 U.S. at 385.
[65] *United States v. Hill*, 752 F.3d 1029, 1034 (5th Cir. 2014).

When deciding whether Babb had reasonable suspicion to extend Alek's traffic stop, you should not consider any one fact in isolation but rather the totality of the circumstances.[66] At the same time, you should know that certain facts are not inherently suspicious:

- Mild nervousness during a traffic stop is normal and not inherently suspicious.[67]
- Possessing a firearm in Texas is presumed lawful and not inherently suspicious.[68]
- Driving on highways between Houston and Mexico is not inherently suspicious.[69]
- Driving a long distance and back again in one day is not inherently suspicious.[70]
- Driving with passengers near the Mexico border is not inherently suspicious.[71]

Also, the mere fact that a person has denied an officer consent to search his car cannot support the officer's reasonable suspicion to search.[72]

*Informant Tips*

If Babb claims that he had reasonable suspicion to extend Alek's stop based on a tip from an informant, rather than based on facts Babb personally observed, you must assess whether that tip independently supplied reasonable suspicion for the extension.[73]

---

[66] *Reyes*, 963 F.3d at 489; *Pack*, 612 F.3d at 358; *Lopez-Moreno*, 420 F.3d at 433.
[67] *Macias*, 658 F.3d at 520; *United States v. Coleman*, No. 1:11-CR-142(5), 2012 WL 3112065, at *6–7 (E.D. Tex. July 10, 2012), *R&R adopted*, 2012 WL 3115058 (E.D. Tex. July 31, 2012).
[68] *United States v. Wilson*, 143 F.4th 647, 653, 659 (5th Cir. 2025).
[69] *United States v. Madrigal*, 626 F. App'x 448, 451 (5th Cir. 2015).
[70] *Id.*
[71] *United States v. Lopez-Valdez,* 178 F.3d 282, 287 (5th Cir. 1999).
[72] *United States v. Machuca-Barrera*, 261 F.3d 425, 435 n.32 (5th Cir. 2001); *Coleman*, 2012 WL 3112065, at *7.
[73] *Navarette v. California*, 572 U.S. 393, 397 (2014).

To supply reasonable suspicion, a tip from an informant must contain specific facts that reasonably suggest the person stopped is committing a crime.[74] The tip must also be a reliable source of information for the allegedly suspicious conduct it describes.[75]

To assess whether a tip is reliable, you must consider: (1) the credibility and reliability of the informant; (2) the specificity of the information contained in the tip; (3) the extent to which the information in the tip can be verified by officers in the field; and (4) whether the tip concerns active or recent activity or has instead gone stale.[76]

On the first factor, anonymous tips are often deemed unreliable because the informant's reputation cannot be assessed and the informant cannot be held responsible for false allegations.[77] When an officer receives an anonymous tip outside the 911 emergency system, the first factor is unlikely to be met unless the informant claims eyewitness knowledge of ongoing criminal acts.[78]

Whatever you conclude about the first factor for assessing the reliability of a tip, you must still consider the other three factors listed above and assess whether the specific facts contained in the tip reasonably suggest that the person stopped is committing a crime.[79]

**Instruction No. 4**
**Constitutional Claim Number 3: Unconstitutional Search**

Alek Schott claims that Deputies Babb, Molina, and Gereb violated the Fourth Amendment when they searched his car without his consent, a warrant, or probable cause to believe there was contraband inside. To evaluate this claim, apply the following principles:

---

[74] *Id.* at 398.
[75] *Florida v. J.L.*, 529 U.S. 266, 272 (2000).
[76] *United States v. Wright*, 74 F.4th 722, 726 (5th Cir. 2023) (quoting *United States v. Gomez*, 623 F.3d 265, 269 (5th Cir. 2010)).
[77] *United States v. Martinez*, 486 F.3d 855, 862 (5th Cir. 2007).
[78] *Wright*, 74 F.4th at 727.
[79] *Id.* at 728; *Navarette*, 572 U.S. at 398.

*The Fourth Amendment*

The Fourth Amendment forbids "unreasonable searches."[80] Physically opening a car or entering the car's airspace to look inside is a search.[81] Thus, to prevail on this claim, Alek must show that the deputies' search of his car was unreasonable.[82]

*Consent to Search*

If a driver consents for police to search his car, that search is reasonable.[83] Alek contends that he did not give consent to search his car. If Bexar County asserts otherwise, you should weigh that assertion by applying the following principles:

First, a driver's asserted consent is not valid if the officer requested that consent at a time when the officer was already unreasonably extending the traffic stop.[84]

Second, a driver's asserted consent is not valid if a reasonable person in the requesting officer's shoes would not understand the driver's statement as consent.[85] A driver's mere silence, passivity, or submission to a show of lawful authority does not convey consent to a search.[86]

Third, a driver's asserted consent is not valid unless it was given voluntarily and as an independent act of free will.[87]

---

[80] U.S. Const. amend. IV.
[81] *United States v. Meredith*, 480 F.3d 366, 369 (5th Cir. 2007); *United States v. Hunt*, 253 F.3d 227, 231 (5th Cir. 2001); *United States v. Ryles*, 988 F.2d 13, 15 (5th Cir. 1993).
[82] *Clayton*, 98 F.4th at 261; *United States v. Guzman*, 739 F.3d 241, 245–46 (5th Cir. 2014); *United States v. Castelo*, 415 F.3d 407, 409 (5th Cir. 2005).
[83] *United States v. Morris*, 40 F.4th 323, 328 (5th Cir. 2022).
[84] *Jenson*, 462 F.3d at 408; *United States v. Benavides*, 291 F. App'x 603, 608 (5th Cir. 2008); *Macias*, 658 F.3d at 523–25; *Waller*, 105 F. Supp. 3d at 698.
[85] *Florida v. Jimeno*, 500 U.S. 248, 250–51 (1991).
[86] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.1 (2020 ed.); *Florida v. Royer*, 460 U.S. 491, 498 (1983); *Florida v. Bostick*, 501 U.S. 429, 438 (1991).
[87] *Morris*, 40 F.4th at 328; *Jenson*, 462 F.3d at 406; *Macias*, 658 F.3d at 523–25.

For example, in one case where an officer unreasonably extended a traffic stop and then requested consent to search the driver's car while holding the driver's ID and without informing the driver of his right to refuse the search, the court deemed the driver's consent invalid.[88]

*Warrantless Searches*

Absent consent, the Fourth Amendment typically requires police to obtain a warrant from a judge before searching property.[89] The warrant requirement helps prevent arbitrary searches by ensuring that a neutral judge, rather than zealous officers, finds probable cause for the search.[90]

Thus, warrantless searches are unreasonable unless a recognized exception applies.[91] One exception allows police to search a car without a warrant if the car is readily mobile and police have probable cause to believe the car contains contraband or evidence of a crime.[92]

*Probable Cause*

An officer has probable cause to search a car when the reasonably trustworthy facts that are available to him would prompt a reasonable officer in his position to suspect that contraband or evidence of a crime will be found inside.[93] Probable cause is a higher standard than reasonable suspicion: It requires a fair probability that a search will find contraband or evidence of crime.[94]

---

[88] *Jenson*, 462 F.3d at 407.
[89] *Caniglia v. Strom*, 593 U.S. 194, 198 (2021); *Riley v. California*, 573 U.S. 373, 382 (2014).
[90] *Riley*, 573 U.S. at 382; *Johnson v. United States*, 333 U.S. 10, 14 (1948).
[91] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.1 (2020 ed.); *Clayton*, 98 F.4th at 261; *Guzman*, 739 F.3d at 245–46.
[92] *Dyson*, 527 U.S. at 467; *Clayton*, 98 F.4th at 263; *Rountree*, 976 F.3d at 609.
[93] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.1 (2020 ed.); *Florida v. Harris*, 568 U.S. 237, 243 (2013); *Clayton*, 98 F.4th at 263.
[94] *Glover*, 589 U.S. at 380; *Alabama v. White*, 496 U.S. 325, 330 (1990); *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

*Drug Dog Alerts*

When a dog trained to detect illegal drugs alerts on a car, that alert presumptively gives officers probable cause to search the car if either (1) a bona fide organization has certified the dog's reliability after testing in a controlled setting, or (2) the dog has recently successfully completed a training program that evaluated his proficiency in finding drugs.[95]

However, this presumption is rebuttable—meaning the inference that a dog alert creates probable cause may be overcome by the introduction of contrary evidence.[96] That evidence may include evidence from a drug dog's history out in the field, the handler's history out in the field, or circumstances surrounding the particular alert that undermine the alert's reliability.[97]

For example, evidence that the dog was improperly trained, that the team was operating under unfamiliar conditions, or that the handler cued his dog—consciously or not—to alert, could rebut the presumption that the dog's alert created probable cause to search a car.[98]

Ultimately, it is your job to weigh all the evidence presented and to decide whether the alleged drug dog alert in this case is entitled to the presumption of reliability and, if so, whether Alek has produced evidence rebutting that presumption.[99]

---

[95] *Harris*, 568 U.S. at 246–47.
[96] *Id.* at 247; *Presumption*, Black's Law Dictionary (12th ed. 2024) ("rebuttable presumption").
[97] *Harris*, 568 U.S. at 247.
[98] *Id.*; *United States v. Bentley*, 795 F.3d 630, 636 (7th Cir. 2015); *United States v. Mickens*, 810 F. Supp. 3d 75, 87 (D.D.C. 2025).
[99] *Harris*, 568 U.S. at 247–48.

As you weigh the evidence, keep in mind the probable cause standard: The alleged drug dog alert in this case must have given the officers a reasonably trustworthy basis for thinking there was a fair probability that contraband or evidence of crime would be found in Alek's car.[100]

**Instruction No. 5**
**Municipal Liability**

Alek Schott is suing Bexar County. Thus, if you decide that Alek suffered any, some combination, or all three of the constitutional violations discussed above, then you must decide whether Bexar County is responsible for those violations.[101] The County can be held liable for constitutional violations committed by its employees only if a county policy or custom caused those violations.[102] To decide the County's liability, apply the following principles:

*Three Requirements*

To hold Bexar County liable, Alek must prove: (1) Bexar County had a policy or custom; (2) a policymaker knew or should have known about the policy or custom; and (3) the policy or custom was the moving force behind a violation of Alek's constitutional rights.[103] To put it more simply, Alek must prove that Bexar County deliberately acted in a way that caused a violation of his rights.[104] As a reminder, Alek is not required to prove this (or any other) part of his case with certainty, but he must prove that it is more likely to be true than false.[105]

---

[100] *Glover*, 589 U.S. at 380; *White*, 496 U.S. at 330; *Sokolow*, 490 U.S. at 7.
[101] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.5 (2020 ed.); *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022); *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012).
[102] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.5 (2020 ed.); *Moore*, 41 F.4th at 509; *Bishop*, 674 F.3d at 467.
[103] *Moore*, 41 F.4th at 509; *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018); *Bishop*, 674 F.3d at 467.
[104] *Thompson v. McGehee*, 183 F.4th 353, 372 & n.75 (5th Cir. 2026) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).
[105] 5th Cir. Pattern Jury Instructions (Civil Cases) §§ 3.2 & 10.5 (2020 ed.).

*First Requirement*

The first point Alek must prove is that Bexar County had either a policy or a custom for which it can be held liable.[106]

A "policy" is a statement, ordinance, regulation, or decision that was formally adopted by a policymaker.[107] A plaintiff can also prove a policy, even if nothing is written down, when an officer made a decision that violated a constitutional right and a policymaker later approved that decision and the basis for it.[108] For example, if an officer violates the Fourth Amendment and a policymaker deems that conduct reasonable and consistent with policy, that can prove a policy.[109]

A "custom" is a widespread practice of Bexar County officials that, even if not formally adopted by a policymaker, is so common and well-settled that it fairly represents policy.[110] One way to prove a custom is by providing numerous specific examples of constitutional violations similar to what the plaintiff suffered.[111] But that is not the only way to prove a custom.[112] Other evidence that a custom exists can include:

- Discussion between officers or testimony that suggests a practice is commonplace.[113]

---

[106] *Moore*, 41 F.4th at 509; *Alvarez*, 904 F.3d at 389; *Bishop*, 674 F.3d at 467.
[107] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.5 (2020 ed.); *Monell*, 436 U.S. at 690; *Zarnow*, 614 F.3d at 166–67.
[108] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion); *Webb v. Town of St. Joseph*, 925 F.3d 209, 217 & n.48 (5th Cir. 2019); *Young v. Bd. of Supervisors*, 927 F.3d 898, 903 & n.4 (5th Cir. 2019).
[109] *See Benson v. City of San Jose*, 583 F. App'x 604, 607 (9th Cir. 2014) ("Because a jury could find that Chief Davis's conclusion that 'Pettis had acted reasonably and within Police Department policy and procedure,' constituted official approval of Pettis's [unconstitutional] decision and the basis for it, we remand on the question of municipal liability.").
[110] 5th Cir. Pattern Jury Instructions (Civil Cases) § 10.5 (2020 ed.); *Monell*, 436 U.S. at 690–91; *Zarnow*, 614 F.3d at 168.
[111] *Cambric v. City of Corpus Christi*, 170 F.4th 321, 325 (5th Cir. 2026); *Martinez v. Nueces County*, 71 F.4th 385, 389 (5th Cir. 2023); *Milam v. City of San Antonio*, 113 F. App'x 622, 625 (5th Cir. 2004).
[112] *Moore*, 41 F.4th at 509; *Montano v. Orange County*, 842 F.3d 865, 876 (5th Cir. 2016).
[113] *Moore*, 41 F.4th at 509–11.

- A persistent and uncorrected pattern that suggests policymakers approve a practice.[114]
- Policymakers reacting to the plaintiff's experience in a way that suggests approval.[115]
- A pattern of both officers and policymakers covering up constitutional violations.[116]

As you decide whether Alek has proven a custom, consider all of the evidence as a whole.[117]

*Second Requirement*

The second point Alek must prove is that a policymaker either actually knew or should have known about the policy or custom.[118] A policymaker is somebody who decides the goals for a specific Bexar County function and decides how to achieve those goals.[119]

Sheriff Salazar is the final policymaker for Bexar County's law enforcement functions.[120] However, if Sheriff Salazar formally or practically delegates his policymaking authority over a specific function to somebody else, that person becomes the policymaker for that function.[121]

A plaintiff can prove that a policymaker actually knew of a policy or custom by providing evidence that the policymaker received written information about the policy or custom, discussed it at meetings, or failed to discipline or take corrective action against officers who followed it.[122]

---

[114] *Milam*, 113 F. App'x at 625–26.
[115] *Moore*, 41 F.4th at 509–11; *Milam*, 113 F. App'x at 625, 628.
[116] *Webster v. City of Houston*, 689 F.2d 1220, 1227 (5th Cir. 1982), *vacated and remanded en banc on other grounds*, 735 F.2d 838 (5th Cir. 1984), *aff'd on reh'g en banc on other grounds*, 739 F.2d 993 (5th Cir. 1984).
[117] *Moore*, 41 F.4th at 509–10; *Milam*, 113 F. App'x at 625, 628.
[118] *Moore*, 41 F.4th at 509; *Alvarez*, 904 F.3d at 389; *Bishop*, 674 F.3d at 467.
[119] *Zarnow*, 614 F.3d at 167; *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc).
[120] *Robinson v. Hunt County*, 921 F.3d 440, 448 (5th Cir. 2019); *Williams v. Kaufman County*, 352 F.3d 994, 1013–14 (5th Cir. 2003); *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990).
[121] *Zarnow*, 614 F.3d at 167; *Bennett*, 728 F.2d at 769.
[122] *Moore*, 41 F.4th at 510–11; *Bennett*, 728 F.2d at 769.

A plaintiff can prove that a policymaker should have known about a policy or custom by providing evidence that the policymaker would have discovered the policy or custom if he had done his job properly.[123]

*Third Requirement*

The third point Alek must prove is that a Bexar County policy or custom was the moving force behind a violation of his constitutional rights.[124] Specifically, Alek must prove that a policy or custom directly caused a violation of his rights and that Bexar County is culpable for it.[125] If the policy or custom clearly directs or allows officers to violate the Fourth Amendment, then Bexar County is culpable.[126] If the policy or custom does not clearly direct or allow officers to violate the Fourth Amendment, then Bexar County is culpable only if Alek proves that a policymaker was deliberately indifferent to a known or obvious risk that officers would violate his rights.[127]

**Instruction No. 6**
**Damages**

*Damages Generally*

If you decide that Alek Schott proved that his Fourth Amendment rights were violated in any, some combination, or all three of the ways he claims and that Bexar County is liable for the violation(s), then you must decide whether the violation(s) caused Alek damages.[128] Note that Alek

---

[123] *Moore*, 41 F.4th at 511; *Bennett*, 728 F.2d at 769.
[124] *Moore*, 41 F.4th at 509; *Alvarez*, 904 F.3d at 389; *Bishop*, 674 F.3d at 467.
[125] *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010); *Piotrowski v. City of Houston*, 237 F.3d 567, 579–80 (5th Cir. 2001); *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009).
[126] *Edwards v. City of Balch Springs*, 70 F.4th 302, 307–08 (5th Cir. 2023); *Doe v. United States*, 831 F.3d 309, 318 (5th Cir. 2016); *Piotrowski*, 237 F.3d at 579–80.
[127] *Edwards*, 70 F.4th at 308; *Doe*, 831 F.3d at 318; *Piotrowski*, 237 F.3d at 579–80.
[128] Jury Charge at 16–17, *Sebastiani*, No. 5:20-cv-01093-OLG.

requests $76 in damages. You should not conclude from the fact that I am instructing you on damages that I have any opinion on whether Alek proved liability.[129]

*Compensatory Damages*

Compensatory damages compensate a plaintiff for harm he has suffered.[130] Because Alek claims that his Fourth Amendment rights were violated, you may award compensatory damages only for injuries he has suffered due to the violation of his Fourth Amendment rights.[131] Those injuries may include expenses incurred, pain and suffering, physical injury, and mental anguish—including anguish over the loss of his Fourth Amendment rights.[132]

You may not award compensatory damages, or increase the amount you award, in order to punish or penalize Bexar County.[133]

If you do award compensatory damages, you should be guided by dispassionate common sense.[134] Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.[135] At the same time, the law does not require Alek to prove the amount of his losses with mathematical precision, but only with as much certainty and accuracy as the circumstances permit.[136] The question, ultimately, is what amount of damages will fairly compensate Alek for any harm he has suffered.[137]

---

[129] *Id.* at 16.
[130] 5th Cir. Pattern Jury Instructions (Civil Cases) § 15.2 (2020 ed.).
[131] *Id.*
[132] *Id.*
[133] *Id.*
[134] *Id.*
[135] *Id.*
[136] *Id.*; Jury Charge at 16, *Sebastiani*, No. 5:20-cv-01093-OLG.
[137] 5th Cir. Pattern Jury Instructions (Civil Cases) § 15.2 (2020 ed.).

*Nominal Damages*

Nominal damages compensate a plaintiff purely for the violation of his rights but not for any quantifiable injury or loss.[138] Thus, if you decide that Alek is entitled to damages but cannot identify any quantifiable injury or loss, you may award him a small symbolic amount of money for each Fourth Amendment violation he suffered and for which Bexar County is liable.[139]

**Instructions on Deliberations**[140]

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

[138] 5th Cir. Pattern Jury Instructions (Civil Cases) § 15.6 (2020 ed.); *Uzuegbunam v. Preczewski*, 592 U.S. 279, 289, 292–93 (2021); *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978).
[139] 5th Cir. Pattern Jury Instructions (Civil Cases) § 15.6 (2020 ed.); *Uzuegbunam*, 592 U.S. at 289, 292–93; *Carey*, 435 U.S. at 266–67.
[140] Jury Charge at 18–19, *Sebastiani*, No. 5:20-cv-01093-OLG.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.