**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| ALEK SCHOTT,<br>*Plaintiff*,<br>v.<br>BEXAR COUNTY, TEXAS,<br>*Defendant*. | Civil Action No. 5:23-cv-00706-OLG-RBF |

# PLAINTIFF'S MOTIONS IN LIMINE

Plaintiff Alek Schott respectfully requests that the Court issue the following four orders in limine: (1) exclude testimony and argument that Plaintiff was speeding, a post hoc justification for the stop; (2) exclude evidence that Bexar County paid Plaintiff approximately $7,000 for property damage to his truck, which is irrelevant to his Fourth Amendment claims and inadmissible under Rule 408; (3) bar Defendant from referring to Deputies Babb and Molina's former status as defendants or to Plaintiff's dismissal of the claims against them; and (4) enforce the Court's order limiting the testimony of Defendant's experts Albert Rodriguez and Gary D. Haston.

## 1. Exclude testimony and argument that Plaintiff was speeding, a post hoc justification for the stop.

This first motion in limine is a matter of housekeeping. The Court has already ruled that the speed indicated on Plaintiff's dashcam is irrelevant to the question of whether Deputy Babb had reasonable suspicion to stop him. The Court recognized that Deputy Babb did not know Plaintiff's speed when he stopped him, so speed could not have been the basis of "probable cause or reasonable suspicion[.]" *See* Dkt. No. 135, Report and Recommendation ("MSJ R&R"), at 15 (holding that only an officer's actual knowledge is relevant to probable cause or reasonable suspicion for a stop); Dkt. No. 136, Defendant's Objections to MSJ R&R, at 3–4 (re-arguing that

alleged speeding supplied probable cause for the stop); Dkt. No. 139, Order on Objections to MSJ R&R, at 4–5 (overruling all of Defendant's objections, including the one on alleged speeding).

Magistrate Judge Farrer captured the core flaw in Defendant's speeding theory at the summary-judgment hearing:

> You keep – you keep making this argument, and we keep addressing it, but I don't understand that argument. If he's speeding, and the officer has no way to know that he's speeding, how can that justify the stop? Like, what – take, for example – let's hypothetically imagine that the driver has a kilo of cocaine in his car, but the officer has no way of knowing that he has a kilo of cocaine in his car. The officer pulls him over because he has a broken taillight. Turns out his taillight is not broken, right. But the officer says, Oh, well, you had a kilo of cocaine in your car. So, you know, that would have justified the stop. How is that any different than what you're saying about the speeding? . . . Your officer didn't know he was speeding. The only way we know he was speeding is his dash cam. . . . He's never said -– in fact, in his own testimony he said, The only reason I pulled him over was the fog line thing. So how on earth can that be a reasonably objective basis for him to pull him over? He had no knowledge of it.

Dkt. No. 134, Tr. Mot. Summ. J. Hr'g, at 24:24–26:1.

The Court's ruling on speeding was preceded by multiple rounds of briefing before Judge Farrer and this Court. The Court's reasoning was and remains correct, and it would waste party and judicial resources to revisit the ruling. That matters for trial. Because the Court has ruled that alleged speeding is legally irrelevant to reasonable suspicion for the stop due to Babb's lack of knowledge, Rule 401 should preclude Defendant from eliciting testimony about speeding or arguing to the jury that alleged speeding provides alternative reasonable suspicion.

There is also Rule 403 prejudice. First, the jury could be confused about the legal test by mistakenly believing that post hoc rationalizations can supply reasonable suspicion when, in fact, the "governing standard involves the objective reasonableness of the officer's determination based on the information *the officer knew at the time*." MSJ R&R at 15 (citing *United States v. Escalante*, 239 F.3d 678, 681 (5th Cir. 2001)). Second, if the jury believes that Alek was in fact speeding, it

may conclude that Alek is a *lawbreaker*, which could influence not only the jury's analysis of reasonable suspicion, but its deliberations on whether there was reason to detain Alek for further questioning and eventually search his truck. There is nothing on the other side of the Rule 403 ledger in the County's favor because, as already decided, Alek's speed is irrelevant to the ultimate legal questions.

Conclusion

For the foregoing reasons, Plaintiff requests that the Court prevent Defendant from eliciting testimony that Alek was speeding on March 16, 2022. Defendant should also not be permitted to argue or imply that Plaintiff's speed was a reason Deputy Babb pulled him over. Plaintiff does not ask the Court to exclude his dashcam video, which he intends to offer to show that he never drifted over the fog line, or that Alek had previously received and resolved tickets for speeding. He asks only that no witness be able to testify to his rate of speed and that counsel be barred from arguing or implying that his speed justified the stop. Plaintiff further asks that counsel be directed to instruct Defendant's witnesses, before they testify, not to discuss Alek's speed.

**RULING:** ___ Granted ___ Denied

**2. Exclude evidence that Bexar County paid approximately $7,000 for property damage that it caused to Plaintiff's truck as irrelevant to his Fourth Amendment claims and under Rule 408.**

This is a constitutional case in which Plaintiff is asking for $76 and a declaration that his Fourth Amendment rights were violated when the Bexar County Sheriff's Office unconstitutionally stopped him, detained him, and searched his truck. But apart from the constitutional violations, the deputies also damaged Alek's pickup when they searched it, and Bexar County paid him $7,268.46 for that damage and the repairs. This case has nothing to do with

property damage, and Alek has never claimed that it did.[1] That's why Defendant should be barred from eliciting testimony or discussing the unrelated property-damage payment.

The property-damage payment should be excluded for three reasons. To start, a payment for property damage sheds no light on whether Bexar County violated the Fourth Amendment and is therefore irrelevant under Federal Rule of Evidence 401. Next, testimony about the payment would be both prejudicial and likely to confuse the jury about what Alek has been compensated for, which is why the Fifth Circuit has long recognized the need to exclude discussion of tangentially related payments. *See, e.g.*, *Simmons v. Hoegh Lines*, 784 F.2d 1234, 1237 (5th Cir. 1986) ("[J]uries will be more likely to find no liability when they are aware that the plaintiff has already received compensation."); *see also* Fed. R. Evid. 403. Finally, Alek's acceptance of an offer of compromise to settle the property damage claim is itself inadmissible under Fed. R. Evid. 408.

A $7,000 payment for property damage is irrelevant, and the County will only use testimony about it to mislead the jury into believing that Alek has already been compensated for his claims. It should therefore be excluded under Rules 401 and 403. The Supreme Court's and Fifth Circuit's consistent exclusion of collateral source payments as prejudicial is instructive. *See Eichel v. N.Y. Cent. R.R. Co.*, 375 U.S. 253, 255 (1963) (per curiam) ("[T]he likelihood of misuse by the jury clearly outweighs the value of this evidence."); *Simmons*, 784 F.2d at 1237 ("The prejudicial effect of compensation evidence affects the liability determination as well as the damages determination."). Like the collateral source rule, the County's property-damage payment is tangentially related to the case—indeed, it stems from the same traffic stop—but doesn't actually

[1] *See* Compl., Dkt. No. 1, ¶ 135 ("This case is not about the damage to Alek's truck, and Alek does not seek damages resulting from or arising out of the damage to his truck.").

help the jury answer the question of whether Bexar County violated Plaintiff's Fourth Amendment rights. If anything, its introduction will only confuse or mislead the jurors into thinking that Alek has already been compensated for his constitutional injuries and demonstrate why the Fifth Circuit was rightly concerned that "juries will be more likely to find no liability" when they are told about tangentially related payments to plaintiff. *Simmons*, 784 F.2d at 1237.

Separately, Rule 408 independently bars introduction of the property-damage payment. Rule 408(a) forecloses evidence of "furnishing, promising, or offering—**or accepting**, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim." Fed. R. Evid. 408(a) (emphasis added). That is exactly what happened here: the County offered to pay to repair Plaintiff's truck, and Plaintiff accepted the offer in exchange for settling the property damage claim. *See, e.g.*, Schott Dep. at 37:3–9 (Q. Was that an agreed – an amount that you agreed on?" A. "Yes." Q. "So you have been paid for the damages to your vehicle, correct?" A. "Yes."). That is a textbook settlement, and thus Rule 408 directly applies. There is also no good faith basis to believe that an exception—such as "proving a witness's bias or prejudice, negating a contention of undue delay" or obstruction—applies to this case. And for this reason alone, any evidence related to the payment should be excluded.

<u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) preclude Defendant from eliciting testimony or offering exhibits about the property-damage payment; (2) bar Defendant from arguing or implying that Plaintiff's acceptance of the payment compensated him for, or relate to, his Fourth Amendment claims; and (3) order the parties to redact references to the $7,000 payment in exhibits.

**RULING:** ___ Granted ___ Denied

**3. Bar Defendant from referring to Deputies Babb and Molina's former status as defendants or to Plaintiff's dismissal of the claims against them.**

Defendant, its counsel, and its witnesses should not be permitted to refer to the fact that Deputy Joel Babb and Deputy Martin Molina were formerly individual-capacity defendants in this action, and that Plaintiff dismissed his claims against them. Defendant should also be barred from characterizing that dismissal as evidence that suggests Babb and Molina did not violate the constitution or as some partial victory Defendant won because of "contentious litigation." *See* Dkt No. 117, Def.'s Mot. Summ. J., at 4 n.5.

The reason is simple. The elements and evidence for *Monell* claims and individual-capacity claims are different. A *Monell* claim requires: (1) a constitutional violation; (2) driven by an official policy or custom; (3) that the policymaker knew or should have known about. An individual-capacity claim, on the other hand, requires: (1) a constitutional violation of (2) a clearly established right. By taking his *Monell* claim to trial, Alek intends to prove all three *Monell* elements, including the first: that Deputies Babb and Molina violated his rights on I-35 on March 16, 2022. The only inference one can draw from dismissing the individual-capacity claims is that Alek didn't want to fight about whether his rights were also clearly established and hence the deputies lacked qualified immunity. There are countless successful *Monell* claims on the books that do not have individual-capacity defendants. No inference about the strength of a *Monell* claim can be drawn from the absence of individual-capacity defendants because, again, the elements and evidence for each type of claim are different (even if they overlap at the first step).

As straightforward as that is, Defendants have already tried to mislead the Court about this, suggesting that dropping the individual-capacity Defendants must mean that no constitutional violation occurred during the stop and hence the County can't be liable. Consider defense counsel's statement at the summary-judgment hearing:

> It's very difficult to make a *Monell* claim. It's extremely difficult. And the two, I would purport, easier cases to make, if you're going to try a case as a plaintiff, would be the individual officers. Well, they were ruled – they were dismissed from the case. However, I can use those, their instances and their conduct, under *L.A. v. Heller* to show that if they did not commit a constitutional deprivation, then, of course, the county is out as well.

Dkt. No. 134, Tr. Mot. Summ. J. Hr'g, at 23:12–21.

Defendant also advanced this bogus reasoning in its briefs. *See, e.g.*, Dkt. No. 117, Def.'s Mot. Summ. J., at 4 n.5 ("[s]ubsequent to extensive and contentious litigation, Plaintiff's claims against Babb and Molina ended with a Rule 41 Stipulation of Dismissal with prejudice");[2] Dkt. No. 126, Def.'s Resp. in Opp'n to Pl.'s Mot. Summ. J., at 1 (same); Dkt. No. 136, Def.'s Obj. to Magistrate Judge's Report & Recommendation, at 3 ("Plaintiff Schott strategically dismissed Deputies Babb and Molina prior to the dispositive motion deadline.").

But *Heller* was totally different. There, the plaintiff kept his individual-capacity claims and "the jury ha[d] concluded that the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). So, sensibly, the Supreme Court said that no *Monell* liability could exist if the officers hadn't in fact violated the Constitution themselves in the first place. *Id.*

Here, however, no jury has decided whether Deputies Babb and Molina violated the Fourth Amendment. That is the first element of Alek's *Monell* claim and deciding it is one of the purposes of the upcoming trial. The fact that Alek dismissed his individual-capacity claims has no bearing on the jury's duty to determine whether the deputies violated the Fourth Amendment.

The danger of prejudice is immense, and any mention of the dismissals should be excluded for three reasons.

---

[2] Defendant's account is not accurate. The individual defendant claims were dismissed on Plaintiff's unopposed motions and by order of this Court, not by stipulation, but the inaccuracy is besides the point.

1. The jury must decide whether Alek's Fourth Amendment rights were violated during the March 16, 2022, traffic stop and whether a Bexar County policy or custom caused that violation. As explained, nothing about the procedural history of this lawsuit bears on either question. But told that Alek sued these two deputies and then dismissed them, a jury will draw an inference that the record does not support—that someone, somewhere already decided that the deputies did nothing wrong. No court and no jury has ever decided whether Babb or Molina violated the Fourth Amendment.[3] The County should not be allowed to imply otherwise by bringing up the dismissals.

2. While Defendant's inference may hold sway with jurors, it is legally wrong. As mentioned earlier, *Monell* claims and individual-capacity claims have different elements and hence different evidence. If the County misleads the jury about this, Plaintiff cannot reasonably cure that prejudice at trial because rebutting the inference would require explaining the difference between *Monell* liability (policy and custom) and individual liability (clearly established rights and qualified immunity) when the jury has no practical need to understand that. In addition, Alek will have to explain what litigation considerations shape which defendants a § 1983 plaintiff takes to trial. That is especially problematic. Explaining litigation considerations would necessarily be incomplete here because counsel can't reveal the protected work-product and client conversations that went into the dismissal decision. That's exactly why a voluntary dismissal is a litigation choice made by a plaintiff, not evidence of liability. *See LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976) ("The basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced. The rule allows the plaintiff to withdraw his action from the court without prejudice to future litigation."). In short, letting Defendant suggest that the dismissals mean no constitutional violations occurred

---

[3] For that reason, it's also irrelevant under Rules 401 and 402.

will generate an irrelevant, prejudicial, and time-consuming detour into complex legal doctrine and trial strategy that will confuse the issues and tell the jury nothing about the actual questions at stake: Were Plaintiff's constitutional rights violated on I-35 and is Bexar County responsible?

3. Finally, Defendant's argument that an individual liability claim is "easier . . . to make," Dkt. No. 134, Tr. Mot. Summ. J., at 23:15, is likewise prejudicial and should be excluded. At bottom, it doesn't make sense because whether a claim is easy or hard to win depends on the facts. For example, if a municipality passes an ordinance outlawing "Vote Democrat" lawn signs, that's a very easy *Monell* case to win because facial restrictions on political viewpoint are a *per se* violation of the First Amendment. We could just as easily come up with hypothetical facts under which an individual-capacity claim would be essentially impossible because the right isn't clearly established. Thus, to say that a plaintiff with a real case would have tried the claims against the individual officers makes no legal sense. Furthermore, as above, it is an improper argument about Plaintiff's litigation judgment, not about the evidence or the elements of Alek's *Monell* claim. Its only purpose is to suggest to the jury that this case is a second-best substitute for the case Plaintiff would have brought if he could have. That is exactly the kind of wrong, confusing, and misleading argument Rule 403 exists to keep out. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("Unfair prejudice . . . means an undue tendency to suggest decision on an improper basis.") (quoting Fed. R. Evid. 403 advisory committee's note) (internal quotation marks omitted). Defendant is entitled to contest the evidence, not tell the jury what claim *it* thinks Plaintiff should have brought instead.

At bottom, Defendant can, of course, argue that Deputies Babb and Molina did not actually violate the Constitution, but it cannot use their voluntary dismissals to make their case.

Conclusion

For the foregoing reasons, Plaintiff requests that the Court prevent Defendant from eliciting testimony that Deputy Babb and Deputy Molina were formerly named defendants in this case. Defendant should not be able to argue or imply that the decision to dismiss the deputies was strategic, an abandonment of claims, a concession, an admission, an exoneration, or any suggestion that a court has determined, found, or implied that Deputies Babb and/or Molina did not violate Plaintiff's constitutional rights.

**RULING:** ___ Granted ___ Denied

**4. Enforce the Court's Order limiting the testimony of Defendant's experts Albert Rodriguez and Gary D. Haston.**

Defendant should not be permitted to elicit testimony from experts Albert Rodriguez or Gary Haston that this Court already struck or make improper arguments based on that testimony. The Court "affirmed without modification" Magistrate Judge Farrer's ruling that granted Alek's motion to strike portions of Rodriguez's testimony in full and granted his motion to strike portions of Haston's testimony in part. Dkt. No. 139, Order on Objections to MSJ R&R, at 1–2. In doing so, the Court overruled every one of Defendant's objections. Dkt. No. 130 at 2. Alek respectfully asks the Court to instruct Defendant that neither its counsel nor its experts may elicit, offer, or allude to testimony foreclosed by the Court's prior order.

Some background: Defendant broadly designated Rodriguez as an expert on Bexar County Sheriff's Office (BCSO) written policies, its customs and practices, and its deputies' training. Dkt. No. 92, Def. Molina's Resp. Mot. to Strike, at 2; Dkt. No. 129, Order Granting Mot. To Strike, at 5. His report concluded that BCSO's policies and training comply with constitutional and statutory standards, that BCSO enforces them as written, and that no BCSO policy or custom drove the violation of Alek's rights. Dkt. No. 89, Ex. B (Rodriguez Report) ¶¶ 64–68. Deputy Babb

designated Haston generally on law enforcement policies, practices, customs, and training, and Defendant adopted his report unchanged after Babb's dismissal. Dkt. No. 75 (Haston Designation) at 1; Dkt. No. 129, Order Granting Mot. to Strike, at 3, 19. That report offered legal conclusions about probable cause and reasonable suspicion, narrated Alek's dashcam and officer bodycam footage, offered unsubstantiated opinions based on the video, and opined on what Deputy Babb knew and believed. Dkt. No. 129 at 19. The Court dramatically limited the permissible scope of both experts' testimony, as described below.

Although the Court has already struck portions of the experts' testimony, Judge Farrer expected that additional court action would be needed to enforce those limits—that the prohibited testimony would be "addressed at trial via trial objections or beforehand via motion *in limine*." *Id.* at 22. An objection after an excluded opinion, or counsel's allusion to one, fails to fulfill the purpose of the original order. This motion therefore seeks to prevent prejudice from arguments or testimony that exceed the parameters of that order and cannot be cured after the fact; it does not reargue the motions to strike.

**A. The Court limited Rodriguez's testimony to four discrete subjects.**

The Court limited Rodriguez's testimony to (1) opinions explaining what BCSO's written policies are; (2) what state and law enforcement standards are; (3) that Deputies Babb and Molina completed their TCOLE-certified training; and (4) what TCOLE standards and requirements are. *Id.* at 10. Alek respectfully asks that this Court instruct defense counsel and Rodriguez to abide by those limits. Rodriguez must not be allowed to offer any testimony other than the four discrete subjects the Court identified.

The Court set those limits after finding three major problems with Rodriguez's proposed testimony. First, Defendant designated Rodriguez broadly, but his report is the boundary—his

testimony cannot exceed opinions in it and explanations that are a reasonable extension of it. *Id.* at 6, 10. Second, Rodriguez's report offered legal conclusions, which the Court found improper and which are therefore off the table at trial. *Id.* at 6–7. Third, many of Rodriguez's opinions were unreliable, exceeding what he reviewed, what he did, and what he knew. *Id.* at 7–10. The order therefore draws five specific lines that Rodriguez's testimony may not cross:

1. **Rodriguez may not offer any opinion beyond what he disclosed in his report.** *Id.* at 6, 10. Rodriguez confirmed at deposition that paragraphs 64–68 of his report summarize his conclusions, and the Court limited him to the opinions in that report. *Id.* at 5 n.1, 6. The Court narrowed those opinions further through the limits below.

2. **Rodriguez may not testify to any legal conclusion that BCSO's policies, procedures, or training comply with constitutional, statutory, or legal standards.** *Id*. at 6–7. He may explain the policies and the standards but cannot offer legal conclusions about the policies complying with those standards. *Id.*

3. **Rodriguez may not testify that BCSO enforces its written policies**. *Id.* at 7–8.

4. **Rodriguez may not testify that BCSO has no policy or custom of baseless traffic stops**, **and he may not tell the jury that citizen-complaint data shows the absence of *Monell* liability.** *Id.* at 8–9. Defendant "can introduce the underlying data through Rodriguez or otherwise, assuming it is otherwise admissible, but it can't ask Rodriguez to testify that the data reflects there is no *Monell* liability." *Id.* at 9. And Rodriguez has no expertise beyond a lay witness with respect to the citizen-complaint statistics. *Id.* at 9 n.2.

5. **Rodriguez may not testify to the specific content of the TCOLE training Deputies Babb or Molina received.** *Id.* at 9–10.

Alek therefore asks the Court to grant this motion and instruct Defendant's counsel and Rodriguez that his testimony may not exceed the four discrete subjects that the Court approved.

**B. The Court struck five categories of Haston's testimony.**

Judge Farrer excluded Haston's legal conclusions, his opinions about what the video footage shows, his opinions about what Deputy Babb knew or believed absent a proper foundation, and his alternative grounds for the traffic stop. *Id.* at 25. The Court granted Alek's motion in part and denied it in part—leaving Haston's general interdiction testimony untouched and permitting him to apply his kinesics training to Alek's body language captured on camera if a proper foundation is laid. *Id.* at 21, 25. Alek asks the Court to grant this motion and instruct Defendant's counsel and Haston to abide by those exclusions, so that improper and prejudicial testimony is not given at trial.

1. **Haston may not testify to any legal conclusions.** *Id.* at 19, 25. Haston repeatedly opined that Deputy Babb or a reasonable officer in his shoes had probable cause to believe Alek committed a traffic violation. Dkt. No. 91, Ex. A (Haston Report) at 18, 25, 26–27. Haston also asserted that the K-9's alert "created the probable cause" to search Alek's truck without a search warrant. *Id.* 23, 27. The Court excluded such testimony wholesale, without cataloguing each instance. Dkt. No. 129, Order Granting Mot. to Strike, at 19.

2. **Haston may not testify about Alek's dashcam footage.** *Id.* at 20, 25. Haston's report narrated that footage at length and offered conclusions about it, including speculating that it may have been manipulated. Dkt. No. 91, Ex. A (Haston Report) at 15–17. The Court barred Haston from testifying about the dashcam footage at all because he could not narrate

the video and was not "an expert in forensic video analytics." Dkt. No. 129, Order Granting Mot. to Strike, at 20. With regard to Haston, the "video will speak for itself." *Id.*

3. **Haston may not narrate Deputy Babb's body-worn camera footage.** *Id.* at 19–20, 25. The Court ruled that Haston may address that footage only where he is better suited than a layperson to interpret it: he can apply his kinesics training to Alek's body language, "assuming an appropriate foundation is laid." *Id.* at 21, 25. But that permission does not extend to what Deputy Babb concluded about that body language. *Id.* at 21.

4. **Haston may not speculate about Deputy Babb's state of mind, knowledge, or beliefs.** *Id.* at 22. Defendant cannot use Haston to establish Babb's state of mind when Babb himself can testify to his state of mind and what he knew. *Id.* at 21.

5. **Haston may not testify that Alek was speeding or that he committed any other offense Deputy Babb never claimed to observe.** *Id.* at 22–24.

Alek respectfully asks this Court to instruct defense counsel and Haston to abide by the above limits.

Conclusion

Alek therefore respectfully requests that the Court instruct Defendant that neither its counsel nor its experts may elicit, offer, or allude to testimony foreclosed by the Court's prior order striking portions of Rodriguez's and Haston's testimony. Plaintiff further asks that counsel be directed to instruct its expert witnesses not to offer or allude to testimony foreclosed by the Court's prior order.

**RULING:** ___ Granted ___ Denied

Date: September 2, 2026

Respectfully submitted,

/s/ Christen M. Hebert
**Christen M. Hebert** (TX Bar No. 24099898)
**Jeff Rowes** (TX Bar No. 24104956)
INSTITUTE FOR JUSTICE
816 Congress Avenue, Suite 970
Austin, TX 78701
(512) 480-5936
chebert@ij.org
jrowes@ij.org

**Joshua A. Windham*** (NC Bar No. 51071)
**William R. Aronin*** (NY Bar No. 4820031)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
jwindham@ij.org
waronin@ij.org
*Admitted *pro hac vice*

*Attorneys for Plaintiff*

**Certificate of Service**

I certify that on September 2, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will provide electronic service upon all attorneys of record.

/s/ Christen Mason Hebert
Christen Mason Hebert