**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| ALEK SCHOTT,<br>*Plaintiff*,<br>v.<br>BEXAR COUNTY, TEXAS,<br>*Defendant*. | Civil Action No. 5:23-cv-00706-OLG-RBF |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTIONS IN LIMINE**

Defendant Bexar County filed three motions in limine to exclude reference to: (1) the forensic examination of County police officers' cell phones; (2) Plaintiff Alek Schott's pro bono counsel Institute for Justice and its mission; and (3) Plaintiff having sought healthcare services. *See* Dkt. No. 156-8 (County's motions in limine); Dkt. No. 157 (duplicate of Dkt. No. 156-8). The first two should be denied. Plaintiff does not object to the third, but he maintains his right to prove he suffered garden-variety emotional harm from the violation of his constitutional rights.

## I. Motion 1: Evidence related to officer texting should not be excluded.

The County's first motion in limine should be denied. It seeks to bar Plaintiff's counsel and his witnesses from making "reference to any forensic examination of Bexar County Deputies['] cell phone data including the data of deputies Babb, Molina, Gereb, and Gamboa." Dkt. No. 157 at 2. But this evidence—the testimony of the neutral forensic examiner and 30 trial exhibits of what he recovered, including key text messages—is central to Plaintiff's *Monell* claims. *See* Dkt. No. 161 (Pls.' Exs.) (listing 30 exhibits recovered by the forensic examiner[1]).

[1] *See* Pls.' Exs. 24, 32–34, 63–68, 70–79, 82, 83, 91, 92, 96, 105, 177, 179–181.

The County's one-paragraph motion makes three unsupported assertions: (1) the evidence supposedly "bears no relevance to the issues in this case"; (2) "Deputies Babb and Molina have been dismissed from this case"; and (3) "text messages between deputies would only serve to inflame the minds of the jury against the Defendant herein and would have no probative value," thereby supposedly creating the "danger of unfair prejudice." Dkt. No. 156-8 at 2; Dkt. No. 157 at 2.

The Court should deny the motion summarily. The County does not explain its reasoning; address the on-point summary-judgment rulings or the order compelling the forensic examination; cite any of the evidence it seeks to exclude; or reference any decision interpreting the applicable Rules of Evidence. That is fatal. "Arguments that are insufficiently addressed in the body of the brief" or are "raised in a perfunctory manner" are "waived." *Am. Stewards of Liberty v. DOI*, 370 F. Supp. 3d 711, 735 (W.D. Tex. 2019) (cleaned up). That alone warrants denial of the County's motion, particularly given what a motion in limine is for: to prohibit "opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (citation omitted). And for any motion in limine, "[t]he movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Johnson v. El Paso Healthcare Sys., Ltd.*, No. EP:11-CA-549-FM, 2013 WL 12393903, at *2 (W.D. Tex. Feb. 26, 2013). The County has not made that showing for a single exhibit, let alone 30 and the forensic examiner's testimony.

That fatal flaw is reason enough to deny the motion. But should the Court nevertheless go further, the County's motion fails for three additional reasons: the recovered evidence is relevant,

and indeed potentially dispositive, for Plaintiff's *Monell* claims (Part A); the examiner's testimony is necessary to authenticate that evidence and explain the limits of what he could recover (Part B); and there is no unfair prejudice to weigh against the evidence's substantial probative value (Part C).

**A. The recovered evidence goes to the *Monell* questions the jury will answer.**

The County's suggestion that the cell phone communications are irrelevant is frivolous. Judge Farrer's R&R on the MSJs, which this Court affirmed, recognized that the text messages could be *dispositive*. He recommended trial in part because "a jury could also credit Schott's urged interpretation of the text messages he has produced over any of Bexar County's evidence." *See* Dkt. No. 135 (R&R on MSJs) at 26. It would likely be reversible error to exclude a category of evidence that forms the basis for holding the trial.

The cell phone communications are potentially dispositive because they go to a key question for the jury: whether the County had "an unconstitutional custom or policy of inventing reasonable suspicion or probable cause at every step of a traffic stop to justify a more expansive search." Dkt. No. 135 (R&R on MSJs) at 29; *see also* Dkt. No. 139 (Order adopting R&R on MSJs) at 4. Proving a custom does not require a tally of similar incidents. "[D]iscussion among" members of a unit, is itself evidence that a practice was customary within that unit. *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509–11 (5th Cir. 2022) (evidence about guards' discussion of spraying prisoners off-camera suggested the tactic was customary). The forensic examination recovered precisely that kind of evidence: texts about Alek's stop, what the interdiction unit targeted, what its traffic-stop practices were, where it learned its methods, and who in the chain of command was communicating about the unit, all the way up to the Sheriff himself. Plaintiff's 30 exhibits from the forensic examination bear on every element of his *Monell* claims.

For example, Plaintiff intends to prove that criminal interdiction Deputy Joel Babb, as part of a *Monell* custom, made up a traffic violation to stop Alek on March 16, 2022. Plaintiff will also prove that County law enforcement made up reasonable suspicion for stops like Alek's in part because the officers were relying on text messages from other officers to target vehicles based on supposedly suspicious travel patterns—travel such as, in this case, driving from San Antonio to Carrizo Springs and back in one day. The Court has already concluded that the evidence about using text messages to target cars for stops and searches long before officers see the cars on the road is directly relevant to Plaintiff's case because it enables the jury to understand *why* the County's criminal interdiction unit stopped Alek that day and falsely told him that he committed a traffic violation.

The dismissal of deputies Babb and Molina as individual defendants from this case doesn't change any of that calculus. Plaintiff needs to prove that his constitutional rights were violated and that violation was caused by a County policy or custom. Text messages containing "discussion among" all the officers involved in Alek's stop and their supervisor, *Moore*, 41 F.4th at 509–11, along with other items recovered from their phones, are direct evidence about how the County's interdiction unit operated and how the K-9 unit assisted in those operations.

**B. The forensic examiner's testimony about what he found and did not find is relevant and necessary.**

Because the cell phone communications are highly relevant, the testimony of the court-appointed forensic examiner who recovered the data is also necessary to explain what he was able to extract and what he could not because of the County's sanctionable failure to preserve evidence. On April 24, 2024, Judge Farrer granted Plaintiff's motion to compel production, which concerned, in part, undisclosed cell phone communications. Dkt. No. 59. Judge Farrer found that "Defendants may have failed to preserve phone records that should have been preserved in the anticipation or

conduct of this litigation, and that a forensic examination of the cell phones at issue is warranted to determine if any pertinent communications were deleted after this lawsuit was filed." *Id.* ¶ 5 (citing Fed. R. Civ. P. 37(e)). He concluded that loss of those phone records was "potentially prejudicial to Plaintiff, and ordered forensic examination "to cure the prejudice." *Id.* Judge Farrer therefore ordered Flashback Data Recovery (Flashback)—whom the parties jointly selected—to serve as the "neutral third-party vendor retained jointly by all parties to this case" and that "the costs of the service performed by Flashback . . . SHALL be borne by Defendants." *Id.* ¶ 5(a).

On behalf of Flashback, Thomas Trusal performed the analysis and data recovery that Judge Farrer ordered. Plaintiff has listed Mr. Trusal as a witness, Dkt. No. 162, and there is a pending unopposed motion for Mr. Trusal to testify via Zoom, Dkt. No. 155. Plaintiff intends to call Mr. Trusal early and briefly for two purposes:

First, Mr. Trusal will authenticate the communications and other data he recovered and explain the process that produced them—"[e]vidence describing a process or system and showing that it produces an accurate result." Fed. R. Evid. 901(b)(9). After Mr. Trusal authenticates the results of his examination, Plaintiff will then use those results as exhibits for the examination of County law enforcement witnesses.

Second, Mr. Trusal will testify to what he searched for and did not find. For example, messages from the day Alek was stopped—including communications between Deputy Babb and an individual known as "Kiki" concerning Alek's travel before the stop—were not recovered. Mr. Trusal's factual testimony that he searched for and did not locate those communications is directly relevant to how Alek came to be targeted for a traffic stop and to whether the jury will believe Deputy Babb's testimony about what he knew before the stop and what he claims gave him reasonable suspicion to extend the stop.

**C. The forensic examination evidence carries no risk of unfair prejudice, and its probative value is overwhelming.**

Finally, as to Rule 403, the County's apparent argument is that evidence about texting has "no probative value" and therefore presents nothing but risk of "unfair prejudice [and] confusion of the issues." Dkt. No. 156-8 at 2; Dkt. No. 157 at 2. But, as explained above, the evidence is highly probative, so the "court must determine . . . whether the prejudicial effect of the proposed evidence outweighs its probative value." *Meier v. UHS of Del., Inc.*, No. 4:18-CV-00615, 2021 WL 2043187, at *3 (E.D. Tex. May 21, 2021) (quoting *United States v. Zabaneh*, 837 F.2d 1249, 1264 (5th Cir. 1988)). Yet there is no way for the Court to make this assessment because the County never explains anything, much less how the forensic examination evidence could possibly be *unfairly* prejudicial. *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 427 (5th Cir. 2006) ("Virtually all evidence is prejudicial; otherwise it would not be material," hence, to be excludable under Rule 403, "[t]he prejudice must be 'unfair.'"). The County leaves the Court (and Alek) to guess. Again, that isn't good enough.

In any event, the fact of the texting and the texts themselves, which, as the Court can see, involve police jargon depicting police practices, cannot possibly inflame, confuse, or mislead the jury. *See, e.g.*, Exhibit A (Plaintiff's Proposed Trial Exhibits P-63 & P-64). Judge Farrer restricted Mr. Trusal's search to specific dates and relevant key words to ensure that only relevant communications would be recovered and produced. Dkt No. 59 at 4. None of the communications contain extraneous personal conversations that could be embarrassing. This is garden-variety *Monell* evidence about how law enforcement did its job on a daily basis and is materially the same as other evidence the jury will hear such as officer testimony and dashcam and bodycam footage.

## II. Motion 2: Mention of the Institute for Justice should be permitted at voir dire and during trial to the extent necessary to explain Plaintiff Schott's request for $76 in damages.

The County's second motion in limine should also be denied. It seeks to exclude "reference to the Institute for Justice or elaborat[ion] on the mission for the Institute for Justice" because it is irrelevant and prejudicial. Dkt. No. 156-8 at 2; Dkt. No. 157 at 2. Once again, the County does not explain its reasoning or cite any judicial decision interpreting the applicable rules. That is a fatal default.

That said, Plaintiff recognizes that a jury should not consider him more likely to prevail on his *Monell* claims simply because he is represented pro bono by a public-interest law firm. Nevertheless, there are two reasons why the County's proposed exclusion of all reference to the Institute for Justice goes too far and why any lingering concerns about prejudice can be handled with a limiting instruction.

First, a brief mention of the Institute and its pro bono representation may be necessary for the jury to make sense of Alek's request for $76 in damages—one dollar for every minute that he was unconstitutionally stopped, detained, and searched at the side of I-35. This $76 request will puzzle the jury unless they understand that, to Alek, this case is and has always been a matter of principle, not financial gain. Indeed, it may create a Rule 403 problem of "confusing the issues" and "misleading the jury" if Alek *cannot* explain that he wants to vindicate his Fourth Amendment rights and eliminate an unconstitutional police practice that affects him and his fellow citizens. His ability to maintain his case against Bexar County as a matter of principle over many years has depended on pro bono representation from the Institute for Justice. Thus, a brief mention of the Institute for Justice and pro bono representation may be necessary to ensure that Alek can fully and truthfully explain why he brought this case and why he seeks only $76.

Second, as Plaintiff's proposed voir dire Question 2 reflects, Dkt. No. 158, the Court may wish to ask prospective jurors whether the Institute for Justice or its pro bono representation *cuts against* Plaintiff Schott. There may be potential jurors who fundamentally disagree with trying to address important issues via constitutional litigation, think such cases are a waste of time and money, and who feel they couldn't be fair if they know Alek is represented for free by a public interest law firm. It is best that the Court and the parties discover that at voir dire and not at some point after Alek has testified about his damages.

Plaintiff respectfully suggests that the legitimate concerns the County raises can be handled with an appropriate limiting instruction. *See, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 539 (1993) ("When the risk of prejudice is high . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."); *see also Franco v. Mabe Trucking Co.*, No. 5:17-CV-00871, 2019 WL 1245801, at *2 (W.D. La. Mar. 18, 2019) ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." (quoting Fed. R. Evid. 403 advisory committee's note)). If the Court chooses to ask Plaintiff's proposed voir dire Question 2, it could include an instruction reminding the prospective jurors that the fact of the Institute's presence or pro bono representation is not evidence that makes Plaintiff Schott's claims more likely to prevail. Likewise, if the Institute comes up during Alek's examination on the issue of damages, the Court can again offer a limiting instruction, which it is presumed the jury will follow. *United States v. Acosta*, 475 F.3d 677, 683 (5th Cir. 2007).

## III. Motion 3: Plaintiff has no objection to the County's motion on health care.

Plaintiff Schott has no objection to the County's third motion in limine, which seeks to exclude any mention that "Plaintiff Schott sought healthcare from any healthcare provider." Dkt. No. 156-8 at 2; Dkt. No. 157 at 2. As Plaintiff has stated in multiple filings, he will not call his

healthcare provider as a witness or rely on their records at trial. Dkt. No. 79 (Reply Mot. to Quash) at 1; Dkt. No. 76 (Mot. to Quash) at 2 (Plaintiff "has not designated [his therapist]" as an expert, "will not call [her] as [a] witness[], and will not introduce or rely on their notes or records at trial.").

Nevertheless, Plaintiff reserves the right to prove that he has suffered garden-variety emotional harm from the violation of his constitutional rights. He can, however, do that without referencing any healthcare provider or healthcare services.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny the County's motions to exclude any reference to the forensic examination of County police officers' cell phones and exclude any reference Plaintiff's pro bono counsel Institute for Justice and its mission.

Date: September 9, 2026

Respectfully submitted,

/s/ Christen M. Hebert
**Christen M. Hebert** (TX Bar No. 24099898)
**Jeff Rowes** (TX Bar No. 24104956)
INSTITUTE FOR JUSTICE
816 Congress Avenue, Suite 970
Austin, TX 78701
(512) 480-5936
chebert@ij.org
jrowes@ij.org

**Joshua A. Windham*** (NC Bar No. 51071)
**William R. Aronin*** (NY Bar No. 4820031)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
jwindham@ij.org
waronin@ij.org
*Admitted *pro hac vice*

*Attorneys for Plaintiff*

**Certificate of Service**

I certify that on September 9, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will provide electronic service upon all attorneys of record.

/s/ Christen Mason Hebert

Christen Mason Hebert