**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| ALEK SCHOTT,<br>*Plaintiff*,<br>v.<br>BEXAR COUNTY, TEXAS,<br>*Defendant*. | Civil Action No. 5:23-cv-00706-OLG-RBF |

**PLAINTIFF'S MOTION FOR RECONSIDERATION**

**ORAL ARGUMENT REQUESTED**

Earlier today, this Court excluded 282 videos of "similar but post-incident conduct by Deputies Babb, Gereb, and Molina." ECF No. 178 at 2. Plaintiff respectfully urges this Court to reconsider its order under Fed. R. Civ. P. 54(b).[1] *See Austin Kroger Tex, L.P.*, 864 F.3d 317, 336 (5th Cir. 2017) (under Rule 54(b), the Court "is free to reconsider and reverse its decision for any reason it deems sufficient"). Simply put, these videos are squarely relevant to whether a *Monell* a custom existed at the time of Plaintiff's stop: The Fifth Circuit recently held that similar incidents *one year* after the plaintiff's incident can be used to prove a custom. *Compare Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509–10 (5th Cir. 2022) (majority relying on such evidence), *with id.* at 518 (Ho, J., dissenting) (critiquing majority for relying on such evidence). The Court's order excluding hundreds of videos much closer in time to Plaintiff's stop cannot be squared with *Moore*.

At the very least, a compromise is in order. The overwhelming majority of the excluded videos offer near-contemporaneous evidence of how the criminal interdiction unit that stopped him

[1] Plaintiff did not seek Defendant County's consent under Local Rule CV-7(g) because of the late hour and the fact that the County will obviously oppose the requested relief.

operated. Indeed, 186 of the videos are from March and another 75 are from April. **That means 66% of the excluded videos are from within two weeks of Plaintiff's stop, and 93% of them are within six weeks of his stop.** Even if the Court wishes to exclude some of the post-event evidence, evidence within a few weeks of the stop is probative of the *Monell* custom's existence. Excluding all of the evidence is too harsh a result, especially given the County's late filing and failure to cite any cases.

## I. Examples of excluded videos.

Plaintiff's counsel has previously reviewed every excluded video and devoted substantial time to compiling efficient compilations of short clips from those videos that would have allowed the jury to see how the County's criminal interdiction unit subjected many other drivers to the same customary tactics Plaintiff experienced in the weeks before *and after* his stop. Should this Court deny the motion to reconsider, Plaintiff intends to make a detailed written offer of proof to preserve his right to argue on appeal that the Court's order excluding the videos was reversible error. *See* Fed. R. Evid. 103(a)(2). For now, Plaintiff will describe four representative excluded videos—two for Gereb, one for Babb, one for Molina—to ensure the Court is fully informed of the types of videos the jury will not see if the Court's order remains in place.

**Gereb example video:** Plaintiff would have offered P-136 and P-428 together to prove parts of the County's criminal interdiction custom: stopping drivers who did not actually violate traffic laws and extending traffic stops without reasonable suspicion in order to search people's cars. Both videos are of a traffic stop from March 17, 2022, one day after Plaintiff's stop. P-136 is Gereb's bodycam video and P-428 is the corresponding dashcam video. Gereb's video shows a car driving normally down the highway. Giving the Gereb every benefit of the doubt, the car's tires may have briefly touched a lane line—which is not a traffic violation. He nevertheless stops the

driver and tells her that she was “kinda weaving in the lane” and “hitting the shoulder and hitting the stripes.” The driver is a mom with kids and her mother in the car on the way to Sea World. Every answer she gives is consistent with that fact. Gereb still questions this mom, dragging out the stop until she “consents” to a search. Gereb then opens the back of her car and searches her bags. He finds nothing and sends her on her way with a warning. The made-up traffic violation, the extended detention of an everyday person just living her life, and the predictably fruitless search, all closely mirror Plaintiff’s stop.

**Babb example video:** Plaintiff would have offered P-123 to prove parts of the County’s criminal interdiction custom: performing a suspicionless front-seat interrogation to justify calling a drug dog and then omitting evidence of the fruitless search from official reports. This was a traffic stop on March 24, 2022, eight days after Plaintiff’s stop. The video shows Babb detaining a driver in the front seat of his patrol car and interrogating him (including about how long he had been with his girlfriend) before calling Molina and his drug dog to the scene. Babb prints out a warning for the driver before Molina even arrives. Babb tells Molina “I love this dog. This is a good dog.” After the dog alerts, the officers search the car and find nothing—but Babb then tells the driver they found “shake” and hands him the warning. After showing clips from this video, Plaintiff would have introduced a report from this stop (P-104) that omits any reference to a dog, a search, or finding “shake” in the vehicle—precisely what the SPEARS report and warning (P-6 and P-8) from Plaintiff’s own stop show.

**Molina example video:** Plaintiff would have offered P-111 to prove parts of the County’s criminal interdiction custom: using a mistrained dog make up “cause” to search cars and then covering up evidence of that dog’s failures. P-111 is Molina’s bodycam footage from the same March 24, 2022 stop discussed above. On Molina’s video, his dog alerts on the car and Molina

rewards him immediately before knowing what's inside the car—the exact same tactic Molina used to train his dog to automatically alert on Plaintiff's stop. The video does not show Molina finding any drugs in that car. Just as with the Babb video above, Plaintiff would have introduced the K9 report from this incident (P-81) where Molina claims, contrary to the clear video evidence, that a "trace" amount of marijuana was found in the car—precisely what happened to Plaintiff.

## II. Grounds for reconsideration.

Under Rule 54(b), this Court "is free to reconsider and reverse its decision for any reason it deems sufficient." *Austin Kroger Tex, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (citations omitted). Plaintiff knows that reconsideration is an extraordinary request and he does not make it lightly. But, as explained below, the Court's order is incorrect as a matter of law and deeply prejudicial. Plaintiff requests oral argument to discuss the excluded evidence and the cases the Court cited in its order, which Plaintiff never had an opportunity to address prior to the Court's decision (because Defendant cited no authority in its late-filed objection). The Court should withdraw its order and overrule Defendant's objection.

### A. *Moore* is the controlling case, not those the Court cited in its order.

The case Plaintiff cited to the Court yesterday, but that the Court's order did not address, *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493 (5th Cir. 2022), settled the question of whether a jury can consider post-event evidence to determine the existence of an unwritten *Monell* custom or practice, and it did so over a dissent on this very point.

***Moore* specifically analyzed the first element of *Monell*:** "Under *Monell*'s first element, Plaintiff had to raise a fact dispute over whether an official policy or custom existed that led to a constitutional violation." *Moore*, 41 F.4th at 509.

**The plaintiff's evidence there:** "[A] reasonable jury could conclude on this record that it was customary for guards to use the Four-Way to punish detainees out of view of cameras, and for chemical spray to be used to punish restrained prisoners." *Moore*, 41 F.4th at 509.

**The majority agrees that all custom evidence, without temporal limitation, is a jury question:** "[Witness Jackson] averred that *throughout her tenure* [of three years] the Four Way had been used to 'teach prisoners a lesson . . . on many occasions'" and "two other Defendants 'admitted under oath that they used chemical spray . . . in the Four Way.'" *Moore*, 41 F.4th at 509–10. The panel majority held that "a reasonable jury could conclude a custom existed to use the Four-Way and chemical spray to punish prisoners." *Id.* at 510. The majority didn't limit the jury question to evidence of a custom of punishing prisoners in the Four Way *before* Moore's death.

**Judge Ho dissented on allowing *Monell* custom evidence after the prisoner's death:** "The majority also tries to establish the existence of an unlawful custom by pointing to . . . (2) an admission by two guards to having pepper sprayed inmates in the Four Way *a year after* Moore's death." *Moore*, 41 F.4th at 518 (Ho, J. dissenting)) (emphasis added).

**The majority rejected Judge Ho's dissent:** Again, the majority relied on the very post-event evidence Judge Ho rejected in his dissent. 41 F.4th at 509–10. And it later reiterated that "[p]ost-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right." *Moore*, 41 F.4th at 510 n.56 (quoting *Bordanaro v. McCloud*, 871 F.2d 1151, 1167 (1st Cir. 1989)). That is Plaintiff's exact argument here.

**The majority also held that post-event evidence can prove policymaker knowledge and acceptance of the unwritten custom:** "We have explained before that policymakers failing to take corrective action after their subordinates violate the constitution is some evidence that they know about an unconstitutional custom. Here, some record evidence suggests that guards sprayed

Moore with pepper spray and beat him in the Four-Way as punishment. And following Moore's death, Hanson took no disciplinary action against anyone involved. Therefore, a reasonable jury could find on this record that Hanson actually knew that guards used the Four-Way and pepper spray to punish prisoners." *Moore*, 41 F.4th at 510–11.

**Bottom line:** The panel majority in *Moore* deliberately allowed post-event evidence to go to a jury to prove a custom's existence, quoted a First Circuit case allowing such evidence, and rejected Judge Ho's dissent arguing that such evidence was improper. This Court's order excluding evidence after Plaintiff Schott's traffic stop on March 16, 2022, squarely conflicts with *Moore*.

### B. The cases the Court cited do not say that post-event evidence cannot be used to prove a custom.

The cases the Court cited in its order do not stand for the proposition that post-event evidence is categorically prohibited in a *Monell* case. Take, for example, *Connick v. Thompson*, whose footnote 7 this Court partially quoted: "subsequent conduct cannot establish a pattern of violations . . ." ECF No. 178 at 1 (quoting 563 U.S. 51, 63 n.7 (2011)). It is true that "subsequent conduct" *alone* isn't enough. **There must be prior conduct, too, but none existed in *Connick*.** The full quote from *Connick* is: "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates.'" (quoting *Canton v. Harris*, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring in part and dissenting in part)). *Connick* was a failure to train case about the alleged misfeasance of prosecutors in a single criminal prosecution. Connick argued that prosecutorial misconduct with respect to his fellow defendants established a *Monell* custom. The Supreme Court pointed out in footnote 7 that the policymaker could not have been on notice of a problem that happened for the very first time in Connick's own case. But *Connick* did not hold that post-event evidence is categorically barred in *Monell* cases.

*Connick* is totally different from the evidence here. As in *Moore*, Plaintiff wants to offer custom evidence from before, during, and after his stop. There is nothing improper about that.

With all due respect, the other cases cited in the Court's order are stripped of their context and do not stand for a broad proposition that post-event evidence is barred in *Monell* cases. They are simply cases that contain *only* prior evidence and thus that is necessarily what the courts talk about. Consider *Peterson v. City of Fort Worth*, which this Court described as follows: "explaining that proving a pattern requires "sufficiently numerous prior incidents . . . ." ECF No. 178 at 1 (quoting 588 F.3d 838, 851 (5th Cir. 2009)). But *Peterson* is contrasting "sufficiently numerous prior incidents" with "isolated instances." It does not consider, much less hold, that post-event evidence is categorially irrelevant. Again, Plaintiff intends to prove a pattern with evidence that happened before March 16, 2022, on that date, and after. *Peterson* doesn't prohibit that.

**C. At the very least, the Court should allow near-contemporaneous evidence.**

Much of Plaintiff's evidence is near-contemporaneous. Indeed, the vast majority of the excluded videos are quite close in time to March 16, 2022: 186 of the videos are from March, and another 75 are from April. **That means 66% of the excluded videos are from within two weeks of Plaintiff's stop, and 93% of the videos are from within six weeks of his stop.** Under *Moore*, videos so close on the heels of Alek's stop are probative of a widespread *Monell* custom, and also of what the policymaker Sheriff knew or should have known. *See Moore*, 41 F.4th at 510 ("We have explained before that policymakers failing to take corrective action after their subordinates violate the constitution is some evidence that they know about an unconstitutional custom.").

* * *

For these reasons, Plaintiff respectfully asks that the Court withdraw its order excluding 282 videos of "similar but post-incident conduct by Deputies Babb, Gereb, and Molina" (ECF No.

178 at 2). The order conflicts with *Moore*, and this Court should correct that error so that the jury can hear all relevant evidence of the custom Plaintiff challenges in this case.

Date: September 18, 2026

Respectfully submitted,

/s/ Christen M. Hebert
**Christen M. Hebert** (TX Bar No. 24099898)
**Jeff Rowes** (TX Bar No. 24104956)
INSTITUTE FOR JUSTICE
816 Congress Avenue, Suite 970
Austin, TX 78701
(512) 480-5936
chebert@ij.org
jrowes@ij.org

**Joshua A. Windham*** (NC Bar No. 51071)
**William R. Aronin*** (NY Bar No. 4820031)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
jwindham@ij.org
waronin@ij.org
*Admitted *pro hac vice*

*Attorneys for Plaintiff*

**Certificate of Service**

I certify that on September 18, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will provide electronic service upon all attorneys of record.

/s/ Christen Mason Hebert
Christen Mason Hebert